UNITED STATES DISTRICT COURT FOR
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LASER SPA OF ROCHESTER, LLC, doing business as Spitale Laser Spa Salon**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>vs.<br><br>**ERIE INSURANCE COMPANY**<br><br>　　　　　　　　　　**Defendant.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laser Spa of Rochester LLC, doing business as Spitale Laser Spa Salon, brings this Complaint, alleging against Defendant Erie Insurance Company as follows:

## I.　　NATURE OF THE CASE

1.　　This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.　　In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that all non-essential businesses such as Plaintiff's cease operations, Plaintiff has sustained significant business losses after shutting its doors for customers on March 20, 2020.

3.　　Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.　　As a result, Plaintiff is entitled to declaratory relief that its salon is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## II.　　JURISDICTION

5.　　This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant.

Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6.  The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New York. At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendant purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New York corporation and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New York, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.   PARTIES

8.  At all relevant times, Plaintiff Laser Spa of Rochester LLC, doing business as Spitale Laser Spa Salon ("Spitale"), is a Limited Liability Company authorized to do business and doing business in the State of New York, County of Monroe. Laser Spa of Rochester LLC owns, operates, manages, and/or controls Spitale Laser Spa Salon located at 59 Celebration Drive in Rochester, NY 14620.

9. At all relevant times, Defendant Erie Insurance Company ("Erie") is a corporation doing business in the County of Erie, State of Pennsylvania, and provides business interruption coverage to its insureds, including Plaintiff.

10. Defendant issued an Ultrapack Plus Insurance Policy to the Plaintiff (Policy Number Q97-1983025) for the period of January 18, 2020 to January 18, 2021. *See* Ultrapack Plus Policy Declarations page, attached hereto as **Exhibit A.**

11. The policy, currently in full effect, includes business interruption coverage for, among other things, business personal property and income protection & extra expense.

12. Plaintiff submitted an insurance claim arising out of business losses sustained due to Plaintiff's shut-down as mandated by New York Civil Authority Orders issued as a result of COVID-19. On April 1, 2020, Defendant denied Plaintiff's claim and asserted that Plaintiff was not entitled to coverage for its loss of income.

## IV.     FACTUAL BACKGROUND

**A.     Insurance Coverage**

13. On or about January 18, 2020, Defendant entered into a contract of insurance with the Plaintiff specifically to provide, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its salon located in Monroe County, State of New York (the "Covered Property").

14. The Covered Property consists of Spitale Laser Spa Salon located at 59 Celebration Drive in Rochester[1] which is owned, leased by, managed, and/or controlled by the Plaintiff.

---

[1] This address is listed as the Covered Property under the Policy.

http://www.spitalelaserspasalon.com (last visited May 7, 2020). Prior to March 22, 2020, the Covered Property was open Tuesday through Friday from 10 a.m. through 4 p.m.

15. The Covered Property is covered under an Ultrapack Plus Insurance Policy issued by the Defendant with Policy Number Q97-1983025 (hereinafter "Policy").

16. The Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of January 18, 2020 through January 18, 2021.

17. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

18. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

19. The "Civil Authority" provision in the Policy issued by Defendant provides coverage as follows:

> **C.    Additional Coverages**
>
> **1. Civil Authority**
>
> When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:
>
>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

20. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

21. Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Property be shutdown, or any related losses and/or damages.

22. The Policy does not contain any virus or bacteria exclusion.

23. Defendant's denial of coverage is based on its claim that the Covered Property did not sustain "direct physical loss." *See* Denial Letter, attached hereto as **Exhibit B.**

24. However, Defendant's narrow reading of "loss" renders the Civil Authority provision ineffectual and demonstrates Defendant had no intention of providing coverage for losses Plaintiff faithfully paid premiums to insure against.

**B.    The Coronavirus Pandemic**

25. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.  It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the salon.

26. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 29, 2020).

27. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

28. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

29. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.   Civil Authority**

30. On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

31. On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

32. On March 19, 2020, Governor Cuomo ordered all hair salons in the state to be closed effective March 21, 2020 at 8 p.m. *See* Executive Order No. 202.7, attached hereto as **Exhibit C**.

33. On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic. To date, this order has been extended to at least May 15, 2020.

34. As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed. This Order remains in effect as of this filing.

35. On April 17, 2020, the State of New York ordered all individuals over the age of two to wear a face covering when in a public place.

36. Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 29, 2020) (emphasis added).

37. The President is articulating a few core points:

    a. Business interruption is a common type of insurance.

    b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

      c.      This pandemic should be covered unless there is a specific exclusion for pandemics.

      d.      If insurers deny coverage, they would be acting in bad faith.

38.    These Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

39.    Plaintiff's salon is unable to open its doors as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally. Accordingly, Plaintiff has submitted a claim to Defendant related to such losses.

40.    However, Defendant has denied Plaintiff's claim in contravention of the clear policy language entitling Plaintiff to coverage for business losses arising out of the Civil Authority Orders.

**D.**    **Impact on Spitale**

41.    Plaintiff shut its doors to customers at the close of business on March 20, 2020 and continues to be shut down pursuant to New York's Civil Authority Orders referenced herein.

42.    As a further direct and proximate result of the Civil Authority Orders, Plaintiff has been forced to lay off fourteen (14) employees.

43.    Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the salon, there is an ever-present risk that the Covered Property is contaminated and would continue to be contaminated.

44. Businesses like the Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Covered Property and remain viable for far longer as compared to a facility with open-air ventilation.

45. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

46. The government-mandated closure is physically impacting Plaintiff. Any effort by the Defendant to deny the reality that the above-referenced Civil Authority Orders have caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation.

47. A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**CAUSE OF ACTION**
**DECLARATORY RELIEF**

48. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

49. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Columbus McKinnon Corp. v.*

*SST Casting, Inc.*, No. 08-CV-1672, 2009 WL 1563922, at *3 (W.D.N.Y. June 3, 2009); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

50. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a. The Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property;

    b. The prohibition of access by the Civil Authority Orders has specifically "prohibit[ed] access to the premises" as set forth in the Policy's Civil Authority provision'

    c. The Policy does not contain an exclusion due to virus here;

    d. The Civil Authority Orders trigger coverage;

    e. The Policy includes coverage for losses caused by the Civil Authority Orders;

    f. The Policy includes coverage for losses caused by the Coronavirus;

    g. The Policy provides coverage to Plaintiff for any current and future civil authority closures of businesses in Monroe County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    h. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

    i. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

51. Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders "prohibit[] access to the premises" of Plaintiff's Covered Property as set forth in the Policy's Civil Authority provision.

52. Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

53. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in Monroe County and New York State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

54. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property.

2) For a declaration that the prohibition of access by the Civil Authority Orders "prohibits access to the premises" as stated in the Policy.

3) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Monroe County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property.

6) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: May 12, 2020              Respectfully submitted,

/s/ *John E. Richmond*
John E. Richmond, Esq.
**RICHMOND VONA, LLC**
1659 Amherst St., Suite 100
Buffalo, NY 14214
Telephone: 716-500-5678
Facsimile: 716-500-5679
john@richmondvona.com

Richard M. Golomb, Esq. (*pro hac vice* pending)
Kenneth J. Grunfeld, Esq. (*pro hac vice* pending)
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Tel: (334) 269-2343
Fax: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com

Paul.Evans@BeasleyAllen.com

*Counsel for Plaintiff*