# EXHIBIT 1

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: COVID-19 Business Interruption Protection Insurance Litigation** | **MDL No. 2942** |

<u>**NOTICE OF RELATED ACTIONS**</u>

Pursuant to Rule 6.2(d) of the Rules of Procedure of the United States Judicial Panel on

Multidistrict Litigation ("JPML"), undersigned counsel notifies the Clerk of the JPML of the

following related actions that were filed after the initial motion to transfer in this case:

1. *Sidkoff, Pincus & Green PC v. Sentinel Insurance Company, Limited*, Eastern District

of Pennsylvania, Case No. 2:20-cv-02083 (filed April 30, 2020).

2. *Slate Hill Daycare Center, Inc. v. Utica National Insurance Group*, Southern District

of New York, Case No. 7:20-cv-03565 (filed May 7, 2020).

3. *M. Ilhan Uzel, DMS, DSC, d/b/a Mercer Center For Implants and Periodontics at*

*Princeton v. The Hanover Insurance Group, Inc. d/b/a The Hanover, And Citizens Insurance*

*Company Of America*, District of New Jersey (Trenton Vicinage), Case No. 3:20-cv-05778 (filed

May 11, 2020).

4. *Laser Spa of Rochester, LLC, doing business as Spitale Laser Spa Salon v. Erie*

*Insurance Company* ,Western District of New York (Rochester), Case No. 6:20-cv-06308 (filed

May 12, 2020).

5. *Ambulatory Care Center, PA v. Sentinel Insurance Company, Limited*, District of New

Jersey (Camden), Case No. 1:20-cv-05837 (filed May 13, 2020).

6. *Southern Dental Birmingham, LLC v. The Cincinnati Insurance Company,* Northern

District of Alabama (Southern), Case No. 2:20-cv-0681 (filed May 14, 2020).

A Schedule of Actions is attached to this Notice as Exhibit A.  Copies of the docket sheet and complaints of each of the related actions are attached as Exhibits B1 through B6 to this Notice. The complaints share common questions of fact and law and are premised on the same core issues as the other actions pending before the Panel and are "Related Actions" for purposes of these proceedings.

Dated:  May 18, 2020                Respectfully submitted,

/s/ *Arnold Levin*
Arnold Levin, Esquire
Frederick S. Longer, Esquire
Daniel C. Levin, Esquire
Keith J. Verrier, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: alevin@lfblaw.com
Email: flonger@lfsblaw.com
Email: dlevin@lfsblaw.com
Email: kverrier@lfsblaw.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
Email:  rgolomb@GolombHonik.Com
Email:  KGrunfeld@GolombHonik.Com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email:  Dee.Miles@BeasleyAllen.com
Email:  Rachel.Boyd@BeasleyAllen.com
Email:  Paul.Evans@BeasleyAllen.com

*Attorneys for Plaintiffs*

# EXHIBIT A

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| In re: COVID-19 Business Interruption Protection Insurance Litigation | MDL No. 2942 |
|---|---|

## SCHEDULE OF ACTIONS

| Case Caption | Court | Civil Action No. | Judge |
|---|---|---|---|
| *Plaintiff(s):* Sidkoff, Pincus & Green PC<br><br>*Defendant(s):* Sentinel Insurance Company, Limited | Eastern District of Pennsylvania | 2:20-cv-02083 | District Judge Timothy J. Savage |
| *Plaintiff(s):* Slate Hill Daycare Center, Inc<br><br>*Defendant(s):* Utica National Insurance Group | Southern District of New York | 7:20-cv-03565 | Judge Philip M. Halpern |
| *Plaintiff(s):* M. Ilhan Uzel, DMS, DSC, d/b/a Mercer Center For Implants and Periodontics at Princeton<br><br>*Defendant(s):* The Hanover Insurance Group, Inc. d/b/a The Hanover, And Citizens Insurance Company Of America | District of New Jersey (Trenton Vicinage) | 3:20-cv-05778 | Chief Judge Freda L. Wolfson<br>Magistrate Judge Douglas E. Arpert |
| *Plaintiff(s):* Laser Spa of Rochester, LLC, doing business as Spitale Laser Spa Salon.<br><br>*Defendant(s):* . Erie Insurance Company | Western District of New York (Rochester) | 6:20-cv-06308 | Hon. Frank P. Geraci, Jr. |

1

| *Plaintiff(s):* Ambulatory Care Center, PA<br><br>*Defendant(s* Sentinel Insurance Company, Limited | District of New Jersey (Camden) | 1:20-cv-05837 | Judge Joseph H. Rodriguez<br>Magistrate Judge Karen M. Williams |
|---|---|---|---|
| *Plaintiff(s):* Southern Dental of Birmingham, LLC<br><br>*Defendant(s):* The Cincinnati Insurance Company | Northern District of Alabama (Southern) | 2:20-cv-0681 | Magistrate Judge Gray M Borden |

Dated:  May 18, 2020                    Respectfully submitted,


                                        /s/ *Arnold Levin*_____
                                        Arnold Levin, Esquire
                                        Frederick Longer, Esquire
                                        Daniel Levin, Esquire
                                        Keith J. Verrier, Esquire
                                        **LEVIN SEDRAN & BERMAN LLP**
                                        510 Walnut Street, Suite 500
                                        Philadelphia, PA 19106-3697
                                        Telephone: (215) 592-1500
                                        Facsimile: (215) 592-4663
                                        Email: alevin@lfblaw.com
                                        Email:  flonger@lfsblaw.com
                                        Email: dlevin@lfsblaw.com
                                        Email: kverrier@lfsblaw.com

                                        Richard M. Golomb, Esquire
                                        Kenneth J. Grunfeld, Esquire
                                        **GOLOMB & HONIK, P.C.**
                                        1835 Market Street, Suite 2900
                                        Philadelphia, PA 19103
                                        Telephone: (215) 346-7338
                                        Facsimile: (215) 985-4169
                                        Email: rgolomb@GolombHonik.Com
                                        Email: KGrunfeld@GolombHonik.Com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email:  Dee.Miles@BeasleyAllen.com
Email:  Rachel.Boyd@BeasleyAllen.com
Email:  Paul.Evans@BeasleyAllen.com

*Attorneys for Plaintiffs*

### BEFORE THE UNITED STATES JUDICIAL PANEL ON
### MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re: COVID-19 Business Interruption Protection Insurance Litigation** | **MDL No. 2942** |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that on May 18, 2020, the foregoing Notice of

Related Actions on behalf of Plaintiffs Sidkoff, Pincus & Green PC; Slate Hill Daycare Center

Inc.; M. Ilhan Uzel, DMS, DSC, d/b/a Mercer Center for Implants and Periodontics at Princeton;

Laser Spa Of Rochester, LLC; Ambulatory Care Center, P.A.;  and Southern Dental Birmingham,

LLC, along with the accompanying exhibits and this Proof of Service was electronically filed with

the Clerk of the JPML using the Court's CM/ECF system and was served on all counsel or parties

electronically via the Court's ECF system.

In addition, on May 18, 2020, I caused true and correct copies of that filing to be served on

the following via U.S. mail or e-mail as indicated:

**<u>Via U.S. Mail</u>**

The Hartford Financial Services Group, Inc.
The Hartford Fire Insurance Company
Hartford Underwriters Insurance Company
Commercial Inland Marine Hartford Fire Insurance Company
Sentinel Insurance Company, LTD
1 Harford Plaza,
Hartford, Connecticut 06155

Defendants in Case Nos. 2:20-cv-02083 (E.D.Pa.); 3: 20-cv-00609; 3:20-cv-00610; 3:20-cv-00611
(D.Conn. New Haven); Case No. 1:20-cv-03350 (S.D.N.Y. Foley Square); 1:20-cv-05837 (D.N.J.
Camden)

Utica National Insurance Group
180 Genesee Street, New
Hartford, New York 13413

Defendant in Case No. 7:20-cv-03565 (S.D.N.Y.)

The Hanover Insurance Group,
440 Lincoln Street
Worcester, Massachusetts 01653

Defendant in Case No. 3:20-cv-05778 (D.N.J.)

Citizens Insurance Company of America
808 N Highlander Way
Howell, MI 48843

Defendant in Case No. 3:20-cv-05778 (D.N.J.)

Erie Insurance Company
100 Erie Insurance Place
Erie, PA  16530

Defendant in Case No. 6:20-cv-06308 (W.D.N.Y.)

Cincinnati Insurance Company
6200 South Gilmore Road
Fairfield, OH 45014-5141

Defendant in Case No. 2:20-cv-00681 (N.D. Ala. Southern)

Travelers Casualty Insurance
Company Of America, The
Travelers Indemnity Company
485 Lexington Avenue
New York, New York 10017

Defendant in Case No. 2:20-cv-02093 (E.D.Pa.)

Hartford Mutual Insurance Company
200 N. Main Street
Bel Air, MD 21014

Defendant in Case No. 2:20-cv-02152 (E.D.Pa.)

Selective Insurance Company of America
Selective Insurance Group, Inc.
Selective Insurance of the Southeast
Selective Insurance Group, Inc.
40 Wantage Avenue
Branchville, NJ 07890

Defendants in Case No. 2:20-cv-01967 (E.D.Pa.); 2:20-cv-01977 (E.D.Pa.)

Evanston Insurance Company
10 Parkway North
Deerfield, Illinois 60015

Defendant in Case No. 3:20-cv-00324 (E.D.Va. Richmond)

Markel Corporation
Richard R. Grinnan, Registered Agent
4521 Highwoods Parkway
Glen Allen, VA 23060

Defendant in Case No. 3:20-cv-00324 (E.D.Va. Richmond

Mesa Underwriters Specialty Insurance Company d/b/a MUSIC
Corporation Service Company, Registered Agent
8825 N. 23rd Avenue, Suite 100
Phoenix, AZ 85021

Defendant in Case No. 3:20-cv-00323 (E.D.Va. Richmond)

Grange Mutual Casualty Company
Grange Insurance Company
671 South High Street
Columbus, Ohio 43206

Defendant In Case No. 2:20-cv-02264 (S.D.Ohio Columbus)

Badger Mutual Insurance Company
1635 West National Avenue
Milwaukee, WI 53204

Lancer Insurance Company
370 West Park Avenue
P.O. Box 9004
Long Beach, NY 11561

<u>Via email:</u>

Christopher J. O'Malley
Patrick M. Collins
King & Spalding LLP
353 N. Clark, 12th Floor
Chicago, IL 60654
(312) 995-6333
Email: comalley@kslaw.com
Email: pcollins@kslaw.com

Shelby S. Guilbert, Jr. Joseph M. Englert
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-4600
Email: sguilbert@kslaw.com
Email: jenglert@kslaw.com

*Attorneys for Big Onion Tavern Group, LLC, Headquarters Beercade LLC, Machine 1846 LLC, The New 400 LLC, Harper Theater LLC, Welcome Back LLC, Legacy Hospitality LLC, Mcbrides Aurora Inc., Homeslyce Is Where The Heart Is LLC, 3458 Norclark Restaurant LLC, Happy Camper Pizzeria LLC, 1913 Northco LLC, Mcbride's Pub Inc., and Mcbride's On 52 Inc.*

Gordon A. Greenberg
Jason David Strabo
McDermott Will and Emery LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3218
(310) 277-4110
Fax: (310) 277-4730
Email: ggreenberg@mwe.com
Email: jstrabo@mwe.com

Margaret H. Warner
McDermott Will and Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8228
Email: mwarner@mwe.com

*Attorneys for Topa Insurance Company*

Mark D. Tinker
Cole, Scott & Kissane, PA – Tampa
4301 W. Boy Scout Blvd., Ste. 400
Tampa, FL 33607
(727) 825-3600
Fax: (727) 821-1968
Email: mark.tinker@csklegal.com

*Attorney for DTW1991 Underwriting Limited, a Certain Interested Underwriter at Lloyd's London*

Forrest S. Latta
BURR & FORMAN LLP
P.O. Box 2287
Mobile, AL 36652
(251) 344-5151
Fax: (251) 344-9696
Email: flatta@burr.com

Katherine Edwards West
Robert S. W. Given
S. Greg Burge
BURR & FORMAN LLP
420 North 20th Street, Ste. 3400
Birmingham, AL 35203
(205) 458-5188
Fax: (205) 458-5638
Email: kwest@burr.com
Email: rgiven@burr.com
Email: gburge@burr.com

