UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LASER SPA OF ROCHESTER, LLC doing business as Spitale Laser Spa Salon,

Plaintiff,

vs.

ERIE INSURANCE COMPANY,

Defendants.
_____

Civil Action No. 6:20-cv-06308-FPG
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Respectfully Submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
MURA & STORM, PLLC
*Attorneys for Defendant*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL ARGUMENT .......................................................................................................... 1

    I.     LEGAL STANDARD ............................................................................................ 1

    II.    PLAINTIFF HAS FAILED TO PLEAD A COVERED CIVIL AUTHORITY CLAIM ................................................................................................................... 2

         A.  Required Elements for Civil Authority Coverage ................................. 2

         B.  Cause of the Property Damage .............................................................. 5

         C.  Proximity to the Damaged Property ..................................................... 13

         D.  Reason for the Civil Authority Action ................................................. 14

CONCLUSION .................................................................................................................... 15

i

Mura &amp; Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

## TABLE OF AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 1

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ...................................... 1

*Harry's Cadillac–Pontiac–GMC Truck Co., Inc. v. Motors Ins. Corp.,* 126 N.C.App. 698 (Ct.App.N.C.1997) .................................................................................................. 6

*Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398 (1st Dept. 1981), *affd.* 56 N.Y.2d 991 (1982) ..................................................................................................... 6

*Long v. Corning Inc.*, 2020 WL 1467278 (W.D.N.Y. 2020) .................................... 1

*Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) ....... 5

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014) .......................................................................................................... 6

*Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (1st Dept. 2002) ............... 5, 6

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 1445874 (W.D.N.Y. 2020) . 5

*Social Life Magazine, Inc., v. Sentinel Insurance Company Limited*, 20 Civ. 3311 (S.D.N.Y. 2020) ............................................................................................................ 9

## PRELIMINARY STATEMENT

This memorandum of law is submitted along with the declaration of Roy A. Mura, Esq. (the "Mura Declaration") in support of the pre-answer motion of defendant, Erie Insurance Company (hereinafter "Erie"), to dismiss the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) based on the complaint's failure to state a claim upon which relief can be granted.

This is an action only for declaratory relief under a commercial property insurance policy issued by Erie to plaintiff ("the subject policy"). Erie denied payment of the claim plaintiff made under the subject policy for plaintiff's alleged loss of business income due to the government-mandated closure of plaintiff's hair salon on March 20, 2020 in response to the COVID-19 pandemic. In this action, plaintiff seeks a declaration of coverage only with respect to its claim for Civil Authority coverage. The facts relevant to this motion, including the relevant policy language, may be found in the accompanying Mura Declaration and its exhibit.

Plaintiff's complaint fails to allege sufficient facts to warrant a declaration of coverage under plaintiff's commercial property insurance policy with Erie. In particular, the complaint fails to allege the necessary elements of a qualifying claim for Civil Authority coverage. For this reason, the complaint must be dismissed.

## LEGAL ARGUMENT

**I.    LEGAL STANDARD**

As recently stated by this Court in *Long v. Corning Inc.*, (No. 19-CV-6422-FPG, 2020 WL 1467278 [W.D.N.Y. Mar. 26, 2020]):

1

Mura&Storm, PLLC • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

[a] party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' *Id.* at 679.

As set forth below, Erie respectfully submits that it has shown on this motion that, even accepting as true all of the factual allegations contained in the plaintiff's complaint and drawing all reasonable inferences in the plaintiff's favor, the complaint does not contain sufficient factual matter to state a claim for relief that is plausible on its face and, therefore, the plaintiff's complaint must be dismissed.

## II.     PLAINTIFF HAS FAILED TO ALLEGE A COVERED CIVIL AUTHORITY CLAIM

### A.     Required Elements for Civil Authority Coverage

Plaintiff's complaint alleges that the subject policy provision under which the plaintiff seeks a declaration of coverage in this matter is as follows:

**C. Additional Coverages**

**1. Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra

expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. ECF No. 1, ¶19 at 4-5.

