UNITED STATES DISTRICT COURT FOR
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LASER SPA OF ROCHESTER, LLC**, doing business as Spitale Laser Spa Salon<br><br>                                        **Plaintiff,**<br><br>**vs.**<br>**ERIE INSURANCE COMPANY**<br><br>                                        **Defendant.** | **Civil Action No. 6:20-cv-06308-FPG** |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT, ERIE INSURANCE COMPANY'S,
MOTION TO DISMISS**</u>

| | |
|---|---|
| Richard M. Golomb, Esq.<br>Kenneth J. Grunfeld, Esq.<br>**GOLOMB & HONIK, P.C.**<br>1835 Market Street, Suite 2900<br>Philadelphia, PA 19103<br>Telephone: (215) 985-9177<br>rgolomb@golombhonik.com<br>kgrunfeld@golombhonik.com | John E. Richmond, Esq.<br>**RICHMOND VONA, LLC**<br>1659 Amherst St., Suite 100<br>Buffalo, NY 14214<br>Telephone: 716-500-5678<br>Facsimile: 716-500-5679<br>john@richmondvona.com |
| W. Daniel "Dee" Miles, III<br>Rachel N. Boyd<br>Paul W. Evans<br>**BEASLEY,        ALLEN,        CROW,
METHVIN, PORTIS & MILES, P.C.**<br>P.O. Box 4160<br>Montgomery, AL 36103<br>Telephone: (334) 269-2343<br>dee.miles@beasleyallen.com<br>rachel.boyd@beasleyallen.com<br>paul.evans@beasleyallen.com<br><br>Dated: October 12, 2020 | Arnold Levin, Esq.<br>Laurence Berman, Esq.<br>Frederick Longer, Esq.<br>Daniel Levin, Esq.<br>**LEVIN SEDRAN & BERMAN LLP**<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3697<br>Telephone: (215) 592-1500<br>alevin@lfsblaw.com<br>flonger@lfsblaw.com<br>dlevin@lfsblaw.com<br>*Counsel for Plaintiff* |

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

     A.    COVID-19 Hits the United States and New York ..................................................2

     A.    Impact on Plaintiff's Business ............................................................................3

III.   Erie Insurance Company and its Current Dispute with Plaintiff ..........................................4

IV.   APPLICABLE LEGAL STANDARDS ......................................................................6

     A.    Standard for Motion to Dismiss in an Insurance Contract Case ...........................6

     B.    Defendant's Motion is Crafted in the Nature of a Motion for Summary Judgment Even if Styled as a Motion to Dismiss, But the Standard to Apply to a Motion to Dismiss is Much Different and Favorable to a Plaintiff Who Has Not Yet Had an Opportunity to Take Discovery and Develop the Case Facts .................................9

V.    ARGUMENT ......................................................................................................12

     A.    Plaintiff Properly and Sufficiently States a Claim for Civil Authority Coverage .12

     B.    Plaintiff Suffered Direct Physical Loss of or Damage to its Property and Plaintiff's Complaint Properly and Sufficiently Alleges as Much .......................12

     C.    Nearby Property Suffered Direct Physical Loss of or Damage to Property and Plaintiff's Complaint Properly and Sufficiently Alleges as Much .......................18

     D.    The Civil Authority Prohibited Access to Plaintiff's Property due to Dangerous Physical Conditions Resulting from Direct Physical Loss or Damage to Nearby Property..............................................................................................................22

V.    CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

Federal Cases

*Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.,*
No. 99-185 TUC ACM, 2000 WL 726789 (D. Ariz. April 18, 2000) ...................................... 14

*Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.,*
189 F.3d 208 (2d Cir. 1999) ................................................................................... 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................... 6, 7

*Conley v. Gibson,*
355 U.S. 41 (1957) ................................................................................... 6

*Essex v. BloomSouth Flooring Corp.,*
562 F.3d 399 (1st Cir. 2009) ................................................................................... 14

*Faber v. Metro. Life Ins. Co.,*
648 F.3d 98 (2d Cir. 2011) ................................................................................... 6

*Five Star Hotels, LLC v. Ins. Co. of Greater New York,*
2011 WL 1216022 (S.D.N.Y. Mar. 24, 2011) ................................................................................... 8

*Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.,*
119 F. Supp. 2d 552 (E.D.N.C. 2000) ................................................................................... 13

*Goldstein v. Pataki,*
516 F.3d 50 (2d Cir. 2008) ................................................................................... 7

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.,*
No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ................................................................................... 14

*Haber v. St. Paul Guardian Ins. Co.,*
137 F.3d 691 (2d Cir. 1998) ................................................................................... 9, 13

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,*
891 F.2d 414 (2d Cir. 1989) ................................................................................... 10

*In re Prudential Lines Inc.,*
158 F.3d 65 (2d Cir. 1998) ................................................................................... 7

*K.C. Hopps, Ltd. v. The Cincinnati Insurance Company*,
  No. 4:20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020) ................................................ 20

*Kazolias v. IBEWLU 363*,
  806 F.3d 45 (2d Cir. 2015) ..................................................................................... 10

*Krijn v. Pogue Simone Real Estate Co.*,
  896 F.2d 687 (2d Cir. 1990) ................................................................................... 10

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) ..................................................................................... 7

*Mastrobuono v. Shearson Lehman Hutton*,
  514 U.S. 52 (1995) .................................................................................................... 8

*Motorists Mutual Ins. Co. v. Hardinger*,
  131 Fed. Appx. 823 (3d Cir. 2005) ........................................................................ 14

*MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*,
  435 F. Supp. 2d 285 (S.D.N.Y. 2006) ..................................................................... 9

