# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NEWCHOPS RESTAURANT COMCAST LLC, doing business as Chops**<br><br>              **Plaintiff,**<br><br>**vs.**<br><br>**ADMIRAL INDEMNITY COMPANY**<br><br>              **Defendant.** | **JURY TRIAL DEMANDED**<br><br>**No. 2:20-CV-01949-TJS** |

**DECLARATION OF RICHARD M. GOLOMB, ESQUIRE**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT**
**ADMIRAL INDEMNITY COMPANY'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

Pursuant to 28 U.S.C. §1746, the undersigned, **RICHARD M. GOLOMB, ESQUIRE,** hereby makes the following declaration:

1.     I am an attorney admitted to practice before the bar of the United States District Courts for the Eastern District of Pennsylvania, the Supreme Court of the Commonwealth of Pennsylvania and other courts in the United States.

2.     I am a partner in Golomb & Honik, PC and, along with co-counsel, represent the Plaintiff in this matter.

3.     I hereby submit this Declaration in Support of the Plaintiff's Opposition to Defendant Admiral Indemnity Company's Motion to Dismiss the First Amended Complaint.

4.     The purpose of this Declaration is to inform the Court that, contrary to the tone of Defendant's Motion to Dismiss, the factual issues presented in the motion are much more nuanced and complicated.  Because there has been no discovery in this case, a decision on the Motion

1

should at least be deferred until a later date when consideration of the merits of the case can be determined on a fulsome record.

5.       While I am not declaring that the instant Motion is categorically equivalent to a Rule 56 Motion for Summary Judgment, as noted in Plaintiff's Memorandum of Law opposing the Motion, the issues presented are not capable of determination in the abstract, because insurance policies inherently have ambiguities, require interpretations, are contracts of adhesion and involve a need for information from outside sources to assist in an understanding of policy language and impact.

6.       There is no record involving these issues for the Court to consider at this time. Therefore, as a matter of caution in the protection of the rights of my client, I submit herewith exhibits to further elaborate on how the facts and information needed will be developed through proper discovery before any decision can be made as to whether this case properly states a cause of action to withstand the Motion to Dismiss.

7.       As the Court undoubtedly is aware, a Petition is pending before the Judicial Panel for Multidistrict Litigation to determine whether to create an MDL docket and appoint a transferee judge to coordinate consolidated proceedings involving business interruption insurance cases.  *See In Re: Covid-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942 (2020). As of the date of the preparation of this Declaration, the MDL docket shows in excess of 250 cases potentially being centralized and transferred to a transferee Court.  Defendant here, Admiral Indemnity Company, is but one of numerous insurance carriers being sued for failing to provide business interruption coverage to policy holders.

8.       The policies that the various carriers have issues contain similar but not necessarily identical language.  Much of the language, however, has been developed with the assistance of the

Insurance Services Office (hereinafter, "ISO").  Upon information and belief, precisely what the language in specific provisions inserted in a policy means requires information from the ISO.  In addition, policy holders will seek to learn what were carriers and regulators' understanding of these clauses when drafted and the impact inserting such clauses had on premiums charged.  Indeed, in two other cases pending in this Eastern District of Pennsylvania Court, the plaintiffs have served third party discovery through a subpoena for the production of documents on ISO to elicit information that will be useful for the interpretation of policy provisions.  I attach as Exhibit 1 and 2 respectively, the third-party ISO discovery in the cases of *Cadence* and *Bokman* to exemplify this point.[1]  The discovery seeks information about the development of language in policies, communications with insurance commissioners of states and the interaction between carriers and about policy language.  All of this information is relevant to Plaintiff's rights under the Policy in question, thereby precluding a dismissal as a matter of law.

**9.**  In the proceedings before the Panel, the initial movants for the creation of the MDL were Plaintiff and LH Dining, another plaintiff with a case pending before this Court and also one where Admiralty Indemnity Company is the Defendant and moved for dismissal.[2]  As filings occurred before the Panel, one of the interested parties filed support for the creation of an MDL docket that included a Declaration submitted by Professor Tom Baker, a University of Pennsylvania Law School and Wharton professor.  *See,* Declaration of Professor Tom Baker, June

---

[1] I am a co-counsel in each of these cases, and because the Defendants Answered the Complaints in those cases, that afforded me an opportunity to commence discovery, including discovery of documents from the ISO.  Here, the knee jerk filing of the Motion to Dismiss by Admiral is an attempt to deprive my client of its right to take discovery that is necessary before the Court were to consider dismissing this case as having no merit.

[2] Admiral's Motion to Dismiss the LH Dining Case is virtually identical to the Motion filed here against Plaintiff and is being opposed as well for similar reasons expressed by Plaintiff here.  *See, LH Dining L.L.C. v. Admiral Ins. Co.,* No. 2:20-cv-01869.

