UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LASER SPA OF ROCHESTER, LLC doing business as Spitale Laser Spa Salon,

Plaintiff,

vs.

ERIE INSURANCE COMPANY,

Defendant.

---

Civil Action No. 6:20-cv-06308-FPG

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
**MURA & STORM, PLLC**
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ..................................................................................................................2

I. PLAINTIFF'S LONE CLAIM THAT GOVERNMENT ORDERS TRIGGERED CIVIL AUTHORITY COVERAGE FAILS AS A MATTER OF LAW UNDER THE POLICY'S PLAIN LANGUAGE..........................................................................2

A. By not alleging that government orders were issued in response to dangerous physical conditions resulting from damage to nearby property, Plaintiff's complaint fails to state a covered claim for Civil Authority Coverage. ..................2

1. *The complaint does not allege, as it must, actual, demonstrable physical harm to property near the insured premises* ..............................................................3

2. *Because the New York authorities' actions were taken to slow the spread of COVID-19 and not in response to dangerous physical conditions resulting from damage to nearby property, Plaintiff has failed to state a covered claim for Civil Authority coverage* ...................................................................7

B. To the extent this Court addresses arguments made by Plaintiff outside of the pleadings, Income Protection and Extra Expense coverage are also unavailable because Plaintiff fails to allege direct physical loss of or damage to covered property. ....................................................................................................9

CONCLUSION...............................................................................................................11

# TABLE OF AUTHORITIES

## Federal Rules

Fed. R. Civ. P. 12(b)(6)....................11

## Cases

*10E, LLC v. Travelers Indem. Co. of CT*, 2020 WL 5359653 (C.D. Cal. Aug. 28, 2020) ..............7

*Commercial Union Ins. Co. v. Flagship Marine Servs*., 190 F.3d 26 (2d Cir. 1999)......................9

*Consolidated Edison Co. of N. Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208 (2002) ........................9

*Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. 2020) ..................6

*Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC*, 74 A.D.3d 516, 518 (1st Dept. 2010)......5

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, 2020 WL 5938755 (N.D. Ga. 2020).4

*Hillcrest Optical, Inc. v. Continental Cas. Co.*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) ......6

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, 2020 WL 5791583 (M.D. Fla. 2020)...6

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69 (2d Cir. 1995)......................... 2-3

*Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. Appx. 868, 2020 WL 4782369 (11th Cir. 2020) ........10

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020)....................6

*Mudpie, Inc. v. Travelers Ins. Co of America*, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020).......6

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014)....................3

*Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020)...7

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc*., 2020 WL 5847570 (S.D. Cal. Oct. 1, 2020).10

*Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392 (S.D.N.Y. 2015) ........3

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712 (C.D. Cal. 2020) ........4

*Rose's 1, LLC v. Erie Ins. Exch.*, 2020 WL 4589206 (D.C. Sup. Ct., Aug. 6, 2020)......................7

*Russell-Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp. 2d 252, 256 (S.D.N.Y. 2002)..............5

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020).......7

*Satispie, LLC v. Travelers Prop. Cas. Co. of Am*., No. 6:17-CV-06234 EAW, 2020 WL 1445874 (W.D.N.Y. Mar. 25, 2020)....................................................................2

*Studio 417, Inc. v. The Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)........10

*United Airlines, Inc. v. Ins. Co. of State of PA*, 385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006)..........................................................................................8

## PRELIMINARY STATEMENT

Plaintiff admits in both its complaint and its opposition to Erie's motion to dismiss ("Plaintiff's Opposition" or "ECF No. 34") that, in response to the pandemic, "[New York] Governor Cuomo set restrictions on large gatherings" and "ordered all hair salons, laser hair removal services and other related personal care services in the state" to close. For that reason, so says Plaintiff, the government orders forced Plaintiff "to suspend operation of its physical location[]." (ECF No. 34 at 9). In short, Plaintiff does not and cannot plausibly allege that the government orders were issued in response to dangerous physical conditions resulting from a peril insured against that caused damage to property within one mile of Plaintiff's premises.