*Attorneys for Auto-Owners Insurance Company*

Scott M. Hendler
Rebecca Ruth Webber
**HENDLER FLORES LAW, PLLC**
1301 West 25th Street, Suite 400
Austin, TX 78705
shendler@hendlerlaw.com
rwebber@hendlerlaw.com

*Attorneys for Plaintiff, LDWB#2 dba
Lonesome Dove Austin*

Dated:  May 18, 2020                    /s/ *Keith J. Verrier*
                                        Keith J. Verrier, Esquire
                                        **LEVIN SEDRAN & BERMAN LLP**
                                        510 Walnut Street, Suite 500
                                        Philadelphia, PA 19106-3697
                                        Telephone: (215) 592-1500
                                        Facsimile: (215) 592-4663
                                        Email: kverrier@lfsblaw.com

# EXHIBIT B-1

# United States District Court
# Eastern District of Pennsylvania (Philadelphia)
# CIVIL DOCKET FOR CASE #: 2:20-cv-02083-TJS

SIDKOFF, PINCUS & GREEN PC v. SENTINEL INSURANCE
COMPANY, LIMITED
Assigned to: HONORABLE TIMOTHY J. SAVAGE
all others Case: 2:20-cv-01869-TJS
Cause: 28:2201 Declaratory Judgement

Date Filed: 04/30/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Contract: Insurance
Jurisdiction: Diversity

**Plaintiff**

**SIDKOFF, PINCUS & GREEN PC**          represented by   **RICHARD M. GOLOMB**
                                                          GOLOMB & HONIK
                                                          1835 MARKET STREET
                                                          SUITE 2900
                                                          PHILADELPHIA, PA 19103
                                                          215-985-9177
                                                          Fax: 215-985-4169
                                                          Email: rgolomb@golombhonik.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SENTINEL INSURANCE COMPANY,
LIMITED**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/30/2020 | 1 | COMPLAINT against SENTINEL INSURANCE COMPANY, LIMITED ( Filing fee $ 400 receipt number 0313-14266043.), filed by SIDKOFF, PINCUS & GREEN PC. (Attachments: # 1 Civil Cover Sheets, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7)(GOLOMB, RICHARD) (Entered: 04/30/2020) |
| 04/30/2020 |  | DEMAND for Trial by Jury by SIDKOFF, PINCUS & GREEN PC. (tjd) (Entered: 04/30/2020) |
| 04/30/2020 |  | Summons Issued as to SENTINEL INSURANCE COMPANY, LIMITED. Forwarded To: EMAILED TO PLAINTIFF'S COUNSEL on 4/30/20 (jl, ) (Entered: 04/30/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2020 10:09:27 | | | |
| PACER Login: | lfsblaw0044:2586701:4460865 | Client Code: | Covid 19 MDL |

5/15/2020

Case 6:20-cv-06308-EPG Document 4-1 Filed 05/18/20 Page 17 of 129
Case MDL No. 2942 Document 209-3 Filed 05/18/20 Page 3 of 13

| Description: | Docket Report | Search Criteria: | 2:20-cv-02083-TJS |
|---|---|---|---|
| Billable Pages: | 1 | Cost: | 0.10 |

## UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SIDKOFF, PINCUS & GREEN PC** | |
| **Plaintiff,** | **COMPLAINT** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **SENTINEL INSURANCE COMPANY, LIMITED** | |
| **Defendant.** | |

Plaintiff Sidkoff, Pincus & Green PC, brings this Complaint, alleging against Defendant Sentinel Insurance Company, Limited**,** as follows:

## I.    NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.      In light of the Coronavirus global pandemic and state and local orders requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations, Plaintiff shut its doors on March 16, 2020, at the close of business.

3.      Plaintiff's insurance policy provides coverage for all non-excluded business losses, including Business Income that would have otherwise been earned, and thus provides coverage here.

4.      As a result, Plaintiff is entitled to declaratory relief that it is covered for all business losses that have been incurred in an amount estimated to be greater than $150,000.00.

## II.    JURISDICTION

5.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant.

Further, Plaintiff has suffered business losses in an amount greater than $150,000.00.  The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value those business losses.  *Id.* at § 1332(a).

6.      The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the Commonwealth of Pennsylvania.  At all relevant times Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result it is subject to personal jurisdiction in this District.

8.      The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.      PARTIES

9.      At all relevant times, Plaintiff is a professional corporation authorized to do business and doing business in the Commonwealth of Pennsylvania, County of Philadelphia.  Sidkoff, Pincus & Green PC, is and has been the owner, operator, manager, and/or controls the law firm with a primary location at 1101 Market Street, # 2700 in Philadelphia, Pennsylvania 19107.

10.     At all relevant times, Sentinel Insurance Company, Limited is a corporation doing business in the County of Philadelphia, Commonwealth of Pennsylvania, subscribing to Policy

Number 44 SBA ZX1127 issued to the Plaintiff for the period of December 22, 2019 to December 22, 2020. *See* Policy Declaration page, attached hereto as Exhibit 1. Defendant is transacting the business of insurance in the Commonwealth of Pennsylvania and within the County of Philadelphia and the basis of this suit arises out of such conduct.

## IV.    FACTUAL BACKGROUND

### A.    Insurance Coverage

11.    On or about December 22, 2019, Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiff for losses including, but not limited to, business income losses at its primary location in Philadelphia County at 1101 Market Street, # 2700 in Philadelphia, Pennsylvania 19107 and additional locations at 944 Bryn Mawr Avenue in Penn Valley, Pennsylvania 19072 and 31 South Kingston Avenue in Atlantic City, New Jersey 08401.

12.    Sidkoff, Pincus & Green PC, is a law firm which is owned, leased by, managed, and/or controlled by the Plaintiff. https://www.greatlawyers.com/ (last visited April 28, 2020). The law firm was founded in 1958 and currently focuses its practice representing clients in business and employment litigation, contract negotiations, and advising on matters of international law.

13.    Plaintiff is covered under a policy issued by the Defendant with policy number believed to be 44 SBA ZX1127 (hereinafter "Policy").

14.    The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages between the period of December 22, 2019 to December 22, 2020.

- 3 -

15.     Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

16.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the law firm is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of the law firm.  This additional coverage is identified as coverage under "Civil Authority."

17.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means physical loss or physical damage unless the loss is specifically excluded or limited in the Policy.

18.     Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown.

19.     The Policy does not specifically exclude virus coverage, and in fact includes a specific endorsement for coverage in the event of a virus, which states "We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus."

**B.     The Coronavirus Pandemic**

20.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.  It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the restaurant.

- 4 -

21. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 28, 2020).

22. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.** **Civil Authority**

25. On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. *See* Exhibit 2.

26. On March 16, the City of Philadelphia announced the closure of non-essential businesses. *See* Exhibit 3; https://www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/ (last visited April 28, 2020). Section 3(C) specifically mandates that law firms are considered non-essential. *Id.* All Philadelphia law firms, including the Plaintiff, were required to close. *See* https://www.law.com/thelegalintelligencer/2020/03/19/new-state-order-means-all-law-firm-offices-must-close/ (last visited April 28, 2020).

27.     On March 19, 2020 Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations.  Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *See* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 27, 2020).   Non-essential office-based businesses like the Plaintiff were prohibited from operating.

28.     On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread of 2019 Novel Coronavirus, ordering the closure of all businesses except those previously listed by the Governor of Pennsylvania as Life-Sustaining Businesses, noting that "COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in businesses and other places, thus contaminating certain property and places." *See* Exhibit 3.  "Legal Services" such as those performed by the Plaintiff were specifically curtailed.

29.     On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties.  *See* Exhibit 4.  On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit 5.

30.     On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania.  *See* Exhibit 6.

31.     On April 20, 2020, Governor Tom Wolf extended the March 23, 2020 Stay at Home Order to May 8, 2020 for the entire Commonwealth of Pennsylvania. See Exhibit 7.

32.     The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

33.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

- 7 -

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

34.     The President is articulating a few core points:

    a.     Business interruption is a common type of insurance, especially for restaurants.

    b.     Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.     This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.     If insurers deny coverage, they would be acting in bad faith.

35.     On April 28, 2020, Governor Wolf has amended the "Legal Services" category of *Industry Operation Guidance*, continuing the Commonwealth's directive that law offices may not continue physical operations except in certain limited and specific instances enumerated.  *See* https://www.scribd.com/document/452553026/UPDATED-11-45am-April-28-2020-Industry-Operation-Guidance (last visited April 28, 2020).

36.     These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**D.     Impact on Sidkoff, Pincus & Green PC**

37.     As a result of the Orders referenced herein, Plaintiff shut its Philadelphia office doors on March 16, 2020 and continues to be shutdown.

38.     Plaintiff's business is not a closed environment, and because people – staff, clients, delivery personnel, and others – constantly cycle in and out of the office, there is an ever-present

risk that the office is contaminated and/or would be become and  would continue to be contaminated.

39.     The virus is physically impacting Sidkoff, Pincus & Green PC.  As a result of the Orders, the law firm and its members are unable to meet and sign up new clients, cannot initiate new lawsuits on behalf of current and potential clients, cannot adequately or thoroughly prepare witnesses, cannot move cases forward, cannot take depositions, as taking depositions by video-conferencing is not practical in the firm's complex cases, cannot collect fees from clients for work performed or that need to be performed, and other limitations in the practice of law.

40.     Any effort by the Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

41.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary.  As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## V.     CAUSE OF ACTION
### DECLARATORY RELIEF

42.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

43.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v.*

*Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

44.     An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

      a.      The Orders constitute a prohibition of access to Plaintiff's office;

      b.      The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

      c.      The Orders trigger coverage;

      d.      The Policy includes coverage for losses caused by the Orders;

      e.      The Policy includes coverage for losses caused by the Coronavirus;

      f.      The Policy provides coverage to Plaintiff for any current and future civil authority closures of law firms in Philadelphia County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

      g.      The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Philadelphia office or immediate area around thereof; and

      h.      Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

45.     Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's office as Civil Authority as defined in the Policy.

46.     Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

47.     Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of law offices in Philadelphia County due to physical loss or damage from the Coronavirus and the policy provides

business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

48.     Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the office, amount of damages, or any other remedy other than declaratory relief.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

1)      For a declaration that the Orders constitute a prohibition of access to Plaintiff's Philadelphia law office.

2)      For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3)      For a declaration that the Orders trigger coverage under the Policy.

4)      For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of law firms in Philadelphia County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5)      For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

6)      For a declaration that the Policy provides coverage for loss caused by virus;

7)      For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: April 30, 2020                           Respectfully submitted,

                                                */s/ Richard M. Golomb*
                                                Richard M. Golomb, Esq.
                                                Kenneth J. Grunfeld, Esq.

- 11 -

**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Tel: (334) 269-2343
Fax: (334) 954-7555
*Counsel for Plaintiff*

# EXHIBIT B-2

ECF,REFERRED

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:20-cv-03565-PMH

Slate Hill Daycare Center Inc. v. Utica National Insurance Group

Assigned to: Judge Philip M. Halpern

Cause: 28:2201pi Declaratory Judgment - Personal Injury

Date Filed: 05/07/2020

Jury Demand: None

Nature of Suit: 110 Insurance

Jurisdiction: Diversity

### Plaintiff

**Slate Hill Daycare Center Inc.**

*on behalf of itself and all others similarly situated*

represented by **Michael M. Weinkowitz**

Levin, Fishbein, Sedran & Berman, Esq.