In declining coverage for the plaintiff's claim, Erie quoted that Civil Authority Additional Coverage provision (ECF Doc. 1-2, at 3-4) and stated:

Civil Authority coverage does not apply here because a Civil Authority did not order that the business be closed due to damage to property within one mile of the premises described in the "Declarations," caused by a peril insured against.

Erie's coverage declination letter also quoted the subject policy's INSURING AGREEMENT and SECTION II – PERILS INSURED AGAINST provisions (ECF Doc. 1-2, at 2-3):

**SECTION I - COVERAGES**

**INSURING AGREEMENT**

We will pay for direct physical "loss" of or damage to covered property at the premises described in the "Declarations" caused by or resulting from a peril insured against.

**SECTION II - PERILS INSURED AGAINST**

**BUILDING(S) - COVERAGE 1**

**BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS - COVERAGE2**

## INCOME PROTECTION - COVERAGE 3

### Covered Cause of Loss

This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy. (Original emphasis.)

The complaint acknowledges that the subject policy's terms "Perils Insured Against" and "Covered Cause of Loss" mean direct physical loss (ECF Doc. 1-2, at 3), and the subject policy provides Income Protection coverage only if there was direct physical loss to property. The complaint alleges that "[t]he Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy." ECF Doc. 1, ¶20 at 5.

Erie did not decline payment of plaintiff's Civil Authority claim based on a policy exclusion, but because plaintiff's claim does not fall within the relevant insuring agreement language of the subject policy.

As set forth above, the Civil Authority provision of the subject policy under which the plaintiff seeks coverage requires three things for Civil Authority coverage to exist and apply:

  (1) <u>Cause of the property damage:</u> a peril insured against must cause damage to property other than property at the insured's location;

  (2) <u>Proximity to the damaged property:</u> access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of such damage and the insured's location is within that area but are not more than one mile from the damaged property; and

(3) <u>Reason for the civil authority action:</u> the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

An examination of plaintiff's complaint reveals that it alleges none of these three, required conditions or elements.

B. <u>Cause of the Property Damage</u>

For Civil Authority coverage under the subject policy to exist and apply, a peril insured against first and foremost must cause damage to property other than property at the insured's premises. The complaint does not allege, as it must, that a peril insured against, namely direct physical loss, damaged property other than property at the plaintiff's premises.

As recently stated by this Court in *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, No. (6:17-CV-06234 EAW, 2020 WL 1445874 [W.D.N.Y. Mar. 25, 2020]):

> It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss. *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). This is true even for "all-risk" policies—"labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 6, 751 N.Y.S.2d 4 (1st Dept. 2002). **Under New York law, the phrase "risks of direct physical loss" has been interpreted to mean "some form of actual, physical damage" to the insured property**. *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (emphasis added).

5

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

As recognized by District Judge Elizabeth A. Wolford in *Satispie*, when a commercial property insurance policy requires that an insured prove a "direct physical loss" to recover under the policy, this means that the insured must allege and show "some form of actual, physical damage" to property. The *Satispie* court relied on previous New York state and federal court decisions, which uniformly hold that when the phrase "direct physical loss" is used in a commercial property insurance policy such as the plaintiff's in this case, the insured must allege and prove that some actual, physical damage occurred to property.

For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.*, (302 A.D.2d 1, 7 [1st Dept. 2002]), the New York appellate court held that:

> the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property (*see Howard Stores Corp. v. Foremost Ins. Co.,* 82 A.D.2d 398, 401, 441 N.Y.S.2d 674, *affd. for reasons stated* 56 N.Y.2d 991, 453 N.Y.S.2d 682, 439 N.E.2d 397 [no coverage under terms of policy for business interruption loss at two stores where no physical damage occurred]; *Harry's Cadillac–Pontiac–GMC Truck Co., Inc. v. Motors Ins. Corp.,* 126 N.C.App. 698, 486 S.E.2d 249 [Ct.App.N.C.1997] [no business interruption coverage where no "direct physical loss" to premises under terms of policy; loss occurred due to inaccessibility of plaintiff's dealership due to snowstorm][.]

Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, (17 F. Supp. 3d 323, 331 [S.D.N.Y. 2014]), the court held that:

> The critical policy language here—"direct physical loss or damage"—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage. Newman Myers simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its inability to access its office from October 29 to November 3,

2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network. The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

Notably, as stated in *Newman*, the court clarified that not only must there be some form of "actual, physical" damage to property, but it must be "actual, demonstrable harm of some form to the premises itself" rather than the "forced closure of the premises for reasons exogenous to the premises themselves[.]"

The plaintiff's complaint in this case acknowledges and concedes that the subject policy provides Civil Authority coverage only if there has been "direct physical loss" to property:

> The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy. ECF Doc. 1, ¶20.

The plaintiff's complaint also recognizes that Erie denied payment of the plaintiff's claim in part because neither plaintiff's property nor any nearby property sustained a "direct physical loss." ECF Doc. 1, ¶23. In spite of that apparent recognition, however, plaintiff has failed to allege in its complaint that direct physical loss caused damage either to its property or to any nearby property.

Instead, the complaint only summarily alleges that "[t]he scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss or damage" and that "contamination of the Covered Property would be a direct physical loss[.]"  ECF Doc. 1, ¶25. The complaint further summarily

alleges that the governmental orders "and proclamations, as they relate to the closure of all 'non-essential businesses,' evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property."  ECF Doc. 1, ¶38.

Such allegations, even if accepted as true, do not contain sufficient factual matter to state a claim for Civil Authority coverage that is plausible on its face, because they do not expressly or impliedly allege that the virus itself caused actual, physical damage to property other than property at the insured's premises. Indeed, plaintiff's complaint emphasizes that plaintiff is not seeking "any determination of whether the Coronavirus is physically in or at the Covered Property."  ECF Doc. 1, ¶54.

Even if the plaintiff's complaint could be read, extremely liberally, to allege that the reported existence of the virus in New York State could have damaged property within one mile of the plaintiff's hair salon premises, however, the complaint would still be subject to dismissal because the mere presence of a virus on property does not qualify as damage caused by "direct physical loss" to that property as that term has been interpreted by the New York state and federal courts.

The issue of whether the presence of the novel coronavirus (SARS-CoV-2) on property qualifies, in and of itself, as "direct physical loss" to that property for the purposes of business income loss or interruption coverage is one that undoubtedly will be heavily litigated in the coming months. However, at least one United States District Court has already had the opportunity to review this issue with respect to the COVID-19 pandemic  and has found that the mere alleged presence of the novel coronavirus on property does not, in and of itself, constitute direct physical loss or damage to property.

On May 14, 2020, United States District Court Judge Valerie E. Caproni heard oral arguments on plaintiff's application by order to show cause for a preliminary injunction in *Social Life Magazine, Inc., v. Sentinel Insurance Company Limited* (20 Civ. 3311 [VEC] [SDNY]), another business interruption loss case stemming from the COVID-19 pandemic. The plaintiff-insured in that case sought coverage for business income losses it allegedly sustained due to the government-ordered March 2020 closure of its printing business. At the conclusion of that oral argument, Judge Caproni denied plaintiff's application for a preliminary injunction, finding, in effect, there to be no likelihood of success of the plaintiff's coverage claim. The oral argument was transcribed and is attached hereto for this Court's convenience and reference as **Exhibit A** (Civ. No. 1:20-cv-03311 ECF Doc. 26-1).