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*,
  No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ................ 13, 21

*Newman Myers Kreines Gross Harris P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014) ....................................................................... 16

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014) ....................................................................................... 7

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
  No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016) ...................... 15

*Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*,
  415 F.3d 279 (2d Cir. 2005) ..................................................................................... 7

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*,
  64 F.3d 1991 (6th Cir. 1995) .................................................................................. 13

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*,
  No. 05-1315-JE, 2007 WL 464715 (D. Or. Feb. 7, 2007) ...................................... 14

*Studio 417, Inc., et al. v. The Cincinnati Insurance Company*,
  No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) .................. 20

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
  No CV 17-04908 AB, 2018 WL 3829767 (C.D. Cal. July 11, 2018) ........................................ 13

*VAM Check Cashing Corp. v. Fed. Ins. Co.*,
  699 F.3d 727 (2d Cir. 2012) ..................................................................................................... 7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
  382 U.S. 172 (1965) .................................................................................................................. 10

*Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*,
  818 F.2d 260 (2d Cir.1987) ....................................................................................................... 8

*Westchester Resco Co. v. New England Reins. Corp.*,
  818 F.2d 2 (2d Cir.1987) ........................................................................................................... 8

*White Motor Co. v. United States*,
  372 U.S. 253 (1963) .................................................................................................................. 10


State Cases

*Friends of Danny DeVito v. Wolf*,
  227 A.3d 872 (Pa. 2020) ........................................................................................................... 17

*Garnar v. New York Cent. Mut. Fire Ins. Co.*,
  96 A.D.3d 715 (N.Y.S.2d 2012) ............................................................................................... 13

*General Mills, Inc. v. Gold Medal Insurance Co.*,
  622 N.W. 2d 147 (Minn. Ct. App. 2001) .................................................................................. 15

*Italian Designer Imp. Outlet, Inc. v. New York Cent. Mut. Fire Ins. Co.*,
  891 N.Y.S.2d 260 (Sup. Ct. 2009) ............................................................................................ 8

*Murray v. State Farm Fire & Cas. Co.*,
  509 S.E.2d 1 (W.Va. 1998) ....................................................................................................... 14

*Pank v. Vill. of Canajoharie*,
  275 A.D.2d 508, 712 N.Y.S.2d 210 (2000) .............................................................................. 11

*Rochester Linoleum & Carpet Ctr., Inc. v. Cassin*,
  61 A.D.3d 1201 (N.Y.S.2d 2009) ............................................................................................. 11

*Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*,
  751 N.Y.S.2d 4 (N.Y. App. Div. 2002)........................................................................... 16, 20, 21

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*,
  314 N.E.2d 37 (N.Y.S.2d 1974) ................................................................................ 9

*Villanueva v. Preferred Mut. Ins. Co.*,
  48 A.D.3d 1015 (N.Y.S.2d 2008) .............................................................................. 8

*Winston v. Mezzanine Investments, L.P.*,
  648 N.Y.S.2d 493 (Sup. Ct. 1996) ............................................................................ 8


Federal Rules

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 6

Fed. R. Civ. P. 11(b) ................................................................................................. 17, 19

Fed. R. Civ. P. 56(c)(3) ................................................................................................... 9

Fed. R. Civ. P. 12 ............................................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 6, 7, 11

Fed. R. Civ. P. 56(d) ............................................................................................... 10, 11


State Rules

CPLR 3212(f) ................................................................................................................ 11


Other Authorities

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363
  (3d ed. 2004) ............................................................................................................. 6

I.      **INTRODUCTION**

Plaintiff owns and operates a beauty salon in Monroe County, New York specializing in laser beauty treatments and other personal care services. Plaintiff's business was thriving prior to the onset of the Coronavirus pandemic.  When the pandemic hit the nation, government officials acted in an effort to control the pandemic and the spread of the virus.  In New York, the Governor and the New York Department of Health, issued orders that required all non-essential businesses to cease operation and close their doors. The orders specifically required the complete shutdown of all hair salons, laser hair removal services, and other related personal care services.

Plaintiff was required to abide by these orders and did so.  However, in anticipation that one day such a closure might occur causing Plaintiff purchased an ***ALL RISK*** business interruption policy from Defendant, Erie Insurance Company ("Erie") to help it weather any potential financial storm caused by a forced closure.

Plaintiff is one of thousands of businesses around the country that have similarly been forced to close operations because of the pandemic and suffer losses.  The situation has permeated the economy and been the subject of much national scientific and political debate. As noted in the Declaration of Richard M. Golomb, Esquire (co-counsel for Plaintiff here, and attached as Exhibit A hereto), a number of different types of approaches are being considered to handle the financial consequences of businesses suffering interruption and losses.  *Id.* at ¶ 10 (including discussing "Black Swan" approach by Chubb Insurance).

But against this backdrop of uncertainty in the country, Erie asserts that it owes Plaintiff no coverage under its All Risk policy.  This, despite Plaintiff having paid valuable premium payments to Erie to protect itself against the very types of losses sustained and intended to be

covered by an All Risk policy.  Erie wrongly asserts the following bases to support its Motion to Dismiss:

1.  The Complaint does not allege direct physical loss of or damage to Plaintiff's property or nearby property caused by a Covered Cause of Loss;

2.  The Policy's Civil Authority coverage does not apply because the government orders did not prohibit access to the insured premises nor the area immediately surrounding the damaged property; and

3.  The Policy's Civil Authority coverage does not apply because the government orders were not the result of dangerous physical conditions resulting from past or continuing damage to nearby property or so that the government could have unimpeded access to the damaged property.