15, 2020, filed in MDL 2942 at D.E. # 544-1, attached hereto as Exhibit 3.  The significance of Professor Baker's Declaration to this instant motion is his discussion about insurance carriers using various standardize forms, the development of such forms with the ISO, the discussion of proceedings in other countries for a mechanism to address business interruption claims against insurance carriers, as well as other matters discussed in his Declaration.  *Id.*

10.     I also want to make of record in this case the fact that the insurance industry has actively sought, through Congress, a national and uniform approach to resolving the business interruption insurance claims.  In the face of the potential payout of massive amounts of losses in coverage disputes, the insurance industry  has put forth at least one proposed legislative response that would essentially provide a reinsurance program for business interruption losses caused by a pandemic – the Pandemic Risk Insurance Act of 2020 (H.R. 7011) – as well as a proposal called the Business Continuity Protection Program (BCPP) that seeks to serve the same purpose without acknowledging that a pandemic is an insurable risk.  *See* Steve Evans, *PRIA bill introduced with Pandemic Risk Reinsurance Program*, https://www.artemis.bm/news/pria-billintroduced-with-pandemic-risk-reinsurance-program (last visited July 15, 2020).

11.     Similarly, Lloyd's has proposed a "Black Swan" reinsurance program that would cover pandemic losses.[3]  *See* Carolyn Cohn and Alexander Smith, Lloyd's calls for state-backed 'Black Swan' reinsurance,  https://www.msn.com/en-us/finance/markets/lloyds-calls-for-state-backed-black-swan-reinsurance/ar-BB16b2p3 (last visited July 15, 2020).  While those efforts focus on future pandemics, one proposed bill – the Business Interruption Relief Act of 2020 (H.R. 7412) – sought to create a voluntary program that would reimburse insurers who voluntarily paid

---

[3] It is Lloyd's that is characterizing the pandemic as a black swan.  A "black swan" in this context is intended to describe an event that comes as a surprise, has a major effect, and is often rationalized after the fact with the benefit of hindsight.

out business interruption claims.  *See Bill allows interruption insurance claims to be honored during COVID-19 shutdowns*, https://www.timesheraldonline.com/2020/06/30/bill-allows-interruptioninsuranceclaims-to-be-honored-during-covid-19-shutdowns/ (last visited July 15, 2020).

12.     These efforts illustrate that legislators and even the insurance industry itself recognize the crisis that COVID-19 has caused, the vulnerability of the insurance industry and the need for a resolution that is fair to the insureds.

13.     I also want to make part of the record information about proceedings ongoing in the United Kingdom.  COVID-19 obviously is a worldwide problem, and the UK's response to the same business interruption insurance issues raised here is instructive.  The Financial Conduct Authority (the "FCA"), the insurance regulator of the United Kingdom, has filed a single action against a number of insurance companies under the United Kingdom's Financial Market Test Case Scheme concerning business interruption insurance coverage for COVID-19-related losses that will provide guidance to resolving the claims of hundreds of thousands of different small and medium-sized business enterprises.  The FCA's action is proceeding apace, with its scheduled eight-day trial having begun on July 20, only six weeks after the commencement of the action.  *See* https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-trial-timetable.pdf (last visited July 22, 2020).  The results of this litigation may well impact 370,000 policyholders, hundreds of standard-form insurance policies, and dozens of insurers.  *See* https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-list-affected-nsurerspolicies-15-july.pdf (last visited July 22, 2020).  The FCA action makes clear that actions based on business loss insurance policies warrant consideration of the issues on the merits, and not summary dismissals without the development of a proper record.

14.     In addition, to address fact questions raised by Defendant in its Motion, I state that expert discovery may be necessary on such matters as: the science of the Coronavirus, sanitation issues, persistence of the Coronavirus in the atmosphere and within properties and adjacent properties, as well as expert opinion about impact of the Coronavirus on property and the meaning of the Civil Authority Orders among other issues.  Defendant's attempt to gloss over these factual issues and need for expert evidence should not be countenanced.

On behalf of Plaintiff, I respectfully request the Court consider Defendant's Motion to Dismiss as premature and that it should be denied without prejudice.  There are numerous issues of fact to be ascertained as described herein and in Plaintiff's opposition brief.  The matter at hand is not one that is capable of being resolved as a simple matter of law.  Facts and a record must be ascertained.  Thus, while Defendant has not couched its Motion as a Rule 56 Motion, its nature is more akin to a Rule 56 motion and discovery should be permitted.

PURSUANT TO 28 U.S.C. §1746 I DECLARE UNDER PENALTY OF PERJURY ON THIS 27th DAY OF JULY 2020, THAT THE FOREGOING IS TRUE AND CORRECT.