Indeed, the novel coronavirus cannot, as a matter of law, directly or physically harm property; it harms people. For this reason, salons and spas are currently providing services all across the country during the pandemic—using the same property every day to do so—and taking precautions to prevent the human-to-human transmission of the virus. In the context of COVID-19 business interruption insurance coverage cases, scores of courts have recognized this common-sense reality and applied the plain language of insurance contracts, triggered only by "direct physical loss of or damage to property," to find that no coverage exists for claims that government orders harmed businesses. Holding otherwise in this case would mark a sea-change in New York's insurance contract construction law and essentially rewrite business interruption insurance policies to cover the economic effects of governmental authority's regulation of business. There is no coverage under any reasonable reading of the complaint and the terms of the Plaintiff's policy ("the Policy"). Plaintiff's claim cannot be saved by any amount of discovery because the plain language of the Policy precludes coverage. Thus, Plaintiff's claim for Civil Authority coverage fails as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S LONE CLAIM THAT GOVERNMENT ORDERS TRIGGERED CIVIL AUTHORITY COVERAGE FAILS AS A MATTER OF LAW UNDER THE POLICY'S PLAIN LANGUAGE.

#### A. By not alleging that government orders were issued in response to dangerous physical conditions resulting from damage to nearby property, Plaintiff's complaint fails to state a covered claim for Civil Authority Coverage.

Civil Authority coverage[1] is not triggered by just any "mandated suspension of business operation at the insured's location by order of government authority." ECF No. 34 at 11. Rather, Civil Authority coverage is triggered only *"[w]hen a peril insured against* causes damage to property" other than property at the insured premises but "not more than one mile" from same ("nearby property"; emphasis added).[2] The policy's "Perils Insured Against" provision states for a "Covered Cause of Loss" that "[t]his policy insures against "direct physical 'loss', except 'loss' as excluded or limited in this policy." ECF No. 1-2 at 2-3. The Policy term "loss," in turn, is defined as "direct and accidental loss of or damage to" property.[3] ECF No. 37-1 at 48. Thus, Civil Authority

---

[1] Although the Erie Policy affords several different types of business interruption coverage, Plaintiff seeks only Civil Authority coverage in this action. Plaintiff admits in its Opposition that it commenced this action seeking only a "declaration that it is entitled to coverage under the Civil Authority provision of its Policy issued by" Erie (ECF No. 34 at 12).

[2] Plaintiff argues that it purchased an "All Risk" policy, and by implication any claim it asserts for financial losses—even those arising solely from government action untethered to any clearly stated policy coverage—ought to be covered. Not so. As pointed out in Erie's opening brief, this Court in *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 6:17-CV-06234 EAW, 2020 WL 1445874 (W.D.N.Y. Mar. 25, 2020) held that: "under New York law . . . a policyholder bears the burden of showing that the insurance contract covers the loss"; "this is true even for 'all-risk' policies—labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy."

[3] A certified copy of the Policy is attached hereto as Exhibit A, and may be considered in ruling on this motion to dismiss. *See, e.g., Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (documents integral to the complaint may be considered on a motion to dismiss); *Pearson Cap. Partners LLC v. James River Ins. Co.,* 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) ("Because the dispute between the Parties centers around whether the terms of the Policy

coverage under the policy is triggered only when (1) a peril insured against (i.e., direct and accidental physical loss or damage), (2) causes damage to property within one mile of a policyholder's premises that (3) results in dangerous physical conditions near the insured's premises and, (3) to which a civil authority responds by prohibiting access to the area immediately surrounding the damaged property, and, consequently, to the insured premises. None of that is alleged to have occurred here.

*1. The complaint does not allege, as it must, actual, demonstrable physical harm to property near the insured premises.*

Nowhere does Plaintiff allege that a property within a mile of the insured's premises suffered "direct physical loss"—concrete and tangible physical harm—as a result of either the government orders or the virus. Plaintiff instead bases its entire opposition to Erie's motion on its argument that property which is not physically damaged but is "unusable for its intended purpose" has sustained a "direct physical loss." Even if Plaintiff's vague, conclusory allegations regarding the omnipresence of the novel coronavirus or COVID-19 suffice to show that the virus or resulting illness made nearby property "unusable for its intended purpose," its claim for Civil Authority coverage would still fail. Allegations that the virus was physically present on nearby property are insufficient as a matter of law to allege direct physical loss of or damage to that property under both New York precedent and the growing body of law concerning insurance coverage for COVID-19 business interruption claims.