510 Walnut Street

Suite 500

Philadelphia, PA 19106

(215)592-1500

Email: mweinkowitz@lfsblaw.com

*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Utica National Insurance Group**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/07/2020 | 1 | COMPLAINT against Utica National Insurance Group. (Filing Fee $ 400.00, Receipt Number ANYSDC-19744468)Document filed by SLATE HILL DAYCARE CENTER INC...(Weinkowitz, Michael) (Entered: 05/07/2020) |
| 05/07/2020 | 2 | CIVIL COVER SHEET filed..(Weinkowitz, Michael) (Entered: 05/07/2020) |
| 05/07/2020 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by SLATE HILL DAYCARE CENTER INC...(Weinkowitz, Michael) (Entered: 05/07/2020) |
| 05/07/2020 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to UTICA NATIONAL INSURANCE GROUP, re: 1 Complaint. Document filed by SLATE HILL DAYCARE CENTER INC...(Weinkowitz, Michael) (Entered: 05/07/2020) |
| 05/07/2020 | 5 | NOTICE of Notice to Attach Exhibits 1 and 2 to Plaintiff's Class Action Complaint re: 1 Complaint. Document filed by SLATE HILL DAYCARE CENTER INC.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Certificate of Service).(Weinkowitz, Michael) (Entered: 05/07/2020) |
| 05/08/2020 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Michael M. Weinkowitz. The party information for the following party/parties has been modified: SLATE HILL DAYCARE CENTER INC.. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps; party text was omitted;. (pc) (Entered: 05/08/2020) |

| 05/08/2020 | | ***NOTICE TO ATTORNEY TO ELECTRONICALLY FILE RELATED CASE STATEMENT. Notice to Attorney Michael M. Weinkowitz, for non compliance with Local Rule 13 of the Division of Business Among Judges. Attorney must electronically file the Related Case Statement. Use the event type Statement of Relatedness found under the event list Other Documents. (pc) (Entered: 05/08/2020) |
| 05/08/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Unassigned. .(pc) (Entered: 05/08/2020) |
| 05/08/2020 | | Case Designated ECF. (pc) (Entered: 05/08/2020) |
| 05/08/2020 | | CASE REFERRED TO Judge Paul G. Gardephe as possibly related to 20cv3350. (pc) (Entered: 05/08/2020) |
| 05/08/2020 | 6 | ELECTRONIC SUMMONS ISSUED as to Utica National Insurance Group..(pc) (Entered: 05/08/2020) |
| 05/11/2020 | 7 | FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #8) - STATEMENT OF RELATEDNESS re: that this action be filed as related to 1:20-cv-03350 (PGG). Document filed by Slate Hill Daycare Center Inc...(Weinkowitz, Michael) Modified on 5/12/2020 (ldi). (Entered: 05/11/2020) |
| 05/11/2020 | 8 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 1:20-cv-03350 (PGG). Document filed by Slate Hill Daycare Center Inc...(Weinkowitz, Michael) (Entered: 05/11/2020) |
| 05/12/2020 | | Magistrate Judge Lisa M. Smith is so redesignated. (ad) (Entered: 05/12/2020) |
| 05/12/2020 | | NOTICE OF CASE REASSIGNMENT to Judge Philip M. Halpern. Judge Unassigned is no longer assigned to the case. (ad) (Entered: 05/12/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/15/2020 10:12:48 | | |
| **PACER Login:** | fredlonger | **Client Code:** | Covid 19 MDL |
| **Description:** | Docket Report | **Search Criteria:** | 7:20-cv-03565-PMH |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SLATE HILL DAYCARE CENTER INC., on behalf of itself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
|  | **JURY TRIAL DEMANDED** |
| Plaintiff, |  |
| v. |  |
| UTICA NATIONAL INSURANCE GROUP, |  |
| Defendant. |  |

Plaintiff Slate Hill Daycare Center Inc. ("Plaintiff" or "Slate Hill") brings this Complaint on behalf of itself and all others similarly situated (the "Class"), alleging relief against Defendant Utica National Insurance Group ("Defendant" or "Utica") and avers as follows:

### NATURE OF THE CASE

1.      This is a class action seeking declaratory relief arising from Plaintiff and Class members' contracts of insurance with Defendant.

2.      In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in-store businesses must shut down nationwide, daycare centers, including but not limited to Plaintiff's business, have suffered significant business losses. Because of the shutdown, Plaintiff and Class members only provide daycare to a *de-minimis* number of customers who work in essential employment during the pandemic.

3.      Plaintiff and Class members' insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

1

4.      As a result, Plaintiff and Class members are entitled to declaratory relief that their businesses are covered for all business losses that have been incurred in an amount greater than $5,000,000.

## JURISDICTION

5.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action is a class action; (3) there are members of the Class who are diverse from Defendant; and (4) there are more than 100 Class members.

6.      This Court has personal jurisdiction over Defendant Utica. At all relevant times Defendant has engaged in substantial business activities in the State of New York. At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendant purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff and Class members in New York which is the subject of this case.  Defendant's principal place of business and headquarters are located in New York.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 139128 U.S.C. § 1391(b)(1) and (2) because Plaintiff and Defendant are New York corporations and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.      At all relevant times, Plaintiff Slate Hill has been authorized to do business in the State of New York. Slate Hill owns, operates, manages, and/or controls two daycare centers (The Kids Place and The Kids Place for Little Tykes), both of which are located at 2920 Route 6, Slate Hill, New York 10973.  The Kids Place operates in Suites 6 and 7 while The Kids Place for Little Tykes operates in Suite 1.

9.      Defendant Utica, an insurance carrier headquartered at 180 Genesee Street, New Hartford, New York 13413, provides business interruption insurance to Plaintiff and Class members. .

10.     At all relevant times, Defendant issued an insurance policy to Plaintiff Slate Hill (policy number is 5306585) that included coverage for business interruption losses, incurred by Plaintiff from December 23, 2019 until December 23, 2020. *See* Policy, attached hereto as Exhibit 1.

11.     The policy, currently in full effect, includes coverage for, among other things, business personal property, business income, and extended special business income.

12.     Plaintiff submitted a claim for a date of loss and is waiting for a response. However, Utica has provided Slate Hill a letter of their intention to deny any claims for all similarly situated Class members. Utica asserts its insurance policies do not provide coverage for business interruption closures unless there is physical damage to the property. Utica also asserts that closure for Civil Authority requires physical damages to the property. Finally, Utica asserts all losses are excluded when as a result of a virus. On information and belief, Utica sent this letter to all Class members. *See* Exhibit 2.

## FACTUAL BACKGROUND

**I.   Insurance Coverage**

13.     Plaintiff and Class members faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

14.     The terms of the Policy explicitly provide the insured with insurance coverage for actual loss of business income sustained, along with any actual, necessary and reasonable extra

expenses incurred, when access to the Insured's properties is specifically prohibited by Civil Authority Orders.  This additional coverage is identified as coverage under "Civil Authority."

15. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy provides coverage for all covered losses, including but not limited to direct physical loss and/or direct physical damage, unless a loss is specifically excluded or limited in the Policy.

16. The Policy also provides coverage for damages resulting from business interruption when there is property damage.

17. The Policy's virus or bacteria exclusion does not apply to the closure of Plaintiffs' businesses as a result of an order issued by a Civil Authority due to the COVID-19 pandemic.

18. Nonetheless, based on information and belief, Defendant has accepted policy premiums paid by Plaintiff and the Class with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the insured businesses be shutdown, or any related property damage.

19. Defendant asserts any loss resulting from property damage or from Civil Authority Orders to cease normal business operations are excluded under the terms of the Policy's Virus or Bacteria Exclusion.  Defendant is wrong.  The COVID-19 pandemic has caused Plaintiff and the proposed Class property damage and physical loss.  Moreover, the Civil Authority Orders have also caused Plaintiff and the proposed Class to suffer compensable property damage and business losses.  Further, the Policy's Virus or Bacteria Exclusion clause does not apply to the COVID-19 pandemic.

## II. The COVID-19 Pandemic

20. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured

4

Properties would be a direct physical loss requiring remediation to clean the surfaces of the dental practice.

21.     On information and belief, the virus that causes COVID-19 remains stable and transmittable: in airborne aerosols for up to three hours; on copper for up to four hours; on cardboard for up to 24 hours; and on plastic and stainless steel for up to two to three days. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.     The CDC has issued a guidance recommending that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented procedures requiring the cleaning and disinfection of public areas prior to allowing them to re-open publicly due to COVID-19 contamination.

### III.  Civil Authority

#### A.  New York

25.     On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

26.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

27.     On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic. To date, this order has been extended to at least May 15, 2020.

28.     On April 17, 2020, the State of New York ordered all individuals over the age of two to wear a face covering when in a public place.

29.     Plaintiff's daycare centers are unable to operate at full capacity as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally.  Accordingly, Plaintiff has submitted a claim to its insurance carrier related to such losses.

### B.  Other States

30.     The shut-down Civil Authority Orders issued by New York authorities covering New York non-essential businesses are similar to Civil Authority Orders that have been issued nationwide by state and local civil authorities. *See* https://www.wsj.com/articles/a-state-by-state-guide-to-coronavirus-lockdowns-11584749351.

1. *Alabama*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are closed to the public, including entertainment venues, fitness centers, salons, nail parlors and certain retailers.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches closed.

2. *Alaska*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Unless locally restricted, open with social distancing.

3.  *Arizona*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All mass gatherings of 10 or more people must be canceled or postponed.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Unless locally restricted, open with social distancing.

4.  *Arkansas*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit; does not apply to unenclosed outdoor spaces or places of worship.

- **Businesses:** Gym and entertainment venues are closed. Hotels, motels and vacation rentals are restricted to authorized guests.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain operational during the daytime.

5.  *California*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings in a single room or place are prohibited. Visitation to hospitals, nursing homes and other residential care facilities is restricted.

- **Businesses:** Nonessential businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some parks are fully closed. Local jurisdictions have closed some beaches.

6. *Colorado*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Public and private gatherings of any number are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain open, but playgrounds, picnic areas and campgrounds are closed.

7. *Connecticut*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit for social and recreational gatherings; 50-person limit for religious services.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** No statewide directive. Out-of-state visitors are strongly urged to self-quarantine.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails and grounds of state parks and forests are open with social distancing.

8. *Delaware*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

8

- **Quarantines:** Visitors from out of state who are not just passing through must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for exercise or dog walking. State parks remain open with restricted activity.

9. *Florida*

- **Travel outside home:** Senior citizens and those with significant medical conditions may not leave home unless for essential needs or to go to an essential job.

- **Gatherings:** No social gatherings in a public space with religious exemptions.

- **Businesses:** Nonessential services are closed to the public. Gun stores remain open.

- **Quarantines:** Visitors from outbreak hot spots, such as the New York tri-state area, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Florida state parks are closed. Most beaches are closed.

10. *Georgia*

- **Travel outside home:** Mandated social distancing and recommended mask-wearing outside. Older and at-risk residents can leave only for essential needs/work with limited visitors.

- **Gatherings:** 10-person limit, not applying to incidental or transitory groups of people going by each other.

- **Businesses:** Nonessential businesses and other entities may not permit gatherings at their premises.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-in allowed with capacity limits, sanitation requirements and dozens of other precautionary measures.

- **Beaches/parks:** Open, with social distancing.

11. *Hawaii*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Essential services must implement separate operating hours for high-risk populations.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks and public beaches are closed. All camping and lodging at parks is suspended.

*12. Idaho*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are prohibited. Visits to hospitals, nursing homes and residential-care facilities are restricted.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Drive-in theaters and churches are permitted.

- **Quarantines:** Persons entering the state of Idaho are required to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No camping in state parks.

*13. Illinois*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks, fish and wildlife areas, recreational areas and historic sites are closed.

*14. Indiana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking, biking, fishing, boating, birding, hunting and camping are allowed with social distancing.

*15. Iowa*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** Limited to 10 people.

- **Businesses:** Nonessential retail businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Parks remain open. Campgrounds are closed.

*16. Kansas*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit, exempting funerals and religious services with social distancing.

- **Businesses:** Residents may not leave home to patronize nonessential businesses, such as hair salons.

- **Quarantines:** Kansas residents who traveled to California, Florida, New York or Washington state after March 14—or visited Illinois or New Jersey after March 22—must self-quarantine for 14 days. The same applies to anybody who had close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out or curbside service only.

- **Beaches/parks:** Most parks are open.

11

### 17. Kentucky

- **Travel outside home:** Travel outside the state is restricted to essential needs/work.

- **Gatherings:** Mass gatherings prohibited; smaller gatherings are allowed with social distancing.

- **Businesses:** Nonessential retail must close.

- **Quarantines:** Anybody coming in from out of state—including residents—must self-quarantine for 14 days upon return.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks closed for overnight stays.

### 18. Louisiana

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some state parks are open for fishing, hiking and biking during the day.

### 19. Maine

- **Travel outside home:** Only for essential needs/work. No use of public transportation unless absolutely necessary. .

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers arriving in Maine, regardless of their state of residency, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

12

- **Beaches/parks:** Numerous parks and beaches closed.

20. *Maryland*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Senior-citizen activities centers are closed.

- **Quarantines:** People traveling into Maryland from anywhere outside Maryland are required to self-quarantine for 14 days with limited exceptions. (Guidance)

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State park beaches are closed. Some parks remain open.