The oral argument of that application included these exchanges between Judge Caproni and Social Life Magazine's counsel, Mr. Fischbarg:

> THE COURT: Let me ask you something. First off, I want to start with basics. Do you agree that New York law applies?
> MR. FISCHBARG: Yes.
> THE COURT: All right. So the -- is it the Roundabout Theatre case?
> MS. GORDON: Yes, your Honor.
> THE COURT: First Department case?
> MS. GORDON: Yes, your Honor. This is Ms. Gordon on behalf of Sentinel.
> THE COURT: Thank you.  Mr. Fischbarg, it would seem to me that the Roundabout case is a real problem for your position. Would you like to explain to me why it doesn't preclude your claim?
> MR. FISCHBARG: Yes. That case applies to off-site property damage rendering the premises at issue inaccessible. So in this case, you don't have off-site property damage. You have on-site property damage.

9

Mura&Storm, PLLC • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

> THE COURT: What is the damage? There is no damage to your property.
> MR. FISCHBARG: Well, the virus exists everywhere.
> THE COURT: It damages lungs. It doesn't damage printing presses (Exhibit A, at 4-5).

\* \* \* \* \*

> MR. FISCHBARG: Mold spores, bacteria, virus, all those are physical items which damage whatever they are on, whatever they land on. And in this case, the virus, when it lands on something and you touch it, you could die from it. So --
> THE COURT: That damages you. It doesn't damage the property (Exhibit A, at 6).

\* \* \* \* \*

> THE COURT: But it's not. This is different. The virus is not specifically in your property that is causing damage. It is everywhere. The Legionnaire example is very different. Because it's not like Legionnaire is running rampant throughout the city, and therefore your office building can get closed. It is that the Legionnaire bacteria is in that building causing –
>
> MR. FISCHBARG: Yes.
>
> THE COURT: -- that building to be shut down.
>
> MR. FISCHBARG: Yes. Yes.  So this virus is everywhere, including this office in particular, this office. In other words, they just did a random survey of people going into a grocery store in New York, and 20 percent tested positive. So, Judge, that's just a one-sample test. So if the infection rate in New York City is 20 percent, then the virus is literally everywhere. So if it –
>
> THE COURT: That's what --
>
> MR. FISCHBARG: -- is --
>
> THE COURT: That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property.

>MR. FISCHBARG: Well, okay, that's –
>
>THE COURT: You may not even have the virus in your property (Exhibit A, at 7-8).

The court further discussed the distinction between cases where some actual, physical damage occurred to property and the *Social Life Magazine* case:

>[T]here is nothing equivalent here. [The plaintiff] can go to his premises. There is no ammonia or mold or anything in the air that's not going to allow him on to the property. In fact, the governor's orders explicitly allow him to go to the property and get his mail or do routine business functions. The only rule is that he has to stay six feet apart from other people. So those cases are entirely distinguishable. Exhibit A, at 12, lines 4-11.

In denying plaintiff's application for a preliminary injunction, Judge Caproni stated:

>I feel bad for your client. I feel bad for every small business that is having difficulties during this period of time. **But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going**. You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies.
>So I will have a more complete order later, but your motion for preliminary injunction is going to be denied. Exhibit A, at 15, lines 1-18 (emphasis added).

Before Judge Caproni could issue her written decision and order, however, on May 22, 2020 the court signed plaintiff's voluntarily dismissal of its action. Civ. No. 1:20-cv-03311 ECF Doc. 30.

As stated by Judge Caproni, "New York law is clear that this kind of business interruption" – meaning coverage that requires direct physical loss – "needs some

damage to the property" and allegations that "the virus is everywhere" is "just not what's covered under these insurance policies."

There is no meaningful distinction between the *Social Life Magazine* case and the present case. The plaintiff in this matter seeks coverage under the subject policy's Civil Authority provision, which requires a direct physical loss to property of others within one mile of the plaintiff's premises. Similar to the plaintiff in *Social Life Magazine*, the plaintiff herein has failed to allege facts that fall within coverage by failing to allege damage caused by direct physical loss to property.

As recognized by Judge Caproni, the mere presence of the novel coronavirus in an area does not constitute actual, direct physical loss or damage to property within the meaning of a commercial insurance policy's business interruption coverage. Under the above-discussed New York case law, the complaint's general allegations that the virus which causes COVID-19 existed somewhere in New York State at the time the state ordered hair salons to close does not amount to an allegation of direct physical loss or damage to property.