*See* Memorandum of Law.  Rather than provide benefits to Plaintiff for losses as to which Erie received valuable premiums, the Defendant instead seeks to foreclose such coverage through litigation based on invalid policy interpretations.

As discussed herein, the Motion should be denied outright, or at the minimum, a decision on the motion should be stayed pending an opportunity for Plaintiff to take discovery in this matter to address the many factual issues that the Motion raises, regardless of Defendant's effort to describe the issues as presenting pure questions of law.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      COVID-19 Hits the United States and New York

In and around January 2020, the United States began to see its first cases of COVID-19. As the pandemic worsened and spread across the nation, federal, state and local authorities took action to address the pandemic and provide for the safety and welfare of the public.  On March

7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.  Complaint at ¶ 30.  On March 12, 2020, Governor Cuomo set restrictions on large gatherings.  *Id.* at ¶ 31.  On March 19, 2020, Governor Cuomo ordered all hair salons, laser hair removal services and other related personal care services in the state to be closed effective March 21, 2020 at 8 p.m. *Id.* at ¶ 32. On March 20, 2020, the State of New York issued a stay-at-home order that all nonessential workers must stay at home as a result of the COVID-19 pandemic.  *Id.* at ¶ 33.  As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed.  *Id.* at ¶ 34 and Civil Authority Orders attached thereto.

The status of the closures has not been stagnant because the Coronavirus and the pandemic itself have not been stable. To the contrary, there have been flares and surges of cases, especially in New York, requiring governmental authorities to modify and re-issue orders to address the fluid situation for the safety of the public.

### A.       Impact on Plaintiff's Business

Laser Spa of Rochester, LLC d/b/a Spitale Laser Spa Salon (hereinafter "Spitale" or "Plaintiff") is a beauty salon and personal care business that focuses its practice on performing laser beauty treatments as well as salon and spa services.  Due to the government closure orders detailed above, Plaintiff was forced to suspend operation of its physical locations and cancel all scheduled appointments.  Complaint at ¶ 50.  Thus, starting on March 13, 2020, Plaintiff lost the functionality and utility of its business including, but not limited, to performing laser hair removal, laser skin tightening, hair cutting and styling, facials, manicures, pedicures and many other services that are part and parcel of its day-to-day responsibilities of its function as a beauty salon. Shortly thereafter, on March 19, 2020, Governor Cuomo issued an order directly addressing

businesses like Plaintiff's, requiring all hair salons, laser hair removal services and other related personal care services in the state to be closed effective March 21, 2020 at 8 p.m, thus effectively serving as a doubling down on the previous closure order. *Id.* at ¶ 32. Understandably, Plaintiff suffered immense business income losses resulting from the government-issued mandatory closure orders.

There can be no dispute here that Plaintiff has adequately alleged that it suffered business income loss, business interruption and extra expense, all of which are the types of losses covered by Defendant's insurance Policy issued to Plaintiff, and these facts are well pleaded in the Complaint and must be accepted as true for purposes of this Motion.  Moreover, with the ubiquitous nature of COVID-19, the mere opening of the doors of the beauty salon presented the risk of, if not the actual occurrence of COVID-19 entering the premises and causing physical impact to the premises and appurtenances.  Moreover, it is worthy of judicial notice that COVID-19 is omnipresent, including inside and outside of the premises, thereby causing physical impact virtually everywhere.

## III.    Erie Insurance Company and its Current Dispute with Plaintiff

Prior to the mandatory closure orders, Plaintiff purchased from Defendant a commercial insurance policy with policy number Q97-1983025 (hereinafter "Policy" ) issued for the period of January 18, 2020 to January 18, 2021 which provides coverage to Plaintiff for losses sustained due to the business closure or interruption by order of Civil Authority.  Complaint ¶ 11 and Policy. Plaintiff, who had no part in the drafting of the Policy language, purchased the policy and paid substantial premiums to Defendant with the reasonable expectation that Defendant would provide for business income loss, extra expense, and civil authority coverage.  *Id.* at ¶¶ 17, 21. Plaintiff

would not have purchased these coverages if he had known the coverage would not be provided if

a forced closure occurred.  There is no dispute that the Policy is in full force and effect.

Relevant to the pending motion, the Policy contains specific coverage for any mandated

suspension of business operation at the insured's location by order of government authority—a

provision known in the insurance industry as Civil Authority Coverage.   Policy at p. 62.

Specifically, the Civil Authority provision of Plaintiff's Policy reads:

> **"1. Civil Authority**
> When a peril insured against causes damage to property other than
> property at the premises described in the "Declarations," we will pay
> for the actual loss of "income" and/or "rental income" you sustain
> and necessary "extra expense" caused by action of civil authority
> that prohibits access to the premises described in the "Declarations"
> provided that both of the following apply:
> > a.  Access to the area immediately surrounding the damaged
> >     property is prohibit by civil authority as a result of the
> >     damage, and the premises described in the "Declarations"
> >     are within that area but are not more than one mile from the
> >     damaged property; and
> > b.  The action of the civil authority is taken in response to
> >     dangerous physical conditions resulting from the damage or
> >     continuation of the peril insured against that caused the
> >     damage, or the action is taken to enable a civil authority to
> >     have unimpeded access to the damaged property."

*Id.*  Put simply, in the event of a mandatory closure by order of government where access to the

premises is prohibited *to any extent*, as is the case here, Defendant is to provide coverage for

Plaintiff's business income losses.

Notably, Plaintiff's Policy does not contain an "Exclusion of Loss Due to Virus or

Bacteria" endorsement.  Such an exclusion is generally included in insurance policies such as the

one at issue in this matter.  Thus, its absence from Plaintiff's policy should be noted and considered

significant.