_____
**RICHARD M. GOLOMB, ESQUIRE**

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Pennsylvania

| | |
|---|---|
| HUMANS & RESOURCES, LLC d/b/a Cadence | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.  2:20-cv-02152-TJS |
| FIRSTLINE NATIONAL INSURANCE COMPANY | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Insurance Services Office (ISO)
545 Washington Boulevard, Jersey City, NJ 07310

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Document Request Attached as Appendix A

| Place: Golomb & Honik, P.C.<br> 1835 Market Street, Suite 2900<br> Philadelphia, PA 19103 | Date and Time:<br><br>08/07/2020 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  07/17/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/Kenneth J. Grunfeld |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff, HUMANS & RESOURCES, LLC d/b/a Cadence , who issues or requests this subpoena, are:

Kenneth J. Grunfeld, Esq., Golomb & Honik, P.C., 1835 Market Street, Ste 2900, Philadelphia, PA 19103; kgrunfeld@golombhonik.com; 215-985-9177

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:20-cv-02152-TJS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Appendix A

## DEFINITIONS

1.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

3.     The terms "You" and "your" refer to Insurance Services Office (ISO) and, where applicable, any of its present or former divisions, officers, directors, employees, partners, corporate parent, agents, representatives, predecessors, successors, subsidiaries, or affiliates.

4.     The term "Virus and Bacteria Exclusion" (the "Exclusion") is defined as endorsement CP 01 40 07 06 – Exclusion Of Loss Due To Virus Or Bacteria, published by the ISO in 2006.  *See* https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf (last visited July 7, 2020).

5.     The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

6.     Relating.   The term "relating" means concerning, relating to, referring to, describing, evidencing or constituting, and vice versa.

7.     All/Any/Each.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

8.     And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.     Number.  The use of the singular form of any word includes the plural and vice versa.  Whenever necessary to bring within the scope of any request all information that might

otherwise be construed to be outside its scope, (a) the use of a verb in any tense shall be construed as the use of the verb in all other tenses, (b) the use of the singular shall be construed as the use of the plural, and vice versa, and (c) "each" shall be construed to mean "any," and vice versa.

10.     If information stored in, or accessible through, computers or other data retrieval systems is produced, it must be accompanied with instructions and all other materials necessary to use or interpret such data, including any data dictionaries or other descriptive materials.

## INSTRUCTIONS

1.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2.      These document requests are continuing in nature, and you are required to supplement your responses to these document requests if you acquire responsive information after serving your initial answers.  If you fail to do so, you may be precluded at trial from introducing evidence relating to the subject matter of these document requests, or subject to other sanctions.

3.      Each request is to be construed independently and answered separately, fully and completely, without reference to any answer or response to any other request, unless specifically requested to do so.

4.      Documents should be produced as they are kept in the ordinary course of business. Any file folder or other container in which a document is kept in the regular course of business is to be treated as part of the document and produced as such.  If information stored in, or accessible through, computers or other data retrieval systems is produced, it must be accompanied with

instructions and all other materials necessary to use or interpret such data, including any data dictionaries or other descriptive materials.

5.     For any document that you claim is being withheld under claim of privilege, work product, or for any other reason, please provide with your responses and objections, a privilege log setting forth the following information:

i.        the general subject matter of the document and a description of the file or other location where it was found;

ii.       the title, heading or other location where it was found;

iii.      the date appearing on the document (if no date appears thereon, then the approximate date on which the document was prepared);

iv.      the general nature or description of the document (*i.e.*, whether it is a letter, memorandum, invoice, etc.) and the number of pages of which it consists;

v.       the identity of each person who prepared, authored or signed the document;

vi.      the identity of each person to whom the document (or copy thereof) was addressed and/or sent;

vii.     the identity of each person who has custody of the document (or a copy thereof); and

viii.    the specific basis or grounds upon which the document is being withheld.

6.     If you do not have all the documents responsive to any paragraph, please so state and identify each person whom you know or believe may have such documents.

7.     In the event that any document called for by this request for production of documents has been destroyed, lost, discarded, or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person authorizing the transfer, destruction or other disposition of the document; person currently in possession of the document; person disposing of the document; and explanation of the circumstances surrounding the disposition.

- 3 -

8.      The "form" of your responses must comply with the Federal Rules of Civil Procedure, and any ESI protocol or stipulation between the parties or as otherwise directed by the Court.

## DOCUMENTS TO BE PRODUCED

1.      All documents concerning the Exclusion, including, but not limited to, all documents concerning:

a.      All internal correspondence among ISO regarding the drafting of the Exclusion;

b.      All correspondence between ISO and any state insurance commissioner, governmental regulatory agency, or governmental official concerning the Exclusion;

c.      All correspondence between ISO and any insurance carrier or organization made up of insurance carriers in whole or in part concerning the Exclusion;

d.      Explanatory memoranda drafted or developed by the ISO concerning the Exclusion;

e.      Preliminary drafts of the Exclusion prepared or circulated by the ISO;

f.      Any workbooks or other materials written, prepared, or distributed by the ISO regarding the Exclusion;

g.      Documents concerning any modification or amendment, or lack thereof, to the Exclusion;

h.      Minutes of meetings held by the ISO, or by any committees or subgroups sponsored by the ISO, concerning the drafting, origin, construction, modification, criticism, or approval of the Exclusion;

i.      Attendance documents for any meetings held by the ISO, or by any committees or subgroups sponsored by the ISO, concerning the drafting, origin, construction, modification, criticism, or approval of the Exclusion;

j.      ISO's statement to state insurance regulators that "Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case;" and

- 4 -

k. Document relating to any consideration of or evaluation of whether the Exclusion includes an exclusion of coverage where access to an insured property has been restricted to premises due to the presence and/or threat of a situation as presented precisely like that presented by COVID-19.