For example, in *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014), the court expressly held that the term "'direct physical loss

provide coverage to Plaintiffs under the circumstances alleged, the Policy itself is clearly integral to the complaint."); *see* Compl. ¶¶ 15-19 (citing and quoting Plaintiff's Policy No. Q97-1983025).

or damage' . . . unambiguously . . . requires some form of actual, physical damage" to property, adding:

> The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

*Id.* This case is representative of the foundational New York law on the issues implicated by COVID-19 business interruption claims.

Cases involving COVID-19 have followed this same logic and emphasized this point. Since the time Erie filed this Rule 12(b)(6) motion, numerous courts nationwide have rejected Plaintiff's argument that "direct physical loss" can encompass mere loss of use for an intended purpose. "[D]irect physical loss of" property does not mean mere "loss of use"—a strained (mis)interpretation that improperly rewrites the language of the policy by discounting some words and inserting others.

For example, in *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) the court addressed the same "direct physical loss of or damage to" policy language that Plaintiff in this case implies is ambiguous. The court found no ambiguity and dismissed the complaint. Citing *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020), the court reasoned that "holding that the Governor's Executive Order led to a 'physical loss of' the dining rooms would massively expand the scope of the insurance coverage at issue here" and "potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy." *Id.* at *5.[4]

---

[4] What the mayor of New York City (or any government executive) thinks about whether the coronavirus causes "property damage" is irrelevant to the Court's determination of this motion, but even if it were relevant, that language in the New York City executive order cited by Plaintiff was

Moreover, the court rejected the policyholder's arguments that "physical loss" does not require a tangible alteration to the property and that only a "loss of use" distinction between the terms "loss" and "damage" gives both terms meaning. Plaintiff makes the very same arguments here, and they should be rejected for the same reasons. Using standard dictionary definitions, the *Henry's Louisiana Grill* court succinctly and correctly explained that "physical loss" means the complete destruction of the insured premises, whereas "damage to" means damage short of complete destruction. *Id*. "As an illustrative example, a tornado that destroys the entirety of the restaurant results in a 'loss of' the restaurant, while a tree falling on part of the kitchen would represent 'damage to' the restaurant." *Id*.

A bedrock principle of New York insurance contract construction provides that courts, when interpreting insurance policy terms and provisions, must do so in a way that gives meaning to all terms and provisions in the context of the contract as a whole. *Russell-Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp. 2d 252, 256 (S.D.N.Y. 2002) ("[W]hen interpreting a written contract, its terms should be given their ordinary meaning and reconciled with other parts of the contract to avoid inconsistencies."); *Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC,* 74 A.D.3d 516, 518 (1st Dept. 2010) ("The courts should construe a contract in a manner that avoids inconsistencies and reasonably harmonizes its terms."). Plaintiff's objectively unreasonable policy interpretation does not do so. Rather, Plaintiff's proffered interpretation conveniently omits any attempt to harmonize the "period of restoration" provision of the Policy. *See* Exhibit A, ECF No. 37-1 at 16. Erie's does not. Here, while the Civil Authority provision does not directly implicate the Policy's period of restoration provision, it incorporates the threshold "direct physical loss of or damage to"

included "[a]t the urging of our partner [attorney] Jon [sic] Houghtaling" (see http://nypaa.com/wp-content/uploads/2020/04/Insurance-Coverage-for-the-COVID-19-Virus-4.pdf#page=2 last accessed October 25, 2020), the policyholder attorney who claimed to have filed the very first COVID-19-related business interruption claim in Louisiana state court.

property requirement, which must be interpreted in a way that makes sense in each context in which it is used. As the *Henry's Louisiana Grill* court cogently explained, the interpretation which distinguishes complete destruction ("loss") from partial destruction ("damage") is the only one that gives meaning to other policy terms, such as the period of restoration clause that contemplates replacing property that was totally destroyed (a direct physical loss) or repairing property that was partially destroyed (direct physical damage). *Id.* at *5-6; *see also Mudpie, Inc. v. Travelers Ins. Co of America*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("The words 'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature. But here, there is nothing to fix, replace or even disinfect for Mudpie to regain occupancy of its property.").