21. *Massachusetts*

- **Travel outside home:** People and especially older adults are strongly advised to stay home as much as possible. (Advisory)

- **Gatherings:** 10-person limit. Applies to confined spaces, not parks and other outdoor spaces.

- **Businesses:** Nonessential businesses must close their physical workplaces and facilities to workers and customers. Groceries must reserve an hour in the morning for older customers.

- **Quarantines:** Arriving travelers from out of state are instructed to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No congregating on coastal beaches. State parks are open and campgrounds closed.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open, but campgrounds, overnight lodging facilities and shelters are closed.

22. *Minnesota*

- **Travel outside home:** Only for essential needs/work.

13

- **Gatherings:** No statewide directive.

- **Businesses:** Entertainment and performance venues are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife management areas, state forests and state parks remain open. Campgrounds are closed.

*23. Mississippi*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for fishing. Beaches can re-open with social distancing.

*24. Missouri*

- **Travel outside home:**

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses must enforce social distancing. Essential retailers must limit occupancy.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and trails are open during the day.

*25. Montana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential social and recreational gatherings are prohibited, if social distancing ca not be maintained.

14

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Nonwork travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Open with social distancing.

*26. Nebraska*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide travel quarantine. Mandatory quarantines required for Covid-19 patients and households.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No overnight camping at state parks, state recreation areas and wildlife management areas.

*27. Nevada*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** People may not congregate in groups of 10 or more.

- **Businesses:** Recreational, entertainment and personal-care businesses are closed, including casinos.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks in the greater Las Vegas area, including Valley of Fire and Rye Patch are closed. Other state parks remain open for day-use only.

*28. New Hampshire*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nine-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only

- **Beaches/parks:** Most park sites are open.

*29. New Jersey*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential retail businesses must close bricks-and-mortar premises. Recreational and entertainment businesses are closed to the public.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some local beach closures. All state parks and forests are closed to the public.

*30. New Mexico*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit in a single room or connected space outside residence.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** Arriving air travelers must self-quarantine for two weeks.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are closed.

*31. New York*

- **Travel outside home:** Only for essential needs/work. Individuals age 70 and older and those with compromised immune systems must stay home and limit home-visitation to immediate family members or close friends.

- **Gatherings:** Nonessential gatherings are prohibited.

16

- **Businesses:** Nonessential businesses limited to minimum operations or remote work. (Guidance)

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Mandatory quarantines for people who have been in close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Social distancing at state parks.

*32. North Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** People may go to public parks and outdoor recreation areas unless locally restricted.

*33. North Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** No statewide directive.

- **Businesses:** Personal-care services and recreational facilities are closed.

- **Quarantines:** Mandatory quarantine for residents returning from abroad or domestic travelers returning from a state with widespread community infection.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for day-use only.

*34. Ohio*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

17

- **Businesses:** Nonessential businesses and operations must cease all activities except minimum basic operations.

- **Quarantines:** Travelers arriving in Ohio should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife areas, forests and nature preserves remain open.

35. *Oklahoma*

- **Travel outside home:** Vulnerable individuals (older residents and those with underlying medical problems) are directed to stay home except when running essential errands or commuting to critical infrastructure jobs.

- **Gatherings:** 10-person limit. No visitors at nursing homes, retirement or long-term care facilities.

- **Businesses:** Nonessential businesses must suspend services.

- **Quarantines:** Arriving travelers from the New York tri-state area, California, Louisiana and Washington should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking trails, picnic tables, fishing areas and boat ramps are available for outdoor recreation.

36. *Oregon*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings over 25 people are canceled statewide. Oregonians are urged to avoid gatherings of 10 people.

- **Businesses:** Nonessential business closures.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No daytime or overnight visitors are permitted at any state park.

37. *Pennsylvania*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings are generally prohibited.

- **Businesses:** Non-life-sustaining businesses must close or operate remotely.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails, lakes, roads and parking are limited to "passive and dispersed recreation."

*38. Rhode Island*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit.

- **Businesses:** Noncritical retail businesses must cease operations.

- **Quarantines:** Mandatory two-week quarantine for out-of-state visitors.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State beaches and parks are closed.

*39. South Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings of three or more are prohibited if deemed a threat to public health.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Public beaches and access points to lakes, rivers and waterways are closed. Local restrictions on parks.

*40. South Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

19

- **Gatherings:** Unnecessary gatherings of 10 or more prohibited.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** No statewide directive.

- **Beaches/parks:** No statewide directive.

*41. Tennessee*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Social gatherings of 10 or more people prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks have reopened for day-use only.

*42. Texas*

- **Travel outside home:** Texans must minimize in-person contact with people who are not in the same household. (A number of major counties have more explicit stay-at-home orders.) No visits to nursing homes or long-term care facilities unless providing critical assistance.

- **Gatherings:** 10-person limit.

- **Businesses:** No eating or drinking at bars and restaurants or visits to gyms, massage establishments, tattoo studios, piercing studios and cosmetology salons.

- **Quarantines:** Air travelers flying to Texas from New York, New Jersey, Connecticut, California, Louisiana or Washington—or Atlanta, Chicago, Detroit, Miami—must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks remain open. Some beaches are closed or limited to restricted activities.

*43. Utah*

- **Travel outside home:** High-risk individuals (older residents and those with serious underlying medical conditions) may leave only for essential needs/work. Others must stay home whenever possible.

- **Gatherings:** 10-person limit recommended.

- **Businesses:** Businesses must minimize face-to-face contact with high-risk employees.

- **Quarantines:** Two-week quarantine after traveling out of state or exposed to a person with Covid-19 symptoms.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks open to all visitors, except parks under local health order restrictions.

*44. Vermont*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are limited to 10 people.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Visitors must self-quarantine for two weeks unless traveling for an essential purpose.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** RV parks and campgrounds are closed with emergency shelter exceptions

*45. Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Recreation and entertainment businesses must close.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for fishing and exercising. State parks are open for day-use activities. Campgrounds are closed.

46. *Washington*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All gatherings of people for social, spiritual and recreational purposes are prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and recreational fisheries are closed.

47. *West Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit with some exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Two-week mandatory quarantines for people traveling into West Virginia from areas of substantial community spread of Covid-19.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Park lodges, cabins and campgrounds are closed.

48. *Wisconsin*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All public and private gatherings are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Self-quarantine recommended for out-of-state travelers.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks are closed.  Campgrounds are closed.

*49. Wyoming*

- **Travel outside home:** Residents urged but not required to stay home whenever possible.

- **Gatherings:** Limited to nine people.

- **Businesses:** Theaters, bars, museums, gyms, nightclubs and other public places are closed.

- **Quarantines:** People traveling to Wyoming for nonwork purposes must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No statewide directive.

31.     Further, on April 10, 2020 President Trump indicated his support insurance coverage for business loss like that suffered by Plaintiff and the proposed Class:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I did not always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I do not see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I do not see it. I do not see it referenced. And they do not want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a

lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We ca not let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

32. The President is articulating a few core points:

    a. Business interruption is a common type of insurance.

    b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c. The COVID-19 pandemic should be covered unless there is a specific exclusion for pandemics.

    d. If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

33. The Civil Authority Orders and proclamations referenced herein, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true for businesses such as Plaintiff's, where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

## IV.    Impact on Plaintiff and the Class

34. As a result of the Civil Authority Orders referenced herein, Plaintiff's businesses have been limited to only customers who need care for their kids because they have essential jobs.

35. Plaintiff's business loss occurred when the State of New York Civil Authorities declared a State of Emergency on March 7, 2020. Plaintiff suffered further when the New York Civil Authorities required all businesses to cease non-essential operations on March 20,2020.

36. Prior to March 7, 2020, Plaintiff was opened to all customers who had daycare needs.

37.     A declaratory judgment determining that the insureds are entitled to business loss coverage under the Policy is necessary to prevent Plaintiff and Class members from being left without bargained-for insurance coverage required to ensure the survival of their child care centers due to the Civil Authorities' response to the COVID-19 pandemic. As a result of these Civil Authority Orders, Plaintiff and Class members have incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses, which losses are covered under the terms of Defendant's insurance policies.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on behalf of the following Class:

> All Child Care Centers who care for children who have suffered business interruption and lost income as a result of Civil Authority Orders issued in response to the COVID-19 pandemic.

39.     Upon information and belief, Defendant does not cover business interruption services for all daycare centers in contravention to the uniform language contained in the insurance policies it has issued to child care centers.

40.     The exact number of the Class members is unknown as such information is in exclusive control of Defendant. However, due to the nature and commerce involved, Plaintiff believes the Class consists of hundreds of insureds nationwide, making joinder of the Class members impractical.

41.     Common questions of law and fact affect the right of each Class member. Plaintiff is seeking Declaratory Relief for all Class members who run daycare centers with similar polices to Plaintiff. Declaratory relief will permit adjudication of the rights of all parties as to whether Defendant's policies provide coverage for business interruptions losses the Class has suffered as a result of Civil Authority Orders.

42.     Common questions of law and fact that affect the Class members include, but are not limited to:

a.  Whether Defendant was legally obligated to pay for business interruption as a result of Civil Authority Orders issued in response to the COVID-19 pandemic;

b.  Whether Plaintiff and Class members have suffered "property damages" in accordance with the terms and conditions of Defendant's business interruption insurance policies ;

c.  Whether Plaintiff and Class members are excluded from coverage for losses they suffered due to the Civil Authority Orders as a result of the Virus or Bacterial exclusions contained in Defendant's insurance policies;

d.  Whether Defendant is justified in denying Plaintiff and Class members' claims.

43.     The claims and defenses of Plaintiff, as a representative plaintiff, are typical of the claims and defenses of the Class because Defendant wrongfully denied that its policy covers claims to Plaintiff and the Class members.

44.     Plaintiff, as a representative plaintiff, will fairly and adequately assert and protect the interests of the Class.

a.  Plaintiff has hired attorneys who are experienced in prosecuting class actions and will adequately represent the interests of the Class; and

b.  Plaintiff has no conflict of interest that will interfere with the maintenance of a class action.

45.     A class action provides a fair and efficient method for adjudication of the controversy for the following reasons:

a.  Prosecution of separate actions by individual Class members would create a risk of inconsistent and varying results against Defendant when confronted with incompatible standards of conduct; and

b.  Adjudications with respect to individual Class members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications and substantially impair their ability to protect their interests.

46.     Defendant has taken steps to discourage the Class from submitting claims under their policies.  Defendant has sent a uniform letter to all Class members advising them that they

26

do not have a claim under the terms of their policy. For this reason, Declaratory relief for the entire class is appropriate and necessary.

## CAUSE OF ACTION

## DECLARATORY RELIEF

47.    Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

48.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

49.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.  The Civil Authorities' Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b.  The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c.  The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here that are proximately caused by the Civil Authority Orders issued in response to the COVID-19 pandemic;

    d.  The Civil Authorities' Orders trigger coverage under the terms of the Policy;

    e.  The Policy provides coverage to Plaintiff for any current and future civil authority closures of its businesses in New York due to physical loss\or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters; and

    f.  The Policy provides business income coverage in the event that the COVID-19 pandemic directly or indirectly causes a loss or damage at the insured premises or immediate area of the Insured Properties.

    g.

.

50.     Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

51.     Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy

52.     Plaintiff further seeks a Declaratory Judgment to affirm that the Civil Authority Orders trigger coverage.

53.     Plaintiff further seeks a Declaratory Judgment to affirm that Defendant's Policies provide coverage to Plaintiff and the Class for any current and future business personal property losses, loss of business income, and extended special business income losses as a result of Civil Authority orders affecting the operation of their child day care business properties due to physical loss or damage caused by the COVID-19 pandemic.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

    a.  For a declaration that the Civil Authorities Orders constitute an insured impairment on the operation of Plaintiff's Insured business Property.

    b.  To certify the proposed Class under Rule 23(b)(2).

    c.  To direct notice to the Class under Rules 23.

    d.  For a declaration that the Civil Authorities' Orders constitute the type of restriction on business operations that is defined in the Policy.

    e.  For a declaration that the Civil Authorities' Orders trigger coverage under the Policy.

    f.  For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued Civil Authority closures of its businesses due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Policy's Civil Authority coverage parameters.

28

g. For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff's Insured Properties or the immediate area of the Plaintiff's Insured Properties.

h. For such other relief as the Court may deem proper.

## <u>TRIAL BY JURY IS DEMANDED</u>

Plaintiff hereby demands trial by jury.