Even when read in the light most favorable to the plaintiff and accepting, without conceding, all allegations as true, plaintiff's complaint alleges nothing more than a governmental closure of plaintiff's business due to a pandemic:

> 39. Plaintiff's salon is unable to open its doors as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally.
>
> 41. Plaintiff shut its doors to customers at the close of business on March 20, 2020 and continues to be shut down pursuant to New York's Civil Authority Orders referenced herein (ECF Doc. 1, ¶¶39 and 41).

Having failed to allege that the novel coronavirus caused direct physical loss by damaging property, plaintiff's complaint fails to state a claim for Civil Authority coverage and must be dismissed.

C. <u>Proximity to the Damaged Property</u>

In addition to failing to allege that the virus caused direct physical loss or damage to property, the complaint fails to allege that access to the area immediately surrounding nearby property damaged by direct physical loss was prohibited by civil authority as a result of such damage, and that the plaintiff's location was within that area but are not more than one mile away.

The complaint's allegation that "[t]he government-mandated closure is physically impacting Plaintiff" (ECF Doc. 1, ¶46), even if true, is not an allegation that the COVID-19-causing virus caused direct physical loss to property within a mile of the plaintiff's hair salon premises.

The complaint's allegation that New York State Governor Cuomo's Executive Order 202.7 (ECF Doc. 1-3) and other state and local orders "constitute a prohibition of access to Plaintiff's Covered Property" (ECF Doc. 1, ¶50.a.) does not amount to an allegation that "access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" to such property.

The complaint indisputably fails to plead any "actual, physical" damage to property anywhere, let alone within one mile of the plaintiff's premises. Instead, the complaint pleads precisely what the *Newman* court (*supra*) stated does not qualify for business interruption coverage, namely, the "forced closure of the premises for reasons

13

exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, *supra* 17 F. Supp. 3d at 331, citing *Roundabout Theatre Co. v. Cont'l Cas. Co.*, *supra*.

Having failed to allege that the novel coronavirus caused actual, physical damage to nearby property and that access to plaintiff's premises was prohibited by civil authority as the result of such damage, plaintiff's complaint fails to state a claim for Civil Authority coverage and must be dismissed.

D.  <u>Reason for the Civil Authority Action</u>

Additionally, the complaint must but fails to allege that a civil authority prohibited access to the plaintiff's property because there were dangerous physical conditions resulting from past or continuing damage from direct physical loss to nearby property or that the civil authority took its action to have unimpeded access to such damaged property. Fundamental to this third element of Civil Authority coverage is the requirement that the civil authority took action either in response to dangerous physical conditions resulting from direct physical loss or damage to nearby property, or for the civil authority to have unimpeded access to the damaged property. Neither is alleged in this case.

Having failed to allege that civil authority prohibited access to the plaintiff's property because there were dangerous physical conditions resulting from past or continuing damage from direct physical loss to the nearby property or that the civil authority took its action to have unimpeded access to the damaged property, plaintiff's complaint must be dismissed.

## **CONCLUSION**

Although the complaint is rife with allegations regarding plaintiff's business, the COVID-19 pandemic, and orders issued by civil authorities, it fails to allege: (1) that direct physical loss from the novel coronavirus caused actual, physical damage to someone else's property; (2) that the damaged property was within a mile of the plaintiff's premises; and (3) the civil authority took action either in response to dangerous physical conditions resulting from direct physical loss or damage to nearby property, or for the civil authority to have unimpeded access to the damaged property.

For these reasons, Erie respectfully requests that this Court grant Erie's motion pursuant to Fed. R. Civ. P 12(b)(6) and dismiss the plaintiff's complaint in its entirety.

DATED:    Buffalo, New York
          June 9, 2020

Respectfully submitted,

_____
Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

MURA & STORM, PLLC
*Attorneys for Defendant*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com