Due to the mandated closure orders issued by the State of New York, Plaintiff commenced the present action on May 12, 2020 seeking a declaration that it is entitled to coverage under the Civil Authority provision of its Policy issued by Defendant.  Defendant filed the present Motion to Dismiss the Complaint on June 11, 2020.[1]

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Standard for Motion to Dismiss in an Insurance Contract Case

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2)"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The

---

[1] Plaintiff's Opposition to Defendant's Motion to Dismiss is due on October 12, 2020 per this Court's October 5, 2020 Order denying Plaintiff's Motion to Stay proceedings pending the Judicial Panel on Multi-District Litigation's consideration of a motion to consolidate cases against Erie. *See In Re: Erie Covid-19 Business Interruption Protection Insurance Litigation*, MDL No. 2969.

complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556), but it "'requires showing more than a sheer possibility that a defendant has acted unlawfully.'" *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015). In the end, the court will only grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)(quoting *Twombly*, 550 U.S. at 555). In essence, judgment on the pleadings cannot be granted where there is an issue of fact which would support recovery. *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005).

In the context of pleadings related to insurance policies and interpreting insurance policies, if the language is unambiguous the court must read each policy "in light of 'common speech' and the reasonable expectations of a businessperson." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

When a court decides that an insurance policy is ambiguous, it looks outside the policy to extrinsic evidence, if any, to ascertain the intent of the parties. "If, as is often the case, the ambiguities cannot be resolved by examining the parties' intentions, then the ambiguities in the policy ordinarily are construed in favor of coverage and against the insurer, because as the drafter of the policy the insurer is responsible for the ambiguity." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999) (citing *In re Prudential Lines Inc.*, 158 F.3d

65, 77 (2d Cir. 1998); *Westchester Resco Co. v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d Cir.1987)).

In determining whether a policy provision is ambiguous, the focus is on the reasonable expectations of the average insured upon reading the policy. *Villanueva v. Preferred Mut. Ins. Co.*, 48 A.D.3d 1015, 1016 (N.Y.S.2d 2008). "An ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customary practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987). When the insurer fails to submit evidence that resolves the ambiguity, the proper interpretation is an issue of law for the court and the ambiguity must be resolved against the drafter of the contract, the insurer. *Italian Designer Imp. Outlet, Inc. v. New York Cent. Mut. Fire Ins. Co.*, 891 N.Y.S.2d 260, 263-64 (Sup. Ct. 2009).

Whether a term is susceptible to different constructions is "not a question to be resolved in a vacuum"; rather, terms should be found ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Five Star Hotels, LLC v. Ins. Co. of Greater New York*, 2011 WL 1216022, at *7 (S.D.N.Y. Mar. 24, 2011).

Further, in a contract drafted by one party and signed by another party – it is well established that "in construing any written instrument, and particularly an insurance contract, the instrument must be strictly construed against the writer." *Winston v. Mezzanine Investments, L.P.*, 648 N.Y.S.2d 493, 499 (Sup. Ct. 1996). *See also Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62–63 (1995) (ambiguities are construed in favor of the non-drafting party). Under the rule of *contra proferentem,* "the words used should be interpreted most strongly against the

insurer." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697 (2d Cir. 1998). "The New York

Court of Appeals explained that, because insurers generally prepare policies, 'when the meaning

is doubtful, it should be construed most favorably to the insured, who had nothing to do with the

preparation thereof.'" *Id*. (citing *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 314 N.E.2d 37,

39 (N.Y.S.2d 1974)).

    **B.**    **Defendant's Motion is Crafted in the Nature of a Motion for Summary Judgment Even if Styled as a Motion to Dismiss, But the Standard to Apply to a Motion to Dismiss is Much Different and Favorable to a Plaintiff Who Has Not Yet Had an Opportunity to Take Discovery and Develop the Case Facts**

The threshold question and proof necessary in a 12(b)(6) motion is in stark contrast to the

standard set forth in a Rule 56 summary judgment motion. A Rule 12 motion is filed at the close

of pleadings and determines whether a Plaintiff's claims lack facial plausibility. On the other hand,

a Rule 56 motion is filed after the close of all discovery, and the movant must prove that there is

no genuine dispute as to any material fact at which point the movant is entitled to judgment as a

matter of law. Moreover, in a summary judgment motion, the court considers all cited materials

and may also examine evidence beyond the pleadings. Fed. R. Civ. P. 56(c)(3); *see also MSF*

*Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 292 (S.D.N.Y. 2006), *aff'd on other*

*grounds*, 235 F. App'x 827 (2d Cir. 2007).

Here, regardless of how Defendant has attempted to characterize its Motion and avoid it

appearing as a Motion for Summary Judgment, the reality is that Defendant's Motion raises

complex factual issues involving the nature of the business, the closures and the interpretation of

the Policy and its provisions. Defendant has made a factual challenge – that Plaintiff's damage

was not caused by "direct physical loss of or damage to its property" and that the Civil Authority

grant of coverage does not apply – at this early stage in the proceedings in an attempt to strip

Plaintiff of the protections and deference to the facts as pleaded by the Plaintiff that is provided

under 12(b)(6) review.   Plaintiff has pled the opposite.   In a motion to dismiss, the factual allegations of a pleading are taken as true.   The Court must construe the pleading in the manner most favorable to the nonmovant and decide whether, on the face of the claim, a claim is stated upon which relief can be granted, and must bear in mind the policy that, unless there is no doubt as to the result, cases should be analyzed based upon their merits.   *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965); *see also White Motor Co. v. United States*, 372 U.S. 253 (1963).   A court may not dispose of the case on the merits without giving the opposing party a reasonable opportunity to present to the court material relevant to the dispositive issue.   *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990).