2. The complete Drafting History of the Exclusion Policy Terms, as those terms are found in the Commercial Property Coverage Form, Building and Personal Property Coverage Form, or any other applicable coverage forms, including but not limited to documents of the ISO that comprise, or that refer, relate or pertain to, the Drafting History.

3. All documentation, memoranda, research, or correspondence regarding or detailing the relationship between the Exclusion and its relationship to the costs of insurance coverage, premiums, rates, or any other financial impact of the Exclusion on the insurance industry.

4. All communications or correspondence between ISO and any state or federal regulatory bodies concerning or seeking approval of the Exclusion, as well as all documents provided by and representations made by ISO to such bodies.

5. Any documentation, communications, research, or correspondence concerning ISO's drafting of policy forms to include an exclusion for the term "pandemic."

6. All documents concerning the record retention policies and practices followed by the ISO.

7. All documents relating to Your contractual relationship with Defendant, Firstline National Insurance Company.

8. All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning Business Income Coverage Losses that an insured may sustain due to the necessary suspension of operations ("Business Income" coverage). "Business Income" means net income (net profit or loss before

income taxes) that would have been earned or incurred in the absence of loss as well as continuing normal operating expenses, including payroll.

9.      All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning coverage for expenses that may be incurred by an insured to minimize suspension of business losses ("Extra Expense" coverage). In this regard, "Extra expense" means "necessary expenses an insured incurs due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property[.]"

10.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning coverage for losses that an insured may sustain as a result of the insured complying with an order from a Civil Authority ("Civil Authority" coverage), including an interruption of business caused by a Civil Authority Order.  Civil Authority coverage is defined to include coverage that Defendant agreed to "pay for the actual loss of 'income' the insured may sustain and necessary 'extra expense' caused by action of civil authority that prohibits access to the insured property premises due to physical damage to property near the premises, that prohibits access to property immediately surrounding the damaged property, that prohibits access to premises within a prohibited area, and that the civil authority is taken in response to dangerous physical conditions."

11.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning coverage for losses that an insured may sustain as a result of the insured incurring expenses necessary to protect a Covered Property from further damage in the event of a loss ("Sue and Labor" coverage). "Sue and Labor" coverage includes steps taken by the insured to "[p]rotect property from further

damage" and, "if necessary, for property protection, make reasonable repairs and keep a record of all repair costs."

12.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning defining the word "suspension" to include or exclude the circumstance of an insured's business suffering a "slowdown or cessation of your business activities[.]"  Included with this request is all such documents relating to a "partial or complete cessation" of business activities constituting a "suspension" under the Policy.

13.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning a requirement that the Policy requires an insured to "protect Covered Property from further damage[.]"

14.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Firstline National Insurance Company policies concerning the phrase "period of restoration" – and that coverage begins at the time of the direct loss and lasts through the earlier of the date the property is repaired or resumed at a new permanent location.

# EXHIBIT 2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Pennsylvania

| | |
|---|---|
| SEYMON BOKMAN d/b/a L'UOMO | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 2:20-cv-02887-TJS |
| SENTINEL INSURANCE COMPANY, LIMITED | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Insurance Services Office (ISO)
             545 Washington Boulevard, Jersey City, NJ 07310

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Document Request Attached as Appendix A

| Place: Golomb & Honik, P.C. | Date and Time: |
|---|---|
| 1835 Market Street, Suite 2900 | |
| Philadelphia, PA 19103 | 08/07/2020 9:00 am |

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/17/2020

_CLERK OF COURT_

                                                        OR

_____                /s/ Laurence S. Berman
_Signature of Clerk or Deputy Clerk_          _____
                                              _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Plaintiff,
SEYMON BOKMAN d/b/a L'UOMO _____ , who issues or requests this subpoena, are:
Laurence S. Berman, Esq., Levin Sedran & Berman LLP, 510 Walnut Street, Ste 500, Philadelphia, PA 19106; lberman@lfsblaw.com; 215-592-1500

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:20-cv-02887-TJS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____               _____
                                                                   *Server's signature*

                                             _____
                                                                   *Printed name and title*

                                             _____
                                                                   *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT FOR**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SEYMON BOKMAN d/b/a L'UOMO,**<br><br>                              **Plaintiff,**<br><br>         **vs.**<br><br>**SENTINEL INSURANCE COMPANY,**<br>**LIMITED,**<br><br>                              **Defendant.** | **Civil Action No.: 2:20-cv-02887-TJS** |

**APPENDIX TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION AND SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION DIRECTED TO INSURANCE SERVICES OFFICE (ISO)**

**TO:   Insurance Services Office (ISO)**
**545 Washington Boulevard**
**Jersey City, NJ 07310**

Pursuant to Fed. R. Civ. P. 45, Plaintiff Seymon Bokman d/b/a L'Uomo hereby request Insurance Services Office (ISO) to produce documents, electronically stored information, or objects, set forth below:

**DEFINITIONS**

1.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

3.     The terms "You" and "your" refer to Insurance Services Office (ISO) and, where applicable, any of its present or former divisions, officers, directors, employees, partners, corporate parent, agents, representatives, predecessors, successors, subsidiaries, or affiliates.