Plaintiff's Policy in this case contains a similar period of restoration clause and the same "direct physical loss of or damage to" property language. The *Henry's Louisiana Grill* rationale applies with equal force in this case – "the contract language [at] issue here is not ambiguous" and the Policy provides no coverage because the Plaintiff's alleged inability to "use[] its property for its intended purpose," (*i.e.* loss of use) is insufficient to meet the Policy's requirement for direct physical loss of or damage to property. *See id.* at *6.

Similarly, in *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, 2020 WL 5791583, at *3-4 (M.D. Fla. Sept. 9, 2020), the court found policy language virtually identical to the language at issue here was unambiguous and that coverage was available only where there is "actual, concrete damage" to property. *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) also involved identical policy terms. The court found the language unambiguous and dismissed the complaint. *See id.* at *6; *see also Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, *5 (W.D. Tex., August 13, 2020); *Hillcrest Optical, Inc. v. Continental Cas. Co.*, 2020 WL 6163142, *6-7 (S.D. Ala. Oct. 21, 2020) ("Though Plaintiff

maintains its inability to use its property constitutes a direct physical loss, the Court is not persuaded… the Order did not immediately cause some sort of tangible alteration to Plaintiff's office."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, *2-3 (N.D. Ill. Sept. 21, 2020) ("'[D]irect physical loss' unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage" and "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property"); *Rose's 1, LLC v. Erie Ins. Exch.*, 2020 WL 4589206 (D.C. Sup. Ct., Aug. 6, 2020) ("'direct loss' implies some form of direct physical change to the insured property"; granting summary judgment to Erie on the same policy language at issue here); *10E, LLC v. Travelers Indem. Co. of CT*, 2020 WL 5359653 (C.D. Cal. Aug. 28, 2020) (the complaint failed to state a claim for Civil Authority coverage because plaintiff's business losses were due to the executive orders which did not damage property).

In the wake of the tidal wave of authorities supporting the legally appropriate conclusion that "direct physical loss of . . . property" requires concrete and demonstrable harm to property, Plaintiff's cited authority to the contrary is unpersuasive. Plaintiff nonetheless argues that this Court should reject the nearly uniform decisions dismissing identical claims in favor of the few outlier opinions of non-New York courts that have denied insurers' motions to dismiss. Indeed, some courts have already unequivocally stated that those decisions are not persuasive and will not be followed. *See, e.g., Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020) ("The few contrary cases cited by [plaintiff] are . . . not as well analyzed as the many authorities cited by Cincinnati"); *see also Hillcrest Optical*, *supra*, 2020 WL 6163142, at *3 (distinguishing authorities cited by Plaintiff's in support of coverage). The outlier opinions have gained no traction and they are not consistent with long-standing New York law.

2. *Because the New York authorities' actions were taken to slow the spread of COVID-19 and not in response to dangerous physical conditions resulting*

> *from damage to nearby property, Plaintiff has failed to state a covered claim for Civil Authority coverage.*

Importantly, for coverage under the policy's Civil Authority provision to apply, Plaintiff must also allege that the action of civil authority is taken *in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage.* Plaintiff's complaint entirely fails to plead this requisite causal link. By Plaintiff's own admission, the government orders were a preventative measure issued "in an effort to control the pandemic and the spread of the virus," (ECF No. 34 at 7), not in response to dangerous physical conditions near the insured premises. Allegations of preventative measures alone do not satisfy the Policy requirement. *See Mudpie*, *supra*, 2020 WL 5525171, at *7 (holding that "Mudpie's allegations established that the government closure orders were intended to prevent the spread of COVID-19. Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order.") (internal citations omitted). Even if the Court accepts as true the complaint's threadbare and wholly speculative allegation that nearby property "was at imminent and continued risk of Coronavirus contamination, if it was not contaminated already" (ECF No. 34 at 22 (citing Compl. ¶¶41–46)), these allegations only support the argument that the government orders were issued to prevent *some speculative future loss*. *See United Airlines, Inc. v. Ins. Co. of State of PA*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) (civil authority coverage did not exist where the decision to halt airport operations in response to the 9/11 attacks was a response to fears of future attacks, and not damage to property).