Dated: May 7, 2020            Respectfully submitted,

*/s/ Michael Weinkowitz*

Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
Michael Weinkowitz, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff and the Class*

# EXHIBIT B-3

# U.S. District Court
## District of New Jersey [LIVE] (Trenton)
## CIVIL DOCKET FOR CASE #: 3:20-cv-05778-FLW-DEA

M. ILHAN UZEL, DMS, DSC v. THE HANOVER INSURANCE GROUP, INC.

Date Filed: 05/11/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

Assigned to: Chief Judge Freda L. Wolfson
Referred to: Magistrate Judge Douglas E. Arpert
Cause: 28:2201 Declaratory Judgment

**Plaintiff**

**M. ILHAN UZEL, DMS, DSC**
*doing business as*
MERCER CENTER FOR IMPLANTS
AND PERIODONTICS AT PRINCETON

represented by **MICHAEL M. WEINKOWITZ**
LEVIN SEDRAN & BERMAN LLP
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
(215) 592-1500
Email: mweinkowitz@lfsblaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**THE HANOVER INSURANCE GROUP, INC.**
*doing business as*
THE HANOVER

**Defendant**

**CITIZENS INSURANCE COMPANY OF AMERICA**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/11/2020 | 1 | COMPLAINT against CITIZENS INSURANCE COMPANY OF AMERICA, THE HANOVER INSURANCE GROUP, INC. d/b/a THE HANOVER ( Filing and Admin fee $ 400 receipt number ANJDC-10798943) with JURY DEMAND, filed by M. ILHAN UZEL, DMS, DSC, d/b/a MERCER CENTER FOR IMPLANTS AND PERIODONTICS AT PRINCETON. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7)(WEINKOWITZ, MICHAEL) (Entered: 05/11/2020) |
| 05/11/2020 | 2 | Corporate Disclosure Statement by M. ILHAN UZEL, DMS, DSC, d/b/a MERCER CENTER FOR IMPLANTS AND PERIODONTICS AT PRINCETON identifying none as Corporate Parent.. (WEINKOWITZ, MICHAEL) (Entered: 05/11/2020) |
| 05/11/2020 | | Chief Judge Freda L. Wolfson and Magistrate Judge Douglas E. Arpert added. (mg) (Entered: 05/12/2020) |
| 05/12/2020 | 3 | SUMMONS ISSUED as to CITIZENS INSURANCE COMPANY OF AMERICA, THE HANOVER INSURANCE GROUP, INC.. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (mg) (Entered: 05/12/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2020 12:55:49 | | | |
| **PACER Login:** | fredlonger | **Client Code:** | Covid 19 MDL |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-05778-FLW-DEA Start date: 1/1/1971 End date: 5/15/2020 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| M. ILHAN UZEL, DMS, DSC, d/b/a MERCER CENTER FOR IMPLANTS AND PERIODONTICS AT PRINCETON, | **COMPLAINT** **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| THE HANOVER INSURANCE GROUP, INC. d/b/a THE HANOVER, AND CITIZENS INSURANCE COMPANY OF AMERICA, | |
| Defendants. | |

Plaintiff, M. Ilhan Uzel, MDM, DSc, d/b/a Mercer Center for Implants and Periodontics at Princeton ("Plaintiff") brings this Complaint against The Hanover Insurance Group, Inc. d/b/a The Hanover, and Citizens Insurance Company of America (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, and the suffering of physical harm and impact and damages, within Plaintiff's business premises and/or within the immediate area surrounding and outside its business premises, Plaintiff shut the doors of its business to customers on March 22, 2020. Plaintiff's normal office hours were usually Monday from 7:00 a.m. to 4:00

p.m.; Tuesday from 9:00 a.m. to 5:00 p.m.; Wednesday from 1:00 p.m. to 6:00 p.m.; and Friday from 9:00 a.m. to 2:00 p.m.

3.    Plaintiff's insurance policy provides coverage for all non-excluded business losses and thus provides coverage here.

4.    As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## JURISDICTION

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff is a dental office in New Jersey and a citizen of New Jersey.  Defendant The Hanover Insurance Group, Inc. is a Massachusetts corporations with their principal place of business in Massachusetts. Defendant Citizens Insurance Company of America is a Michigan corporation with its principal place of business in Michigan. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.    The Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities in the State of New Jersey. At all relevant times, Defendants transacted, solicited, and conducted business in New Jersey through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New Jersey.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendants are a corporation that has

substantial, systematic, and continuous contacts in the State of New Jersey, and as a result is subject to personal jurisdiction in this District.

8.      The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## PARTIES

9.      At all relevant times, Plaintiff was authorized to do business and was doing business in the State of New Jersey, County of Mercer. Plaintiff operates, manages and owns a dental office. The office is located at 601 Ewing Street, Suite B-15, Princeton, NJ 08540 ("Insured Property"). Plaintiff is a citizen of New Jersey.

10.     At all relevant times, Defendant Citizens Insurance Company of America is a property and casualty company.  Defendant is a citizen of Howell, Michigan, being organized under the laws of the State of Michigan and with its headquarters and principal place of business at 808 N Highlander Way, Howell, MI 48843.  On information and belief Citizens Insurance Company of America is a member of The Hanover Insurance Group, Inc.

11.     At all relevant times, Defendant The Hanover Insurance Group, Inc. is a property and casualty company.  Defendant is a citizen of Massachusetts, being organized under the laws of the Commonwealth of Massachusetts and with its headquarters and principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653.

12.     Defendants issued an insurance policy with Policy Number OBY-D429833-02 to Plaintiff for the period November 16, 2019 to November 16, 2020. *See* Policy Declaration, attached hereto as Exhibit 1. Defendants transacts business of insurance in the State of New Jersey and within the County of Mercer, and the basis of this suit arises out of such conduct.

## FACTUAL BACKGROUND

**I.    Insurance Coverage**

3

13.     Defendants entered into a contract of insurance with Plaintiff, whereby Plaintiff agreed to make payments to Defendants in exchange for Defendants' promise to indemnify Plaintiff for losses including, but not limited to, business income losses at Plaintiff's Insured Property.

14.     The Insured Property is covered under a policy issued by Defendants. *See* Ex. 1 (hereinafter "Policy").

15.     The Policy provides, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages.

16.     Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures for a variety of reasons, including by order of Civil Authority.

17.     Under the Policy, business interruption insurance coverage is extended to apply to, *inter alia,* the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred.

18.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

19.     Based on information and belief, Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic.

## II.     The Coronavirus Pandemic

20.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured

Property would be a direct physical loss requiring remediation to clean the surfaces of the offices and retail store constituting the Insured Property.

21.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited May 9, 2020).

22.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

### III.     Civil Authority

25.     On March 9, 2020, New Jersey Governor Philip Murphy issued a Proclamation of Public Health Emergency and State of Emergency, the first formal recognition of an emergency situation in the State of New Jersey as a result of COVID-19. *See* Executive Order No.103, herein attached as Exhibit 2.

26.     On March 16, 2020, Governor Murphy issued an Order requiring all non-essential businesses in the State of New Jersey to cease operations and close all physical locations. Businesses that were permitted to remain open were "may remain open if they limit their occupancy to no more than 50 persons and adhere to social distancing guidelines." *See* Executive Order No.104, herein attached as Exhibit 3.

27.     On March 21, 2020, Governor Murphy issued a Stay-at-Home Order for residents of New Jersey. *See* Executive Order No.107, herein attached as Exhibit 4. The Order required that "brick-and-mortar premises of all non-essential retail businesses[1] must close to the public as long as this Order remains in effect."

28.     On March 23, 2020, Governor Murphy issues an Order Suspending All Elective Surgeries and Invasive Procedures, requiring that "all elective surgeries performed on adults, whether medical or dental, and all elective invasive procedures performed on adults, whether medical or dental, are suspended in the State." *See* Executive Order No.109, herein attached as Exhibit 5.

29.     The New Jersey Assembly passed a bill on March 16, 2020 that would provide "a mechanism by which certain businesses that suffer losses due to interruption as a result of the coronavirus disease 2019 pandemic may recover those losses from their insurer if they had a policy of business interruption insurance in force on March 9, 2020, the date on which the Governor declared a Public Health Emergency and State of Emergency in Executive Order 103."[2]

30.     Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their

---

[1] The Order enumerated essential businesses as follows: Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment of foods comparable to what exists at a grocery store; Pharmacies and alternative treatment centers that dispense medicinal marijuana; Medical supply stores;  Retail functions of gas stations; Convenience stores; Ancillary stores within healthcare facilities; Hardware and home improvement stores; Retail functions of banks and other financial institutions; Retail functions of laundromats and dry-cleaning services;  Stores that principally sell supplies for children under five years old; Pet stores; Liquor stores; Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics; Retail functions of printing and office supply shops; and Retail functions of mail and delivery stores.  *See* Exhibit 4.

[2] The bill was pulled from a March 23, 2020 New Jersey Senate vote. "The measure's sponsor, Assemblyman Roy Frieman, D-16th District, told NJBIZ that he wanted to give insurance companies more leeway with changing their policies to include pandemics."  https://njbiz.com/murphy-expected-sign-host-bills-alleviate-covid-19s-economic-impacts/ (last visited May 9, 2020).

credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

31.     The President is articulating a few core points:

   a.   Business interruption is a common type of insurance. It applies to a variety of business establishments, including dental practices as the Plaintiff's.

   b.   Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c.   This pandemic should be covered unless there is a specific exclusion for pandemics.

   d.   If insurers deny coverage, they would be acting in bad faith.

32.     On April 7, 2020, and then on May 6, 2020 Governor Murphy issued Executive Orders declaring that the Public Health Emergency declared in Executive Order No. 103 continues to exist and that all Executive Orders responding to the Public Health Emergency presented by the COVID-19 outbreak remain in full force and effect. *See* Executive Order No. 119 and 138, attached herein as Exhibit 6 and 7, respectively.

33.     These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

## IV.     Impact to Plaintiff

34.     As a result of the Orders referenced herein, Plaintiff is no longer able to offer dental services except for emergency treatment.

35.     The Insured Property is more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to other facilities with open-air ventilation.

36.     Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the patients and the staff require them to work in close proximity to the property.

37.     The virus is physically impacting the Insured Property. Any effort by Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

38.     A declaratory judgment determining that the coverage provided under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the

business due to the shutdown caused by the civil authorities' response is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**CAUSE OF ACTION**
**DECLARATORY RELIEF**

39.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see* also Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada, 2019 WL 1590896, at *6 (D.N.J. Apr. 12, 2019*); City of Asbury Park v. Star Ins. Co.*, 2018 WL 1469056, at *4 (D.N.J. Mar. 26, 2018).

41.     An actual controversy has arisen between Plaintiff and Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendants disputes and denies, *inter alia,* that:

a.   The Orders constitute a prohibition of access to Plaintiff's Insured Property;

b.   The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c.   The Orders trigger coverage;

d.   The Policy provides coverage to Plaintiff for any current and future closures in New Jersey due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

e.   The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

     f.   Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

42.    Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property.