Nevertheless, Plaintiff wants to be clear that it has no desire in converting this motion into a summary judgment motion now.   And no notice has been given by or to the parties of such conversion.   However, in an abundance of caution, if the Court were to consider the instant Motion to be more equivalent to a motion for summary judgment because of the fact disputes that it raises, Rule 56(d) allows for a nonmovant to show the court that essential facts or issues exist to justify that the court should defer consideration of such a motion through the showing of affidavits or declarations.   Fed. R. Civ. P. 56(d).   In *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989), the Second Circuit construed Rule 56(d) as requiring that a party seeking further discovery, "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."   *See Kazolias v. IBEWLU 363*, 806 F.3d 45, 54 (2d Cir. 2015).   The New York Courts have held that a continuance of a motion for summary judgment for purposes of discovery should be granted where the party opposing summary judgment files an affidavit

addressing the above-mentioned three requirements with specificity, and particularly when detailed information, necessary to the successful opposition to summary judgment, is in the sole possession of the moving party. *Pank v. Vill. of Canajoharie*, 275 A.D.2d 508, 510, 712 N.Y.S.2d 210, 212 (2000); *see* CPLR 3212(f); *Rochester Linoleum & Carpet Ctr., Inc. v. Cassin,* 61 A.D.3d 1201, 1202 (N.Y.S.2d 2009).

Here, no discovery has taken place to date.  Yet a significant amount of discovery will be required, including direct discovery from Defendant and third party discovery as well.[2]  Moreover, expert interpretation of some of the terms and phrases in the Policy will be relevant here for the interpretation of the Policy.[3]  At this Motion to Dismiss stage, Defendant is attempting to deprive Plaintiff from developing a proper record for the case.[4]

Accordingly, aside from relying on the fact that Defendant has a stiff burden to meet to gain a dismissal of this case under Rule 12 (b) (6) that it has not met, Plaintiff respectfully also suggests that it is entitled to discovery under Rule 56 (d) before any action can be taken on Defendant's Motion because of it raising factual issues involving the interpretation of the Policy and its provisions and factual issues relating to the Civil Authority Orders, the extent of the impact of those Orders on Plaintiff, Plaintiff's compliance with the Orders.

---

[2] *See, i.e.,* ISO subpoenas at Exhibit A (Golomb Decl.) and attachments 1 and 2 therein.

[3] *See, i.e.,* Declaration of Tom Baker, a University of Pennsylvania Wharton professor, on some of the common words and phrases used in policies, at Exhibit A (Golomb Decl.) and attachment 3 therein.

[4] *See* Exhibit A (Golomb Decl.) at ¶14 ("In addition, to address fact questions raised by Defendant in its Motion, expert discovery may be necessary on such matters as: the science of the Coronavirus, sanitation issues, persistence of the Coronavirus in the atmosphere and within properties and adjacent properties, expert opinion about impact of the Coronavirus on property, the meaning of the Civil Authority Orders among other issues. Defendant's attempt to gloss over these factual issues and need for expert evidence should not be countenanced.")

## V.     ARGUMENT

### A.     Plaintiff Properly and Sufficiently States a Claim for Civil Authority Coverage

Defendant asserts it is absolved from providing coverage under the Policy's Civil Authority provision because (1) Plaintiff does not allege direct physical loss of or damage to Plaintiff's property or nearby property caused by a Covered Cause of Loss, (2) the government orders did not prohibit access to the insured premises nor the area immediately surrounding the damaged property, and (3) the government orders were not the result of dangerous physical conditions resulting from past or continuing damage to nearby property or so that the government could have unimpeded access to the damaged property.   However, for similar reasons discussed infra, Defendant's assertions wholly lack merit and its Motion to Dismiss should be denied in its entirety.

### B.     Plaintiff Suffered Direct Physical Loss of or Damage to its Property and Plaintiff's Complaint Properly and Sufficiently Alleges as Much

Defendant claims that the Civil Authority provision of the Policy is inapplicable because Plaintiff did not suffer direct physical loss of or damage to property and, as such, Defendant is absolved from providing coverage.  Memorandum of Law at 5. Specifically, Defendant asserts, that Plaintiff is required to show some form of actual and physical damage, wholly ignoring the phrase "physical loss" in the policy. *Id.* at 7. However, Defendant's argument is predicated on an extremely narrow and erroneous recitation of the circumstances precipitating the Orders, and a thorough review of the factual backdrop refutes these claims.  Contrary to Defendant's assertions, Plaintiff suffered and alleged that COVID-19 caused physical loss of and damage to occur in and around the surrounding location of the insured properties, including nearby properties and, as such, Defendant's Motion should be denied.

Defendant's proposed narrow interpretation of the "physical loss or damage" requirement is contrary to the plain, reasonable, and intended language of the Policy.  *See Hughes v. Potomac Ins. Co. of D.C.*, 1999 Cal. App. 2d 239, 248-49 (Ct. App. 1962) ("Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.").

Neither "direct physical loss" nor "damage" is defined in the Policy[5], but "physical loss of" is clearly an additional, and different, basis for coverage beyond "damage to" property—and a basis which Defendant almost completely ignores. *See Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1991, 2007 (6th Cir. 1995); *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No CV 17-04908 AB, 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018); *see also Narricot Indus., Inc. v. Fireman's Fund Ins. Co*., No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) (recognizing that because the phrase "action of civil authority" was not defined in the policy, the words should be construed according to their ordinary English meaning, and any ambiguity "must be resolved in favor of the insured"). Because these phrases are stated in the disjunctive ("or"), they are clearly separate and distinct triggers of coverage. See *Fountain Powerboat Indus., Inc. v. Reliance Ins. Co*., 119 F. Supp. 2d 552, 557 (E.D.N.C. 2000).