4.      The term "Virus and Bacteria Exclusion" (the "Exclusion") is defined as endorsement CP 01 40 07 06 – Exclusion Of Loss Due To Virus Or Bacteria, published by the ISO in 2006.  *See* https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf (last visited July 7, 2020).

5.      The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

6.      Relating.   The term "relating" means concerning, relating to, referring to, describing, evidencing or constituting, and vice versa.

7.      All/Any/Each.   The terms "all," "any," and "each" shall each be construed as encompassing any and all.

8.      And/Or.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      Number.   The use of the singular form of any word includes the plural and vice versa.   Whenever necessary to bring within the scope of any request all information that might otherwise be construed to be outside its scope, (a) the use of a verb in any tense shall be construed as the use of the verb in all other tenses, (b) the use of the singular shall be construed as the use of the plural, and vice versa, and (c) "each" shall be construed to mean "any," and vice versa.

10.      If information stored in, or accessible through, computers or other data retrieval systems is produced, it must be accompanied with instructions and all other materials necessary to use or interpret such data, including any data dictionaries or other descriptive materials.

## INSTRUCTIONS

1.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2.      These document requests are continuing in nature, and you are required to supplement your responses to these document requests if you acquire responsive information after serving your initial answers.  If you fail to do so, you may be precluded at trial from introducing evidence relating to the subject matter of these document requests, or subject to other sanctions.

3.      Each request is to be construed independently and answered separately, fully and completely, without reference to any answer or response to any other request, unless specifically requested to do so.

4.      Documents should be produced as they are kept in the ordinary course of business. Any file folder or other container in which a document is kept in the regular course of business is to be treated as part of the document and produced as such.  If information stored in, or accessible through, computers or other data retrieval systems is produced, it must be accompanied with instructions and all other materials necessary to use or interpret such data, including any data dictionaries or other descriptive materials.

5.      For any document that you claim is being withheld under claim of privilege, work product, or for any other reason, please provide with your responses and objections, a privilege log setting forth the following information:

    i.      the general subject matter of the document and a description of the file or other location where it was found;

     ii.        the title, heading or other location where it was found;

     iii.      the date appearing on the document (if no date appears thereon, then the approximate date on which the document was prepared);

     iv.      the general nature or description of the document (*i.e.*, whether it is a letter, memorandum, invoice, etc.) and the number of pages of which it consists;

     v.        the identity of each person who prepared, authored or signed the document;

     vi.      the identity of each person to whom the document (or copy thereof) was addressed and/or sent;

     vii.     the identity of each person who has custody of the document (or a copy thereof); and

     viii.    the specific basis or grounds upon which the document is being withheld.

6.     If you do not have all the documents responsive to any paragraph, please so state and identify each person whom you know or believe may have such documents.

7.     In the event that any document called for by this request for production of documents has been destroyed, lost, discarded, or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person authorizing the transfer, destruction or other disposition of the document; person currently in possession of the document; person disposing of the document; and explanation of the circumstances surrounding the disposition.

8.     The "form" of your responses must comply with the Federal Rules of Civil Procedure, and any ESI protocol or stipulation between the parties or as otherwise directed by the Court.

## **DOCUMENTS TO BE PRODUCED**

1.     All documents concerning the Exclusion, including, but not limited to, all documents concerning:

a.      All internal correspondence among ISO regarding the drafting of the Exclusion;

b.      All correspondence between ISO and any state insurance commissioner, governmental regulatory agency, or governmental official concerning the Exclusion;

c.      All correspondence between ISO and any insurance carrier or organization made up of insurance carriers in whole or in part concerning the Exclusion;

d.      Explanatory memoranda drafted or developed by the ISO concerning the Exclusion;

e.      Preliminary drafts of the Exclusion prepared or circulated by the ISO;

f.      Any workbooks or other materials written, prepared, or distributed by the ISO regarding the Exclusion;

g.      Documents concerning any modification or amendment, or lack thereof, to the Exclusion;

h.      Minutes of meetings held by the ISO, or by any committees or subgroups sponsored by the ISO, concerning the drafting, origin, construction, modification, criticism, or approval of the Exclusion;

i.      Attendance documents for any meetings held by the ISO, or by any committees or subgroups sponsored by the ISO, concerning the drafting, origin, construction, modification, criticism, or approval of the Exclusion;

j.      ISO's statement to state insurance regulators that "Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case;" and

k.      Document relating to any consideration of or evaluation of whether the Exclusion includes an exclusion of coverage where access to an insured property has been restricted to premises due to the presence and/or threat of a situation as presented precisely like that presented by COVID-19.