Finally, the absence of any virus exclusion in the policy is irrelevant because, as many state and federal courts in New York and other jurisdictions have repeatedly and consistently held, coverage under an insurance policy is first determined by looking at what the policy covers under

its insuring agreement and related terms. Plaintiff cannot rely on the absence of an exclusion to establish coverage where coverage does not exist. *See Consolidated Edison Co. of N. Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002) ("it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage."); *Commercial Union Ins. Co. v. Flagship Marine Servs*., 190 F.3d 26, 33 (2d Cir. 1999) ("The absence of an exclusion cannot create coverage.") (citation omitted).

Ultimately, under the plain and unambiguous terms of the policy, Plaintiff's claim for Civil Authority coverage fails because by its own admission, the government orders were issued "as a result of the COVID-19 pandemic" rather than *in response to* dangerous physical conditions resulting from damage to property within one mile of the insured premises, and, the absence of an express virus exclusion is irrelevant. No amount of discovery could create coverage where, as here, coverage does not exist as a matter of law.

**B. To the extent this Court addresses arguments made by Plaintiff outside of the pleadings, Income Protection and Extra Expense coverage are also unavailable because Plaintiff fails to allege direct physical loss of or damage to its property.**

Plaintiff's Complaint alleges a lone declaratory judgment count under the Policy's Civil Authority coverage provision. In its opposition, Plaintiff now mischaracterizes the allegations of its own Complaint and argues that it has alleged COVID-19 on its own property. (ECF No. 34 at 23, citing Compl. ¶¶25 and 28). Neither of the two complaint paragraphs cited by Plaintiff, however, allege virus on property. To the extent this Court departs from the pleadings to consider any perceived claim for coverage under either the Policy's Income Protection or Extra Expense coverage provisions, such claims also fail because Plaintiff has not alleged direct physical loss of or damage to property. Whether pertaining to surrounding property or Plaintiff's own property, government orders do not trigger coverage in the absence of direct physical loss of or damage to property, *i.e.* actual demonstrable physical alteration to property. None is plausibly alleged here.

*See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("The cause of Plaintiffs' business income losses was the COVID-19 Civil Authority Orders themselves, which . . . were precautionary measures taken by the state to prevent the spread of COVID-19 in the future, and therefore not issued as a result of loss or damage to property.").

By Plaintiff's own words, Plaintiff "was forced to suspend operation of its physical location" "[d]ue to the government closure orders" and "suffered immense business income losses *resulting from the government-issued mandatory closure orders*." (ECF No. 34 at 9-10) (emphasis added). Thus, Plaintiff's own allegations confirm that Plaintiff's purported losses, if any, were caused by the government orders.

Plaintiff asks that this Court follow the minority view on this issue as set forth in *Studio 417, Inc. v. The Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). Even if this Court found the *Studio 417* to be potentially relevant, it is non-binding, contrary to New York precedent, and distinguishable. Unlike in *Studio 417*, Plaintiff in this case has not alleged that the novel coronavirus was actually on its property.[5] Moreover, any amendment to the complaint to add such assertions would be futile. *See Pappy's Barber Shops*, 2020 WL 5847570, at *1 ("No amount of artful pleading by Plaintiffs can state a plausible claim that they suffered any business income losses due to direct physical loss of or damage to property at their premises, or due to civil authority orders prohibiting access to Plaintiffs' premises due to direct physical loss or damage to property elsewhere, as required for coverage under the Policy."); *cf. Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. Appx. 868, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) (structure did not sustain "direct physical loss" where it merely needed to be cleaned).

[5] Plaintiff argues that "for purposes of the pleading, the COVID-19 molecule's physical presence at the premises has been adequately asserted. Complaint ¶¶ 25, 28." ECF No. 34 at 23. But this grossly overstates the allegations of its complaint; neither Paragraph 25 nor Paragraph 28 allege that virus was actually found on the insured property.

**CONCLUSION**

For the foregoing reasons and those given in Erie's initial memorandum of law, Erie Insurance Company respectfully requests that this Court grant its motion pursuant to Fed. R. Civ. P 12(b)(6) and dismiss the plaintiff's complaint with prejudice.

DATED: Buffalo, New York
October 28, 2020

Respectfully submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
**MURA&STORM, PLLC**
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

*Attorneys for Defendant*