43.    Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

44.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future closures of businesses such as Plaintiff's in New Jersey due to physical loss or damage from the Coronavirus and/or the pandemic and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

45.    Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

    a.   For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

    b.   For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

    c.   For a declaration that the Orders trigger coverage under the Policy.

    d.   For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus.

    e.   For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f.   For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 11, 2020

Respectfully submitted,

*/s/ Michael M. Weinkowitz*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
Michael M. Weinkowitz, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com
mweinkowitz@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*

# EXHIBIT B-4

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CIVIL DOCKET FOR CASE #: 6:20-cv-06308-FPG

Laser Spa of Rochester, LLC v. Erie Insurance Company
Assigned to: Hon. Frank P. Geraci, Jr.
Cause: 28:1332 Diversity-Declaratory Judgement

Date Filed: 05/12/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

### Plaintiff

**Laser Spa of Rochester, LLC**
*doing business as*
Spitale Laser Spa Salon

represented by **John Edward Richmond**
Richmond Vona, LLC
1659 Amherst Street
Suite 100
Buffalo, NY 14214
(716) 500-5678
Fax: (716) 500-5679
Email: john@richmondvona.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arnold Levin**
Levin, Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
*ATTORNEY TO BE NOTICED*

**Daniel Levin**
Levin Sedran & Berman, LLP
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697
215-592-1500
*ATTORNEY TO BE NOTICED*

**Fred S. Longer**
Levin, Fishbein Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
*ATTORNEY TO BE NOTICED*

**Paul W. Evans**
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103
334-269-2343
Fax: 334-954-7555

*ATTORNEY TO BE NOTICED*

**Rachel N. Boyd**
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
P.O. Box 4160
Montgomery, AL 36103
334-269-2343
Fax: 334-954-7555
*ATTORNEY TO BE NOTICED*

**W Daniel Miles , III**
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
PO Box 4160
Montgomery, AL 36103-4160
1-334-269-2343
Email: dee.miles@beasleyallen.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Erie Insurance Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/12/2020 | 1 | COMPLAINT against Erie Insurance Company $ 400 receipt number 0209-3830506, filed by Laser Spa of Rochester, LLC d/b/a Spitale Laser Spa Salon. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Summons, # 5 Civil Cover Sheet)(Richmond, John) (Entered: 05/12/2020) |
| 05/13/2020 |  | Case assigned to Hon. Frank P. Geraci, Jr. Notification to Chambers of on-line civil case opening. (CGJ) (Entered: 05/13/2020) |
| 05/13/2020 |  | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(CGJ) (Entered: 05/13/2020) |
| 05/13/2020 |  | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (CGJ) (Entered: 05/13/2020) |
| 05/13/2020 | 2 | Summons Issued as to Erie Insurance Company. (CGJ) (Entered: 05/13/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2020 10:20:58 | | | |
| PACER Login: | lfsblaw0044:2586701:4460865 | Client Code: | Covid 19 MDL |

5/15/2020

Case 6:20-cv-06308-FPG   Document 1-1   Filed 05/18/20   Page 80 of 129
Case MDL No. 2942   Document 205-6   Filed 05/18/20   Page 4 of 11

| Description: | Docket Report | Search Criteria: | 6:20-cv-06308-FPG |
|---|---|---|---|
| Billable Pages: | 2 | Cost: | 0.20 |

UNITED STATES DISTRICT COURT FOR
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LASER SPA OF ROCHESTER, LLC, doing business as Spitale Laser Spa Salon**<br><br>**Plaintiff,**<br><br>vs.<br><br>**ERIE INSURANCE COMPANY**<br><br>**Defendant.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laser Spa of Rochester LLC, doing business as Spitale Laser Spa Salon, brings this Complaint, alleging against Defendant Erie Insurance Company as follows:

## I.     NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.      In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that all non-essential businesses such as Plaintiff's cease operations, Plaintiff has sustained significant business losses after shutting its doors for customers on March 20, 2020.

3.      Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.      As a result, Plaintiff is entitled to declaratory relief that its salon is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## II.     JURISDICTION

5.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant.

Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6.     The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New York. At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendant purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New York corporation and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New York, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.     <u>PARTIES</u>

8.     At all relevant times, Plaintiff Laser Spa of Rochester LLC, doing business as Spitale Laser Spa Salon ("Spitale"), is a Limited Liability Company authorized to do business and doing business in the State of New York, County of Monroe. Laser Spa of Rochester LLC owns, operates, manages, and/or controls Spitale Laser Spa Salon located at 59 Celebration Drive in Rochester, NY 14620.

9.     At all relevant times, Defendant Erie Insurance Company ("Erie") is a corporation doing business in the County of Erie, State of Pennsylvania, and provides business interruption coverage to its insureds, including Plaintiff.

10.     Defendant issued an Ultrapack Plus Insurance Policy to the Plaintiff (Policy Number Q97-1983025) for the period of January 18, 2020 to January 18, 2021. *See* Ultrapack Plus Policy Declarations page, attached hereto as **Exhibit A.**

11.     The policy, currently in full effect, includes business interruption coverage for, among other things, business personal property and income protection & extra expense.

12.     Plaintiff submitted an insurance claim arising out of business losses sustained due to Plaintiff's shut-down as mandated by New York Civil Authority Orders issued as a result of COVID-19.  On April 1, 2020, Defendant denied Plaintiff's claim and asserted that Plaintiff was not entitled to coverage for its loss of income.

### IV.     FACTUAL BACKGROUND

#### A.     Insurance Coverage

13.     On or about January 18, 2020, Defendant entered into a contract of insurance with the Plaintiff specifically to provide, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its salon located in Monroe County, State of New York (the "Covered Property").

14.     The Covered Property consists of Spitale Laser Spa Salon located at 59 Celebration Drive in Rochester[1] which is owned, leased by, managed, and/or controlled by the Plaintiff.

---

[1] This address is listed as the Covered Property under the Policy.

http://www.spitalelaserspasalon.com (last visited May 7, 2020). Prior to March 22, 2020, the Covered Property was open Tuesday through Friday from 10 a.m. through 4 p.m.

15. The Covered Property is covered under an Ultrapack Plus Insurance Policy issued by the Defendant with Policy Number Q97-1983025 (hereinafter "Policy").

16. The Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of January 18, 2020 through January 18, 2021.

17. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

18. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

19. The "Civil Authority" provision in the Policy issued by Defendant provides coverage as follows:

**C. Additional Coverages**

**1. Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

- 4 -

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

20.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

21.     Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Property be shutdown, or any related losses and/or damages.

22.     The Policy does not contain any virus or bacteria exclusion.

23.     Defendant's denial of coverage is based on its claim that the Covered Property did not sustain "direct physical loss." *See* Denial Letter, attached hereto as **Exhibit B.**

24.     However, Defendant's narrow reading of "loss" renders the Civil Authority provision ineffectual and demonstrates Defendant had no intention of providing coverage for losses Plaintiff faithfully paid premiums to insure against.

**B.     The Coronavirus Pandemic**

25.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.  It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the salon.

26.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 29, 2020).

- 5 -

27.     The CDC has issued a guidance that gatherings of more than 10 people must not occur.  People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

28.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

29.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.     Civil Authority**

30.     On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

31.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

32.     On March 19, 2020, Governor Cuomo ordered all hair salons in the state to be closed effective March 21, 2020 at 8 p.m.  *See* Executive Order No. 202.7, attached hereto as **Exhibit C**.

33.     On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic. To date, this order has been extended to at least May 15, 2020.

34.     As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed.  This Order remains in effect as of this filing.

35.     On April 17, 2020, the State of New York ordered all individuals over the age of two to wear a face covering when in a public place.

36.     Further, on April 10, 2020 President Trump seemed to support insurance coverage

for business loss like that suffered by the Plaintiff:

> <u>REPORTER</u>: Mr. President may I ask you about credit and debt as
> well. Many American individuals, families, have had to tap their
> credit cards during this period of time. And businesses have had to
> draw down their credit lines. Are you concerned Mr. President that
> that may hobble the U.S. economy, all of that debt number one? And
> number two, would you suggest to credit card companies to reduce
> their fees during this time?
>
> <u>PRESIDENT TRUMP</u>: Well it's something that we've already
> suggested, we're talking to them. ***Business interruption insurance***,
> I'd like to see these insurance companies—you know you have
> people that have paid. When I was in private I had business
> interruption. When my business was interrupted through a hurricane
> or whatever it may be, I'd have business where I had it, I didn't
> always have it, sometimes I had it, sometimes, I had a lot of different
> companies. ***But if I had it I'd expect to be paid***. You have people. ***I***
> ***speak mostly to the restaurateurs***, where they have a restaurant,
> they've been paying for 25, 30, 35 years, business interruption.
> They've never needed it. All of a sudden they need it. And I'm very
> good at reading language. I did very well in these subjects, OK. And
> I don't see the word pandemic mentioned. Now in some cases it is,
> it's an exclusion. But in a lot of cases I don't see it. I don't see it
> referenced. And they don't want to pay up. I would like to see the
> insurance companies pay if they need to pay, if it's fair. And they
> know what's fair, and I know what's fair, I can tell you very quickly.
> But business interruption insurance, that's getting a lot money to a
> lot of people. And they've been paying for years, sometimes they
> just started paying, but you have people that have never asked for
> business interruption insurance, and they've been paying a lot of
> money for a lot of years for the privilege of having it, and then when
> they finally need it, the insurance company says 'we're not going to
> give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 29, 2020) (emphasis added).

37.     The President is articulating a few core points:

a.      Business interruption is a common type of insurance.

b.      Businesses pay in premiums for this coverage and should reasonably expect
        they'll receive the benefit of the coverage.

    c.    This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.    If insurers deny coverage, they would be acting in bad faith.

38.    These Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

39.    Plaintiff's salon is unable to open its doors as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally.  Accordingly, Plaintiff has submitted a claim to Defendant related to such losses.

40.    However, Defendant has denied Plaintiff's claim in contravention of the clear policy language entitling Plaintiff to coverage for business losses arising out of the Civil Authority Orders.

**D.**    **Impact on Spitale**

41.    Plaintiff shut its doors to customers at the close of business on March 20, 2020 and continues to be shut down pursuant to New York's Civil Authority Orders referenced herein.

42.    As a further direct and proximate result of the Civil Authority Orders, Plaintiff has been forced to lay off fourteen (14) employees.

43.    Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the salon, there is an ever-present risk that the Covered Property is contaminated and would continue to be contaminated.

44.     Businesses like the Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Covered Property and remain viable for far longer as compared to a facility with open-air ventilation.

45.     Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

46.     The government-mandated closure is physically impacting Plaintiff.  Any effort by the Defendant to deny the reality that the above-referenced Civil Authority Orders have caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation.

47.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the Civil Authority Orders is necessary.  As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION
### DECLARATORY RELIEF

48.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

49.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also Columbus McKinnon Corp. v.*

*SST Casting, Inc.*, No. 08-CV-1672, 2009 WL 1563922, at \*3 (W.D.N.Y. June 3, 2009); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

    50.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.    The Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property;

    b.    The prohibition of access by the Civil Authority Orders has specifically "prohibit[ed] access to the premises" as set forth in the Policy's Civil Authority provision'

    c.    The Policy does not contain an exclusion due to virus here;

    d.    The Civil Authority Orders trigger coverage;

    e.    The Policy includes coverage for losses caused by the Civil Authority Orders;

    f.    The Policy includes coverage for losses caused by the Coronavirus;

    g.    The Policy provides coverage to Plaintiff for any current and future civil authority closures of businesses in Monroe County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    h.    The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

    i.    Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

    51.    Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders "prohibit[] access to the premises" of Plaintiff's Covered Property as set forth in the Policy's Civil Authority provision.

    52.    Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

53. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in Monroe County and New York State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

54. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property.

2) For a declaration that the prohibition of access by the Civil Authority Orders "prohibits access to the premises" as stated in the Policy.

3) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Monroe County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property.

6) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: May 12, 2020                    Respectfully submitted,


                                       */s/ John E. Richmond*
                                       John E. Richmond, Esq.
                                       **RICHMOND VONA, LLC**
                                       1659 Amherst St., Suite 100
                                       Buffalo, NY 14214
                                       Telephone: 716-500-5678
                                       Facsimile: 716-500-5679
                                       john@richmondvona.com

                                       Richard M. Golomb, Esq. (*pro hac vice* pending)
                                       Kenneth J. Grunfeld, Esq. (*pro hac vice* pending)
                                       **GOLOMB & HONIK, P.C.**
                                       1835 Market Street, Suite 2900
                                       Philadelphia, PA 19103
                                       Telephone: (215) 985-9177
                                       Facsimile: (215) 985-4169
                                       rgolomb@golombhonik.com
                                       kgrunfeld@golombhonik.com

                                       Arnold Levin, Esq.
                                       Frederick Longer, Esq.
                                       Daniel Levin, Esq.
                                       **LEVIN SEDRAN & BERMAN, L.L.P.**
                                       510 Walnut Street, Suite 500
                                       Philadelphia, PA 19106-3697
                                       Telephone: (215) 592-1500
                                       alevin@lfsblaw.com
                                       flonger@lfsblaw.com
                                       dlevin@lfsblaw.com

                                       W. Daniel "Dee" Miles, III
                                       Rachel N. Boyd
                                       Paul W. Evans
                                       **BEASLEY, ALLEN, CROW, METHVIN,**
                                       **PORTIS & MILES, P.C.**
                                       P.O. Box 4160
                                       Montgomery, Alabama 36103
                                       Tel: (334) 269-2343
                                       Fax: (334) 954-7555
                                       Dee.Miles@BeasleyAllen.com
                                       Rachel.Boyd@BeasleyAllen.com

Paul.Evans@BeasleyAllen.com

*Counsel for Plaintiff*

# EXHIBIT B-5

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CIVIL DOCKET FOR CASE #: 1:20-cv-05837-JHR-KMW