---

[5] "In construing an insurance contract, the tests to be applied are 'common speech' and 'the reasonable expectations of the average insured upon reading the policy.'" *Garnar v. New York Cent. Mut. Fire Ins. Co.*, 96 A.D.3d 715, 716 (N.Y.S.2d 2012). "Under [the reasonable expectation] doctrine, if an ambiguity arises that cannot be resolved by examining the parties' intentions, then the ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697 (2d Cir. 1998).

Numerous courts nationwide agree that physical loss does not require structural damage, but lost operations or inability to use the business is sufficient. *See, e.g., Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding that unpleasant odor was physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 825-27 (3d Cir. 2005) (finding that bacteria contamination of well water would constitute direct physical loss to house if it rendered it unusable); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (finding the presence of ammonia to constitute physical loss or damage because "property can sustain physical loss or damage without experiencing structural alteration"). Just because the COVID molecule is too small to see does not mean that it is not physical and cannot cause loss. Further, in finding coverage, courts have held that the loss of functionality is what is covered. *Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.,* No. 99-185 TUC ACM, 2000 WL 726789, at *2 (D. Ariz. April 18, 2000) ("'physical damage' is not restricted to the physical destruction of harm . . . but includes loss of access, loss of use, and loss of functionality") (emphasis added). Finally, a condition that renders property unsuitable for its intended use constitutes a direct physical loss, "even where some utility remains" constitutes physical loss or damage. *See Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156 (Indiana Super. 2007); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*, No. 05-1315-JE, 2007 WL 464715 (D. Or. Feb. 7, 2007) (finding insured suffered "direct physical loss of or damage to" covered property when the property could not be used for its "ordinary expected purpose" even though the property could still be used for other income-generating purposes). It has even been held that fear of damage can be a direct physical loss. *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) (finding home rendered unusable by increased risk of rockslide suffered direct physical loss even in the absence of structural damage).

A federal court in Oregon took this analysis one step further after an open-air theater shut down because of ambient wildfire smoke and health concerns over poor air quality.  *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016), vacated based on a joint stipulated request by the parties, No. 1:15-CV-019320CL (D. Or. Mar. 6, 2017).  The court noted that air was a physical thing, explaining that "certainly air is not mental or emotional, nor is it theoretical."  Structural damage was not required for a loss and it was a stretch on the part of the insurer to impute that requirement when it was not in the policy.  *Id.*  The theater had to be cleaned, air filters were replaced repeatedly, and the air quality had to improve before business could resume. *Id.*  The court held "[e]ven though the loss or damage was not structural or permanent, the property experienced a loss of 'essential functionality.'"  The court went on to find coverage for the loss of business income when the "smoke infiltrated the theater and rendered it "unusable for its intended purpose."

Coverage has also been found where the impairment of function occurred by operation of law.  In *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W. 2d 147, 150 (Minn. Ct. App. 2001), a routine inspection discovered that oats had been treated with a pesticide that was used for other food products and presented no danger to consumers, but technically was not FDA-approved for oats. The court found coverage for the undamaged oats, holding "[w]hether or not the oats could be safely consumed, they legally could not be used in General Mills' business.  The district court did not err in finding this to be an impairment of function and value sufficient to support a finding of physical damage." *Id.* at 152 (emphasis added).

The Second Circuit caselaw cited by Defendant supports Plaintiff's interpretation of "physical loss" and reiterates that physical loss can occur when a property is uninhabitable or unusable for its intended purpose.

The plaintiffs in *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002), suffered losses due to damage to and the subsequent closure of a street, prohibiting access to the insured's property.  The insured's policy did not provide coverage for business interruption loss resulting from off-site property damage or from the act of any lawfully constituted authority. Id.  The plaintiffs in Roundabout only alleged physical loss or damage had occurred to adjacent property; consequently, the court held that "losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.*  Furthermore, and admitted as much by Defendant in its Motion to Dismiss, the Court in *Social Life Magazine*, was addressing a preliminary injunction motion only.  *Social Life Magazine Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-cv-3311 (S.D.N.Y.). The court interpreted physical damage as requiring an alteration to the integrity of the property and ignored the phrase loss.  The term loss is specifically included in the alternative and requires separate interpretation.  Further, the decision is not final, and the case is being amended to add allegations of impact on property.  Thus, this Court should not consider these rulings dispositive at this stage.

While the court in *Newman Myers Kreines Gross Harris P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 328 (S.D.N.Y. 2014), held that a power outage did not constitute physical loss or damage to premises, it recognized that "the critical policy term at issue, requiring 'physical loss or damage,' does not require that the physical loss or damage be tangible, structural or even visible." *Id*.

In its Complaint, Plaintiff alleges that its insured property was at imminent and continued risk of Coronavirus contamination, if it was not contaminated already. Complaint ¶¶ 41-46. Defendant's arguments essentially criticize Plaintiff's (and the world's) imperfect knowledge about the presence of COVID-19, but if it were knowable where the virus is, there would not likely

16

be an ongoing pandemic. The nature of the pandemic is such that Plaintiff experienced physical loss as a result of the pandemic and the resulting Civil Authority Orders, regardless of an indisputable assertion that COVID-19 was present in Plaintiff's buildings, or anywhere, at any given time.  Rather, the allegations in the Complaint were based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b). Regardless, for purposes of the pleading, the COVID-19 molecule's physical presence at the premises has been adequately asserted. Complaint ¶¶ 25, 28.