2.      The complete Drafting History of the Exclusion Policy Terms, as those terms are found in the Commercial Property Coverage Form, Building and Personal Property Coverage

Form, or any other applicable coverage forms, including but not limited to documents of the ISO that comprise, or that refer, relate or pertain to, the Drafting History.

3.      All documentation, memoranda, research, or correspondence regarding or detailing the relationship between the Exclusion and its relationship to the costs of insurance coverage, premiums, rates, or any other financial impact of the Exclusion on the insurance industry.

4.      All communications or correspondence between ISO and any state or federal regulatory bodies concerning or seeking approval of the Exclusion, as well as all documents provided by and representations made by ISO to such bodies.

5.      Any documentation, communications, research, or correspondence concerning ISO's drafting of policy forms to include an exclusion for the term "pandemic."

6.      All documents concerning the record retention policies and practices followed by the ISO.

7.      All documents relating to Your contractual relationship with Defendant, Sentinel Insurance Company, Limited.

8.      All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning Business Income Coverage Losses that an insured may sustain due to the necessary suspension of operations ("Business Income" coverage). "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred in the absence of loss as well as continuing normal operating expenses, including payroll.

9.      All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning coverage for expenses that may be incurred by an insured to minimize suspension of business losses ("Extra

Expense" coverage). In this regard, "Extra expense" means "necessary expenses an insured incurs due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property[.]"

10.    All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning coverage for losses that an insured may sustain as a result of the insured complying with an order from a Civil Authority ("Civil Authority" coverage), including an interruption of business caused by a Civil Authority Order.  Civil Authority coverage is defined to include coverage that Defendant agreed to "pay for the actual loss of 'income' the insured may sustain and necessary 'extra expense' caused by action of civil authority that prohibits access to the insured property premises due to physical damage to property near the premises, that prohibits access to property immediately surrounding the damaged property, that prohibits access to premises within a prohibited area, and that the civil authority is taken in response to dangerous physical conditions."

11.    All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning coverage for losses that an insured may sustain as a result of the insured incurring expenses necessary to protect a Covered Property from further damage in the event of a loss ("Sue and Labor" coverage).  "Sue and Labor" coverage includes steps taken by the insured to "[p]rotect property from further damage" and, "if necessary, for property protection, make reasonable repairs and keep a record of all repair costs."

12.    All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning defining the word "suspension" to include or exclude the circumstance of an insured's business suffering a

"slowdown or cessation of your business activities[.]"  Included with this request is all such documents relating to a "partial or complete cessation" of business activities constituting a "suspension" under the Policy.

13.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning a requirement that the Policy requires an insured to "protect Covered Property from further damage[.]"

14.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning the phrase "period of restoration" – and that coverage begins at the time of the direct loss and lasts through the earlier of the date the property is repaired or resumed at a new permanent location.

15.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning the exclusion titled, ""Fungi', Wet Rot, Dry Rot, Bacteria and Virus"  including, but not limited to, the interpretation of that exclusion as identified as being in Form SS 40 93 07 05 of Defendant Sentinel Insurance Company, Limited policies.

16.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning Virus Limited Additional Coverage, titled,  "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus"  including, but not limited to, that limited additional coverage and the interpretation of the provisions of that coverage as identified as being in Form SS 40 93 07 05 of Defendant Sentinel Insurance Company, Limited policies.

17.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning Two or More Coverages, titled,  "Insurance Under Two or More Coverages", including, but not limited, to that coverage and its interpretation, as identified as being in Form SS 00 05 10 08  of Defendant Sentinel Insurance Company, Limited policies.

18.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to "No 'direct physical loss'- Business Income"  including but not limited to provisions relating to and concerning the interpretation of interruption of business coverage requiring "direct physical loss of or physical damage to property…caused by or resulting from a Covered Cause of Loss" as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

19.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to "No 'direct physical loss'- Extra Expense"  including but not limited to provisions relating to and concerning the interpretation of interruption of business coverage and extra expense coverage requiring "direct physical loss of or physical damage to property…caused by or resulting from a Covered Cause of Loss" as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

20.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to a "Covered Cause of Loss" including but not limited to provisions relating and concerning interpretation of interruption of business coverage and extra expense coverage  as

identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

21.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to additional coverage for  "Ordinance of Law-Limits" including but not limited to provisions relating and concerning the  interpretation of such coverage as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

22.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning the exclusion titled, "Pollution" exclusion, including, but not limited to, that exclusion as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

23.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning the exclusion titled, "Consequential Losses" exclusion,  including, but not limited to, that exclusion as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

24.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to "Civil Authority" additional coverage  including but not limited to provisions relating to and concerning the interpretation  of such coverage as identified as being in Form SS 00 07 07 05 of Defendant Sentinel Insurance Company, Limited policies.