AMBULATORY CARE CENTER, PA v. SENTINEL
INSURANCE COMPANY, LIMITED
Assigned to: Judge Joseph H. Rodriguez
Referred to: Magistrate Judge Karen M. Williams
Cause: 28:1332 Diversity-Declaratory Judgment

Date Filed: 05/13/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**AMBULATORY CARE CENTER, PA**

represented by **RICHARD M. GOLOMB**
GOLOMB & HONIK, P.C.
1835 MARKET STREET
SUITE 2900
PHILADELPHIA, PA 19103
215-985-9177
Fax: 215-985-4169
Email: rgolomb@golombhonik.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SENTINEL INSURANCE COMPANY,
LIMITED**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/13/2020 | 1 | COMPLAINT against SENTINEL INSURANCE COMPANY, LIMITED ( Filing and Admin fee $ 400 receipt number ANJDC-10809325) with JURY DEMAND, filed by AMBULATORY CARE CENTER, PA. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7) (GOLOMB, RICHARD) (Entered: 05/13/2020) |
| 05/13/2020 | | Judge Joseph H. Rodriguez and Magistrate Judge Karen M. Williams added. (dd, ) (Entered: 05/13/2020) |
| 05/13/2020 | 2 | SUMMONS ISSUED as to SENTINEL INSURANCE COMPANY, LIMITED. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (cry, ) (Entered: 05/13/2020) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2020 10:22:55 | | | |
| **PACER Login:** | fredlonger | **Client Code:** | Covid 19 MDL |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-05837-JHR-KMW Start date: 1/1/1971 End date: 5/15/2020 |

| Billable Pages: | 1 | Cost: | 0.10 |
|---|---|---|---|

Case 1:20-cv-06387-NLH-KMW  Document 1-1  Filed 05/18/20  Page 8 of 19 PageID: 1

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMBULATORY CARE CENTER, PA** | |
| **Plaintiff,** | **COMPLAINT** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **SENTINEL INSURANCE COMPANY, LIMITED** | |
| **Defendant.** | |

Plaintiff Ambulatory Care Center, PA brings this Complaint, alleging against Defendant Sentinel Insurance Company, Limited**,** as follows:

## I.  NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.      In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders"), Plaintiff has sustained significant business losses after all elective medical and surgical procedures were prohibited by civil order entered on March 23, 2020.

3.      Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.      As a result, Plaintiff is entitled to declaratory relief that it is covered for all business losses that have been incurred in an amount greater than $150,000.

## II.   JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000.  The amount in

controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6.      The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New Jersey.  At all relevant times Defendant transacted, solicited, and conducted business in New Jersey through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New Jersey.  Defendant purposefully availed itself of personal jurisdiction in New Jersey because it contracted to provide insurance to Plaintiff in New Jersey which is the subject of this case.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New Jersey corporation and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New Jersey, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## III.   PARTIES

8.      At all relevant times, Plaintiff Ambulatory Care Center, PA ("Ambulatory Care"), is a Professional Association authorized to do business and doing business in the State of New Jersey, County of Cumberland.  Ambulatory Care owns, operates, manages, and/or controls a fully accredited ambulatory care center located at 1133 E Chestnut Avenue, Suite 902 in Vineland, New Jersey 08360-5001.

9.      At all relevant times, Sentinel Insurance Company, Limited ("Sentinel") is a property and casualty insurance company.  Sentinel is a Connecticut company doing business in the State of New Jersey, subscribing to Policy Number 13 SBA TQ0842 issued to the Plaintiff for

the period of February 27, 2020 to February 27, 2021. *See* Policy Declaration page, attached hereto as Exhibit 1. Defendant is transacting the business of insurance in the State of New Jersey and within the County of Cumberland, provides business interruption coverage to its insureds, including Plaintiff, and the basis of this suit arises out of such conduct. On information and belief, Sentinel is a member of The Hartford Financial Services Group, Inc.

10. The policy, currently in full effect, includes business interruption coverage for, among other things, business personal property and income protection & extra expense.

11. Plaintiff submitted an insurance claim arising out of business losses sustained due to Plaintiff's slow-down as a result of COVID-19 and New Jersey civil orders.

## IV. FACTUAL BACKGROUND

### A. Insurance Coverage

12. On or about February 27, 2020, Defendant entered into a contract of insurance with the Plaintiff specifically to provide commercial property insurance including, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its location in Cumberland County, New Jersey (the "Covered Property"[1]).

13. The Covered Property consists of Ambulatory Care, located at 1133 E Chestnut Avenue, Suite 902 in Vineland, New Jersey 08360-5001, which is owned, leased by, managed, and/or controlled by the Plaintiff. *See* http://surgerycenternj.com/ (last visited May 11, 2020). Prior to March 22, 2020, Ambulatory Care was open Monday through Friday with staff present in the facility from 6 a.m. through 6 p.m., performing approximately 75 surgeries per week.

---

[1] This address is listed as the Covered Property under the Policy.

- 3 -

14.     The Covered Property is covered under Policy Number 13 SBA TQ0842 issued to the Plaintiff (hereinafter "Policy").

15.     The Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of February 27, 2020 to February 27, 2021.

16.     Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

17.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property.  This additional coverage is identified as coverage under "Civil Authority."

18.     The "Civil Authority" provision in the Policy issued by Defendant provides coverage as follows:

> q.     **Civil Authority**
> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

19.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

20. Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Property be shutdown, or any related losses and/or damages.

21. The Policy does not specifically exclude virus coverage, and in fact includes a specific endorsement for coverage in the event of a virus, which states "We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus."

**B.** **The Coronavirus Pandemic**

22. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the Covered Property.

23. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 29, 2020).

24. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

25. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

26. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

C.      **Civil Authority**

27.     On March 9, 2020, New Jersey Governor Philip Murphy issued a Proclamation of Public Health Emergency and State of Emergency, the first formal recognition of an emergency situation in the State of New Jersey as a result of COVID-19. *See* Executive Order No.103, herein attached as Exhibit 2.

28.     On March 16, 2020, Governor Murphy issued an Order requiring all non-essential businesses in the State of New Jersey to cease operations and close all physical locations. Businesses that were permitted to remain open were "may remain open if they limit their occupancy to no more than 50 persons and adhere to social distancing guidelines." *See* Executive Order No.104, herein attached as Exhibit 3.

29.     On March 21, 2020, Governor Murphy issued a Stay-at-Home Order for residents of New Jersey. *See* Executive Order No.107, herein attached as Exhibit 4. The Order required that "brick-and-mortar premises of all non-essential retail businesses[2] must close to the public as long as this Order remains in effect."

30.     On March 23, 2020, Governor Murphy issued an Order Suspending All Elective Surgeries and Invasive Procedures, requiring that "all elective surgeries performed on adults, whether medical or dental, and all elective invasive procedures performed on adults, whether

---

[2] The Order enumerated essential businesses as follows: Grocery stores, farmer's markets and farms that sell directly to customers, and other food stores, including retailers that offer a varied assortment  of foods comparable to what exists at a grocery store; Pharmacies and alternative treatment centers that dispense medicinal marijuana; Medical supply stores;  Retail functions of gas stations; Convenience stores; Ancillary stores within healthcare facilities;  Hardware and home improvement stores; Retail functions of banks and other financial institutions; Retail functions of laundromats and dry-cleaning services;  Stores that principally sell supplies for children under five years old; Pet stores; Liquor stores; Car dealerships, but only to provide auto maintenance and repair services, and auto mechanics;  Retail functions of printing and office supply shops; and Retail functions of mail and delivery stores.  *See* Exhibit 4.

medical or dental, are suspended in the State." *See* Executive Order No.109, herein attached as Exhibit 5.

31.     The New Jersey Assembly passed a bill on March 16, 2020 that would provide "a mechanism by which certain businesses that suffer losses due to interruption as a result of the coronavirus disease 2019 pandemic may recover those losses from their insurer if they had a policy of business interruption insurance in force on March 9, 2020, the date on which the Governor declared a Public Health Emergency and State of Emergency in Executive Order 103."[3]

32.     Since that time, Plaintiff has seen a significant interruption in business operations and is unable to operate in the ordinary course of business.

33.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I

---

[3] The bill was pulled from a March 23, 2020 New Jersey Senate vote. "The measure's sponsor, Assemblyman Roy Frieman, D-16th District, told NJBIZ that he wanted to give insurance companies more leeway with changing their policies to include pandemics." https://njbiz.com/murphy-expected-sign-host-bills-alleviate-covid-19s-economic-impacts/ (last visited May 9, 2020).

speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 29, 2020) (emphasis added).

34. The President is articulating a few core points:

a. Business interruption is a common type of insurance.

b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

c. This pandemic should be covered unless there is a specific exclusion for pandemics.

d. If insurers deny coverage, they would be acting in bad faith.

35. On April 7, 2020, and then on May 6, 2020 Governor Murphy issued Executive Orders declaring that the Public Health Emergency declared in Executive Order No. 103 continues to exist and that all Executive Orders responding to the Public Health Emergency presented by the COVID-19 outbreak remain in full force and effect. *See* Executive Order No. 119 and 138, attached herein as Exhibits 6 and 7, respectively.

36. These Orders and proclamations, as they relate to the suspension of all elective medical procedures evidence an awareness on the part of both state and local governments that COVID-19 can and does cause damage to property. This is particularly true in places where

business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

37.    As a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New Jersey and the State of New Jersey generally, Plaintiff has suffered a significant slowdown in business.

38.    **Impact on Ambulatory Care**

39.    Plaintiff has sustained significant business losses after all elective medical and surgical procedures were prohibited by civil order on March 23, 2020.

40.    As a further direct and proximate result of the Civil Authority Orders, Plaintiff has been forced to lay off 10 of its 18 employees, and the remining employees have seen a significant reduction in hours.  Ambulatory Care used to average 80-100 procedures a week; now it is doing approximately 4 per week.

41.    The significant majority of the operations of Ambulatory Care involves elective medical and surgical procedures to adults in New Jersey.  As a result, the order entered by the New Jersey Governor on March 23, 2020 constitutes a prohibition of access to the Covered Property for individuals seeking the aforesaid elective procedures, creating a major slowdown and interruption in Plaintiff's business operations.

42.    Plaintiff's business is not a closed environment and involves close personal contact between staff and customers, creating an ever-present risk that the Covered Property is contaminated and would continue to be contaminated.

43.    Medical facilities contain inherently sick individuals and are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be

retained on the Covered Property and remain viable for far longer as compared to a facility with open-air ventilation.

44.     The government-mandated slowdown is physically impacting Plaintiff. Any effort by the Defendant to deny the reality that the above-referenced Civil Authority Orders have caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation.

45.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the slowdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

**CAUSE OF ACTION**
**DECLARATORY RELIEF**

46.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

47.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Canada*, 2019 WL 1590896, at *6 (D.N.J. Apr. 12, 2019*); City of Asbury Park v. Star Ins. Co.*, 2018 WL 1469056, at *4 (D.N.J. Mar. 26, 2018).

48.     An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

        a.     The Civil Authority Orders constitute a significant business interruption to the Plaintiff;

b.      The Policy does not include an Exclusion of Loss Due to Virus here;

c.      The Civil Authority Orders trigger coverage;

d.      The Policy includes coverage for losses caused by the Civil Authority Orders;

e.      The Policy includes coverage for losses caused by the Coronavirus;

f.      The Policy provides coverage to Plaintiff for any current and future civil authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

g.      The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

h.      Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

49.    Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders create a significant business interruption of Plaintiff's operations.

50.    Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

51.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

52.    Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

1)      For a declaration that the Civil Authority Orders constitute an interruption of Plaintiff's operations.

2)      For a declaration that the Civil Authority Orders trigger coverage under the Policy.

3)      For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in Cumberland County and New Jersey State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

4)      For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property.