As alleged in the Complaint, "the scientific community. . . recognize the Coronavirus as a cause of real physical loss and damage," and the CDC has issued guidance to reduce the spread as the global Coronavirus pandemic is exacerbated by people congregating.  Complaint ¶¶ 25-29; *see also Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 889-90 (Pa. 2020) (affirming the Pennsylvania governor's authority to declare the entire state a "disaster area" because "COVID-19 cases have now been reported in all counties in the Commonwealth"); *see also* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-101.pdf  (City of New York Order explicitly stated that COVID-19 "is causing property loss and damage[.]"). Plaintiff's business has been physically affected by the Coronavirus due to it being present throughout the State of New York, and the severe safety risks associated with allowing individuals to come in close contact.   Complaint ¶¶ 41-46. As alleged in the Complaint, "the global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, 'formites,' for up to twenty-eight (28) days" (Complaint ¶ 28) and that Plaintiff's business is also highly susceptible to rapid person-to-person transmission of the virus, and vice-versa, because the service nature of the business places staff and patients in close proximity to the property and to one another."  Complaint ¶ 45.

Nonetheless, whether Plaintiff did indeed suffer a physical loss of or damage to property caused by a covered cause of loss is in this instance is very much a question of fact, not a static legal issue to be determined at the motion to dismiss stage.  Given that Plaintiff has adequately pled allegations supporting coverage, Defendant's Motion to Dismiss is due to be denied.

### C.    Nearby Property Suffered Direct Physical Loss of or Damage to Property and Plaintiff's Complaint Properly and Sufficiently Alleges as Much

Next, Defendant supports its Motion to Dismiss by asserting that the Civil Authority provision of Plaintiff's Policy is inapplicable because Plaintiff (1) fails to allege physical loss of or damage to nearby property and (2) fails to allege any prohibited access to nearby property. Memorandum of Law at 13-14. However, for many of the same reasons set forth above, Defendant's argument lacks merit and its Motion should be denied.

Addressing the assertions in turn, Defendant's argument is once more predicated on an extremely narrow and incorrect recitation of the circumstances precipitating the Orders as well as an erroneous definition of "physical loss." For the sake of brevity, Plaintiff will refrain from rehashing the relevant law and argument discussed at IV.B *infra*., as it is simple to conclude that the definition of "physical loss" of property asserted *infra* is equally applicable to nearby properties as it is to Plaintiff's insured property. Thus, it is plain that nearby property suffered physical loss of or damage to property and Plaintiff alleged as much.

Again, Defendant's arguments essentially criticize Plaintiff's (and the world's) imperfect knowledge about the presence of COVID-19, but if it were knowable where the virus is, there would not likely be an ongoing pandemic. The nature of the pandemic is such that Plaintiff and all other businesses in the area experienced physical loss as a result of the pandemic and the resulting Civil Authority Orders, regardless of an indisputable assertion that COVID-19 was present in Plaintiff's buildings, or anywhere, at any given time.  Rather, the allegations in the Complaint were

based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b). Regardless, for purposes of the pleading, the COVID-19 molecule's physical presence has been adequately asserted. Complaint ¶¶ 25, 28.

Defendant alternatively argues that the Civil Authority provision in the Policy does not apply because the Orders do not prohibit access to Plaintiff's property nor nearby property.  The purpose of the Orders as they relate to businesses such as Plaintiff's is unambiguous: the operation of laser treatment and personal care services, the very amenities that Plaintiff exists to provide to customers and the potential interruption of which Plaintiff's Policy sought to protect against, are **strictly prohibited by law**. *See* Civil Authority Orders.

Despite the fact that the Orders barred patrons *by law* from accessing Plaintiff's property, Defendant makes unsupported and conclusory assertions that Governor Cuomo's Executive Orders do not amount to a prohibition of access. *See* Memorandum of Law at 13. Contrary to Defendant's assertions, the Executive Orders undoubtedly prohibit access to Plaintiff's property and nearby property as alleged in Plaintiff's Complaint.

As a result of the Orders, Plaintiff is barred by law from using its property for its intended purpose, i.e., providing laser treatment and personal care services at the property. Defendant cannot reasonably claim that when the Executive Order mandates closure of a beauty salon that this somehow just closes the business but doesn't prohibit access to it.

Plaintiff offers authority which more fully supports Plaintiff's argument: *Studio 417, Inc., et al. v. The Cincinnati Insurance Company*, 2020 WL 4692385 and *K.C. Hopps, Ltd. v. The Cincinnati Insurance Company*, No. 4:20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020) [6]  In *Studio*

---

[6] The Honorable Stephen R. Bough of the Western District of Missouri presided over both referenced matters. Judge Bough's Order in *K.C. Hopps* adopted the reasoning detailed in *Studio*

*417*, a case that is very similar to the one before this Court, the plaintiff owned and operated numerous hair salons in the Springfield, Missouri, metropolitan area and sought coverage from its property insurer for business income losses incurred when its hair salons were forced to close as a result of the Coronavirus pandemic and related government closure orders. The decisions in *Studio 417* and *K.C. Hopps* were issued after the filing of all briefing on Defendants' Motion to Dismiss and address two key issues relevant to the Motion to Dismiss before this Court.