25.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions

related to "Business Income from Dependent Properties" additional coverage  including but not limited to provisions relating to and concerning the interpretation  of such coverage as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies

26.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to "Extended Business Income" additional coverage  including but not limited to provisions relating to and concerning the interpretation  of such coverage as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies

27.     All documentation, memoranda, research, or correspondence regarding or relating to provisions in Defendant Sentinel Insurance Company, Limited policies concerning provisions related to the "Acts or Decisions" exclusion  including but not limited to provisions relating to and concerning the interpretation  of such exclusion as identified as being in Form SS 00 07 07 05  of Defendant Sentinel Insurance Company, Limited policies.

*/s/ Laurence S. Berman*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900

Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

***Counsel for Plaintiff***

# EXHIBIT 3

# EXHIBIT A

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: COVID-19 BUSINESS    )     **MDL No. 2942**
INTERRUPTION PROTECTION )
INSURANCE LITIGATION       )

**DECLARATION OF PROFESSOR TOM BAKER**

1.     I have been asked by the moving Plaintiffs seeking JPML transfer and

centralization of the cases constituting MDL No. 2942 before Judge Matthew Kennelly in the

United States for the Northern District of Illinois to explain: (a) my initial findings from the

COVID coverage litigation database that I am building at Penn Law School; (b) the standard

form nature of the insurance policies in the database; and (c) why the insurance industry uses

standard forms for these and other insurance policies.  In brief: all the policies in the database are

assembled from standard forms; the provisions we have examined in detail are nearly identical

across insurers; other provisions with greater variation can be categorized into small sets (such as

the presence/absence of a disease exclusion and, if so, what version); and these findings are as

expected, because standardization is essential to the insurance business.

2.     I am the William Maul Measey Professor at the University of Pennsylvania Carey

School of Law ("Penn Law"), with a secondary appointment in the Wharton School.  I am the

Reporter for the American Law Institute's Restatement of the Law, Liability Insurance.  Before

joining Penn, I was the inaugural Connecticut Mutual Professor and Director of the Insurance

Law Center at the University of Connecticut.

3.     I have written extensively on insurance law, markets, and institutions, often

employing empirical methods.  Through my research and other activities, I have had substantial

exposure to the process of drafting, assembling, and working with standard form insurance

policies.  My CV appears as Exhibit 1.

## I.    The COVID Coverage Litigation Tracker Database

4.    The COVID Coverage Litigation Tracker (CCLT) project is my latest empirical legal research project.  For this project, I am leading the construction of a database that contains a comprehensive set of federal COVID-19 insurance coverage cases and an extensive set of state cases.[1]  My team collects many data points for each case, including the coverage sought and, when we can obtain the insurance policy, the relevant standard form components of the policy, identified by form number and author.  We have nearly completed the initial data entry for federal cases filed as of June 10, 2020, and state cases filed as of May 27, 2020.

5.    The CCLT database is made possible by, and is premised on, the standard form nature of insurance policies and the limited number of policy provisions that are relevant to any insurance dispute.

6.    Without standard form policies, there would be no way to group the cases into a manageable set of categories based on the coverage provided.  Because of the standard form nature of the policies, however, we can identify and track the precise policy language at issue in any case simply by recording the relevant form numbers listed on what is known as the "declarations" of each policy.  By comparing the relevant forms, we can group the cases into a manageable number of standard-form-insurance-policy categories.

7.    This same premise lies behind the judicial procedure that the Financial Conduct Authority of the United Kingdom recently instituted to facilitate mass resolution of COVID-19 business interruption claims in the U.K.  The FCA commissioned insurance coverage lawyers to

---

[1] Apart from including Timothy Burns among the group of lawyers from both sides of the insurance coverage bar, ALI staff, and law professors who I consulted when designing the database, none of the lawyers who asked me to prepare this Declaration, or anyone else outside of my team, has had any control over or provided any direction regarding the CCLT database.

review exemplars of the standard form property insurance policies sold in the U.K.  Based on

that review, the FCA identified a small number of standard forms (a total of seventeen "policy

wordings," from eight insurers), the adjudication of which will facilitate the resolution of

thousands of claims, including those made under the policies of insurers that are not engaged in

the proceeding.  See https://www.fca.org.uk/firms/business-interruption-insurance.  The FCA

also identified a small set of questions to be answered by the High Court to speed resolution of

these claims.  *Id.*, Questions for Determination (listing a total of twenty-five questions).

## II.    Standard Form Insurance Policies

8.    The insurance policies at issue in the COVID-19 coverage cases are "standard

form" policies.  This means several things in this context:

First, the insurance policy issued to each individual business is assembled from

standard components, called "forms."  Each form has a number.  If the form is included

in an insurance policy, that number is listed in the declarations section of the policy.

Second, many insurers use forms that are drafted by an industry service

organization (typically ISO) and are thus identical to one other across different insurers.

Third, even when insurers use forms that are not identical, the forms are far more

alike than different, and the variations are modeled on the form drafted by the industry

service organization, and, in substantial part, use the identical language in key coverage

provisions.  Indeed, the variations are so nearly identical to the industry service

organization form that insurers using the variations typically obtain a license from the

organization to avoid violating copyright law.