5)      For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: May 13, 2020                         Respectfully submitted,


                                            */s/ Richard M. Golomb*
                                            Richard M. Golomb, Esq.
                                            Kenneth J. Grunfeld, Esq.
                                            **GOLOMB & HONIK, P.C.**
                                            1835 Market Street, Suite 2900
                                            Philadelphia, PA 19103
                                            Telephone: (215) 985-9177
                                            Facsimile: (215) 985-4169
                                            rgolomb@golombhonik.com
                                            kgrunfeld@golombhonik.com

                                            Arnold Levin, Esq.
                                            Frederick Longer, Esq.
                                            Daniel Levin, Esq.
                                            **LEVIN SEDRAN & BERMAN, L.L.P.**

510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Tel: (334) 269-2343
Fax: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com

John E. Toczydlowski, Esquire
Trial Attorney
The Reiff Law Firm
1500 JFK Blvd., Suite 501
Philadelphia, PA 19102
215-740-3054 (cell)
215-246-9000 (office-main)
215-246-9012 (office-fax)
JToz@ReiffLawFirm.com

*Counsel for Plaintiff*

# EXHIBIT B-6

# U.S. District Court
## Northern District of Alabama (Southern)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00681-GMB

Southern Dental Birmingham LLC v. Cincinnati Insurance
Company, The
Assigned to: Magistrate Judge Gray M Borden
Cause: 28:1332 Diversity-Declaratory Judgement

Date Filed: 05/14/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Southern Dental Birmingham LLC**

represented by **Paul Wesley Evans**
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103
334-269-2343
Fax: 334-954-7555
Email: paul.evans@beasleyallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wilson Daniel Miles , III**
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
P O Box 4160
Montgomery, AL 36103-4160
334-269-2343
Fax: 334-954-7555
Email: dee.miles@beasleyallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Cincinnati Insurance Company, The**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/14/2020 | 1 | COMPLAINT against Cincinnati Insurance Company, The, filed by Southern Dental Birmingham LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(MRR, ) (Entered: 05/14/2020) |
| 05/14/2020 | 2 | NOTICE REGARDING CONSENT to magistrate judge jurisdiction (MRR, ) (Entered: 05/14/2020) |
| 05/15/2020 | | Filing Fee: Filing fee $ 400, receipt_number 1126-3591528. related document 1 COMPLAINT against Cincinnati Insurance Company, The, filed by Southern Dental Birmingham LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(MRR, ). (Miles, Wilson) (Entered: 05/15/2020) |

5/15/2020

Case 6:20-cv-06302-EPG Document 201-1 Filed 05/19/20 Page 112 of 129
Case MDL No. 2942 Document 205-1 Filed 05/18/20 Page 13 of 20

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2020 09:31:09 | | | |
| **PACER Login:** | lfsblaw0044:2586701:4460865 | **Client Code:** | Covid 19 MDL |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-00681-GMB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

FILED

2020 May-14 PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SOUTHERN DENTAL | ) | |
| BIRMINGHAM LLC, | ) | |
| **Plaintiff,** | ) | CASE NO: _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| THE CINCINNATI INSURANCE | ) | **JURY TRIAL DEMANDED** |
| COMPANY, | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Southern Dental Birmingham LLC brings this action against Defendant The Cincinnati Insurance Company and alleges based upon investigation, experience, information and belief as follows:

### INTRODUCTION

1. Plaintiff operates Southern Dental Birmingham LLC, which is a full-service dental clinic located in Birmingham, Alabama, offering services in cosmetic, general and family, and restorative dentistry. A substantial portion of Plaintiff's business income is derived from elective dental procedures.

2. To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Defendant, including specialty property coverage, as set forth in Defendant's Business Income (and Extra Expense)

1

Coverage Form (Form FA 213 05 16) (attached hereto as Exhibit 1).

3.      Plaintiff's insurance policy through Defendant is an "all-risk" policy that provides coverage for all non-excluded business losses.

4.      Plaintiff's policy through Defendant provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

5.      Plaintiff's policy through Defendant also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the Covered Property.

6.      Plaintiff's policy through Defendant also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7.      Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage),  the policy issued by Defendant does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

8.      On March 28, 2020, Plaintiff was forced to suspend or reduce business operations at Southern Dental Birmingham LLC due to COVID-19 (a.k.a. "coronavirus" or "SARS-CoV-2") and the resultant closure orders issued by civil authorities in Alabama.

9.      Plaintiff made a claim with Defendant under its policy for business interruption coverage, including business income losses and extra expenses incurred.

## PARTIES

10.      Plaintiff Southern Dental Birmingham LLC is a limited liability company organized and existing under the laws of Alabama, which is located in Birmingham, Alabama.

11.      Defendant The Cincinnati Insurance Company is a corporation organized and existing under the laws of Ohio, which has its statutory headquarters at 6200 South Gilmore Road, Fairfield, OH 45014-5141.

## JURISDICTION AND VENUE

12.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides federal courts original jurisdiction over any civil action in which the parties are citizens of different states and where the matter in controversy exceeds in the aggregate the sum of $75,000, exclusive of interest and costs.  There is complete diversity of citizenship between Plaintiff and Defendant because Plaintiff is an Alabama corporation with its principal place of business in Alabama while Defendant is an Ohio corporation with its principal place of business in Ohio.

13.      This Court has personal jurisdiction over Defendant because it has

purposefully availed itself of the privilege of conducting activities in the forum by soliciting, transacting, and conducting its insurance business within the State of Alabama, including issuing insurance policies (including the Policy at issue) and administering claims within the State. As such, Defendant has maintained systematic and continuous business contacts within the State of Alabama, by and through their agents and/or sale representatives.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of Alabama and, as a result, is subject to personal jurisdiction in this District.

15. The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## FACTS

### A. Insurance Coverage

16. Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for the Defendant's promise to indemnify the Plaintiff for losses, including, but not limited to, business income losses at Plaintiff's location at 4960 Valleydale Road #100,

Birmingham, Alabama, 35242 (the "Covered Property"), which is owned, managed, and controlled by the Plaintiff.

17.     The Covered Property is covered under Policy number ECP 036 11 02, issued by Defendant. (hereinafter the "Policy").

18.     The Policy provides (among other things) property, business personal property, business income and extra expense, civil authority order, contamination, and additional coverages.

19.     Plaintiff faithfully paid policy premiums to Defendant specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of civil authority.

20.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically and expressly excluded or limited in the Policy. Defendant agreed to "pay for direct 'loss' to Covered Property . . . caused by or resulting from any Covered Cause of Loss."  The policy defines Covered Cause of Loss as direct physical loss or damage "unless the 'loss' is excluded or limited" by the Policy.

21.     In the policy, Defendant did not exclude or limit coverage for losses from the spread of viruses or communicable diseases.

22.     In the Business Income (and Extra Expense) Coverage Form,

Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct physical loss or damage.

23.    "Business Income" means net income (or loss) before tax that Plaintiff and the other Class members would have earned if no physical loss or damage had occurred as well as continuing normal operating expenses incurred.

24.    In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

25.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

26.    In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustains "and any Extra Expense . . . caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property

6

immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

27. Losses caused by COVID-19 and the related closure orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

**B. The Coronavirus Pandemic**

28. On March 11, 2020, the World Health Organization declared that COVID-19 constituted a global pandemic.

29. On March 13, the Governor for the State of Alabama declared the COVID-19 pandemic a public health state of emergency.

30. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the Covered Property.

31. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

7

32.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

33.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, *i.e.* "fomites," for up to twenty-eight (28) days.

34.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.   The Covered Cause of Loss**

**1.   Physical Loss**

35.     Losses due to the COVID-19 virus pandemic are a Covered Cause of Loss that is not excluded under the Policy.

36.      The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their

presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.

37.     The COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy by denying use of and damaging the Covered Property and by causing a necessary suspension of operations during a period of restoration.

38.     Further, the COVID-19 pandemic renders the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use, which constitutes direct physical loss.

39.     Additionally, Plaintiff's loss of use of the Covered Property constitutes direct physical loss.

### 2.  Civil Authority Orders

40.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

41.     On March 19, 2020, the Alabama State Health Officer issued a civil

9

authority order (attached hereto as Exhibit 2) requiring that "all elective dental and medical procedures" be delayed, which took effect immediately. The Closure Order recognizes that "COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people."

42. On March 19, 2020, the Jefferson County Health Officer issued a civil authority order (attached hereto as Exhibit 3) requiring the closure of all nonessential businesses and services. Further, the Closure Order required that "all elective dental and medical procedures" be delayed, which took effect immediately. The Closure Order recognizes that "community transmission of the infectious agent COVID-19 in Jefferson County that poses significant risk of substantial harm to a large number of people."

43. On March 27, 2020, the Alabama State Health Officer issued a civil authority order (attached hereto as Exhibit 4) requiring the closure of all nonessential businesses and services. Further, the Closure Order required the postponement of all dental procedures, without a limited exception for "procedures necessary to treat an emergency medical conditions" and "to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment." This order has been in effect since March 28, 2020. The Closure Order recognizes that "COVID-19 in the State poses the potential of widespread exposure

10

to an infectious agent that poses significant risk of substantial harm to a large number of people."

44.     On April 3, 2020, the Alabama State Health Officer issued a civil authority Stay-at-Home order (attached hereto as Exhibit 5) requiring Alabama residents to "stay at his or her place of residence except as necessary to perform . . . 'essential activities.'"   The order reiterated that dental procedures were to be postponed with the limited exceptions detailed in the Paragraph 42 of this Complaint.

45.     These Closure Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated by COVID-19.

46.     These Closure Orders prohibited access to Plaintiff's Covered Property and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss, *i.e.* the COVID-19 pandemic.

### D.   <u>Impact on Plaintiff</u>

47.     On or about March 19, 2020, as a result of the COVID-19 pandemic

11

concerns and the Closure Orders referenced herein, Plaintiff was forced close its doors to its dental clinic with the exception of emergency dental procedures, which are a *di minimis* portion of Plaintiff's business. A substantial portion of Plaintiff's business income is derived from elective dental procedures.

48. Because people—staff, patients, community members, and others— frequent all areas of Plaintiff's property, there is an ever-present risk that the Covered Property is contaminated and would continue to be contaminated if the business remained open to the public.

49. Because the business is conducted in an enclosed building, the Covered Property is more susceptible to being or becoming contaminated, as respiratory droplets are more likely to be retained on the Covered Property and fomites within, and remain viable for far longer as compared to other facilities with open-air ventilation.

50. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the patients and the employees require them to interact in close proximity to the property and to one another. Also, dentistry requires personal contact between Plaintiff's employees and patients, which heightens the risk of COVID-19 transmission.

51. The virus is physically impacting the Covered Property. Any effort by the Defendant to deny the reality that the virus causes physical loss and damage

12

would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

52.   As a result of the COVID-19 pandemic and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.  The covered losses incurred by Plaintiff and owed under the Policy are increasing daily.

53.   Plaintiff submitted a claim for loss to Defendant under its Policy due to the presence of COVID-19 and the Closure Orders.

54.   On April 29, 2020, Defendant sent Plaintiff a reservation of rights stating that for a loss to be covered under the Policy, there must be a "physical effect on covered property, such as a deformation, permanent change in physical appearance or other manifestation of a physical effect."  However, the Policy makes no mention of a "physical effect" requirement to establish a covered loss under the Policy.

55.   A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of the COVID-19 pandemic and the Closure Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the

Policy.

# CAUSES OF ACTION
## COUNT I—DECLARATORY JUDGEMENT

56.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-52 as if fully set forth herein.

57.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

58.     An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy to reimburse Plaintiff for the business interruption losses incurred by Plaintiff in connection with suspension of their business due to COVID-19 and the civil authority orders in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.  The Closure Orders constitute a prohibition of access to Plaintiff's Covered Property;

    b.  The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c.  The Closure Orders trigger coverage;

14

d. The Policy provides coverage to Plaintiff for any current and future closures in Chester County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

e. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

59. Plaintiff seeks a Declaratory Judgment to determine whether the Closure Orders constitute a prohibition of access to Plaintiff's Covered Property.

60. Plaintiff further seeks a Declaratory Judgment to affirm that the Closure Orders trigger coverage under the Policy.

61. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future closures of businesses such as Plaintiff's in Jefferson County due to physical loss or damage from the Coronavirus and that the Policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

62. Plaintiff does not seek any determination of whether the Coronavirus is

physically in or at the Covered Property, amount of damages, or any other remedy other than declaratory relief.

## PRAYER FOR RELIEF

Plaintiff requests, by reason of each of the causes set forth above, an order providing as follows:

a) For a declaration that the Orders constitute a prohibition of access to Plaintiff's Covered Property;

b) For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy;

c) For a declaration that the Orders trigger coverage under the Policy;

d) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus;

e) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property; and

f) For such other relief as the Court may deem proper.

Dated: May 14, 2020.

*/s/ W. Daniel "Dee" Miles, III*

16

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
218 Commerce Street
Montgomery, AL 36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com
paul.evans@beasleyallen.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

*Counsel for Plaintiff*

17