Similar to the matter before this Court, a key determination in *Studio 417* was what constitutes direct "physical loss" or "damage." The court denied defendant's motion to dismiss and concluded that plaintiff adequately alleged a direct "physical loss" under the Policy. The court reasoned that because the policy failed to define the key terms of "direct physical loss" and "damage" it was left to "rely on the plain and ordinary meaning of the phrase." *Id.* at 8. Using the plain meaning of "direct," "physical," and "loss," the court concluded that Plaintiff sufficiently alleged physical loss through allegations in its complaint that COVID-19 "lives on" and "is active on inert physical surfaces" resulting in Plaintiff's property being "unsafe" and "unusable". *Id.* Expounding even further, the Court, citing nationwide case law, concluded that absent a physical alteration, a physical loss still occurs when the property is uninhabitable or unusable for its intended purpose and to conclude otherwise would render either "physical loss" or "damage" superfluous. *Id.* at 9.

Further, and most relevant to this specific issue, the *Studio 417* court rejected defendant's argument that the civil authority orders at issue did not prohibit access to the premises as required

---

*417* because both matters involve the same Defendant, similar insurance provisions and similar factual allegations.

by the policy.[7] In doing so, the Court reasoned that at the motion to dismiss stage plaintiff's allegations that it was required to suspend its hair salon operations and/or prohibit all indoor dining[8] at the behest of the government closure orders were plausible allegations to trigger civil authority coverage. *Id.* at 13-14.

In sum, the Court held that (1) COVID-19 causes physical loss by rendering property uninhabitable or unusable for its intended purpose and (2) that the government issued business closure orders do prohibit access to Plaintiff's salon business.

Likewise, *Narricot*, a case decided by Judge Dalzell and analyzed under Pennsylvania law, is analogous to the facts of this case with respect to the "prohibition of access" element of a civil authority claim. *Narricot* concerned business income losses suffered by the plaintiffs at two of its plants in Tarboro, North Carolina and Boykins, Virginia in September of 1999 as a result of Hurricane Floyd. *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002). Plaintiffs brought suit against defendant, Fireman's Fund Insurance Company, claiming coverage under the Civil Authority Clause of the policy. The Court held that a covered event occurred that prohibited access to the premises, relying on the facts that 1) the Town of Taroboro hand-delivered a letter to each industrial facility in town, including Narricot, prohibiting them from operating, and 2) the County of Southampton, where Boykins is located, ordered Narricot to cease industrial operations and did not allow Narricot to resume them until several days later. *Narricot* at *1-2.

---

[7] Defendant also argued that there was no "direct physical loss to property" as required by the policy to trigger civil authority coverage, which the Court rejected for the reasons detailed in the preceding paragraph.

[8] The plaintiff in K.C. Hopps owns and operates several restaurants and bars in the Kansas City metropolitan area.

Based on the foregoing, it is plain that the Orders constituted a prohibition of access to Plaintiff's property and nearby property resulting from physical loss of or damage to property, and Defendant's Motion to Dismiss must be denied.

> **D.      The Civil Authority Prohibited Access to Plaintiff's Property due to Dangerous Physical Conditions Resulting from Direct Physical Loss or Damage to Nearby Property**

Finally, Defendant alleges that Plaintiff failed to alleged that a civil authority prohibited access to the Plaintiff's property because there were dangerous physical conditions resulting from past or continuing damage from physical loss to nearby property and, as such, Defendant is absolved from providing coverage.  Memorandum of Law at 14. Defendant's final argument can simply be categorized as grasping at straws to avoid liability. This argument is essentially a reassertion of the previous two that Plaintiff has already discussed fully and it can be boiled down to two points: (1) Plaintiff fails to allege that there were dangerous physical conditions resulting from physical loss of or damage to property and (2) that the Civil Authority Orders were taken because of those conditions.

As detailed at IV. B and C *infra* and incorporated by reference herein, Plaintiff's property and nearby property suffered physical loss or damage and the Civil Authority Orders prohibited access to property (i.e. took action) in response to those physical conditions.

Thus, Defendant's Motion to Dismiss lacks merit and should be denied.

## V.      CONCLUSION

As set forth herein and in the accompanying documents, for the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ Richard Golomb*<br>Richard M. Golomb, Esq.<br>Kenneth J. Grunfeld, Esq.<br>**GOLOMB & HONIK, P.C.**<br>1835 Market Street, Suite 2900<br>Philadelphia, PA 19103<br>Telephone: (215) 985-9177<br>rgolomb@golombhonik.com<br>kgrunfeld@golombhonik.com | John E. Richmond, Esq.<br>**RICHMOND VONA, LLC**<br>1659 Amherst St., Suite 100<br>Buffalo, NY 14214<br>Telephone: 716-500-5678<br>Facsimile: 716-500-5679<br>john@richmondvona.com |
| W. Daniel "Dee" Miles, III<br>Rachel N. Boyd<br>Paul W. Evans<br>**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**<br>P.O. Box 4160<br>Montgomery, AL 36103<br>Telephone: (334) 269-2343<br>dee.miles@beasleyallen.com<br>rachel.boyd@beasleyallen.com<br>paul.evans@beasleyallen.com<br><br>Dated: October 12, 2020 | Arnold Levin, Esq.<br>Laurence Berman, Esq.<br>Frederick Longer, Esq.<br>Daniel Levin, Esq.<br>**LEVIN SEDRAN & BERMAN LLP**<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3697<br>Telephone: (215) 592-1500<br>alevin@lfsblaw.com<br>flonger@lfsblaw.com<br>dlevin@lfsblaw.com<br>***Counsel for Plaintiff*** |

## <u>CERTIFICATE OF SERVICE</u>

I, Richard M. Golomb, Esquire, certifies that on this date, the foregoing was filed and served via the Court's CM/ECF Filing System.

Date: October 12, 2020

*/s/ Richard M. Golomb*

Richard M. Golomb, ESQUIRE