Finally, consistent with the experience of the Financial Conduct Authority in the

U.K. (see Paragraph 8, above), our preliminary analysis of the insurance policies filed in

the federal cases—which is the universe of cases implicated by this MDL proceeding—
concludes that the relevant parts of the insurance policies that apply to a large portion of
the federal cases come from a relatively small number of sets of identical, or very nearly
identical, standard insurance forms.

9.      The table on the next page illustrates this standardization.  The four insurers listed
are those most frequently named as defendants in the federal cases.  Listed below each insurer is
the form number of each of the insurer's standard forms in the CCLT database[2] that most directly
addresses the topics in the columns:  the causal requirements for business income and extra
expense; and the related "covered cause of loss" definition.

10.     Expanding this table to address all the policies in the CCLT database would not,
in my opinion, significantly expand the narrow range of variation in the standard form language
evidenced in the table.  Within a short time, the CCLT database will be ready to facilitate the
preparation of similar tables for other important coverage provisions, such as those addressing
the predicate for civil authority coverage and those related to viruses and other communicable
diseases.  Based on my substantial experience with standard forms and our preliminary review of
those provisions in the policies in the CCLT database, I am confident that most of the provisions
will be similarly substantially identical, apart from such easily identified differences as (a) the
geographical scope of the civil authority coverage provisions and (b) whether the exclusions
include viruses among the list of disease-causing agents.

---

[2] As of the date of this report, the only insurance policies included in the CCLT database are those that
were attached to the federal and state complaints that have been filed.  In the ensuing weeks we will be
expanding that universe to include insurance policies that are attached to answers and other filings in the
various case dockets.

| | Business Income Causal Requirement | Covered Cause of Loss | Extra Expense Causal Requirement |
|---|---|---|---|
| **Hartford** | | | |
| SS 00 07 07 05 | … caused by direct physical loss of or physical damage to property at the "scheduled premises" … caused by or resulting from a Covered Cause of Loss | Risks of direct physical loss unless the loss is [excluded or limited] | … reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises" … caused by or resulting from a Covered Cause of Loss |
| SP 30 13 10 18 (included with SP 00 00 10 18) | … caused by direct physical loss or direct physical damage to property at the "scheduled premises" … caused by or resulting from a Covered Cause of Loss | … direct physical loss or direct physical damage unless the loss or damage is excluded or limited … | … reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or direct physical damage to property … caused by or resulting from a Covered Cause of Loss |
| **Cincinnati** | | | |
| FM 101 04 04 | … caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss | … risks of direct physical loss unless the "loss" is [excluded or limited] | … necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical "loss" to property caused by or resulting from a Covered Cause of Loss |
| FM 101 05 16 | … caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss | … direct "loss" unless the "loss" is excluded or limited … | … necessary expenses you sustain … during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss |
| FA 213 05 16 & FA 213 05 16IL | … caused by direct "loss" to property at "premises"…. The loss must be caused by or result from a Covered Cause of Loss | … direct "loss" unless the "loss" is excluded or limited … | … necessary expenses you sustain … during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss |
| **Society** | | | |
| TBP2 (05-15) | … caused by direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. | Direct Physical Loss unless the loss is excluded or limited … | … necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. |
| **Travelers** | | | |
| MP T1 02 02 05 | … caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. | Risks of direct physical loss unless the loss is [excluded or limited] | … reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss. |
| DX T1 01 11 12 | … caused by direct physical loss of or damage to property at premises …. The loss or damage must be caused by or result from a Covered Cause of Loss. | … risks of direct physical loss unless the loss is excluded or limited … | … reasonable and necessary expenses … that you incur during the "period of restoration" and that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss |

### III. Why Insurers Use Standard Form Policies

11.     Standard forms facilitate efficient pricing, underwriting, reserving, and claims administration processes in the insurance industry.  Among other benefits, standard forms allow: (a) the prior experience of multiple insurers to be combined to provide guidance in setting prices for insurance and setting the reserves for any claims that occur; (b) insurance regulators to better protect consumers and businesses from surprising or unfair terms; (c) insurance brokers to better compare the offerings of multiple insurers and recommend the best price/quality mix to their customers; (d) underwriters and claims professionals to move from one insurer to another; and (e) insurers to incorporate and respond to the guidance they receive from the courts about the application of their insurance policies to newly emerging or changing claims.

12.     Standard forms also support a competitive insurance market in at least two important ways.  First, standard form policies give policyholders—and, importantly, in the commercial market, those policyholders' insurance brokers—the ability to make "apples to apples" comparisons among the offers from competing insurance companies.  Second, standard form policies reduce the barriers to entry.  An insurance company entering a new market can buy a license to use ISO's standard form policies and to access ISO's common data pool from companies that use those same policies.  That insurer can price and underwrite policies and set reserves for claims with a confidence that would be impossible in the absence of standard forms.

_____
Tom Baker

Dated: June 15, 2020